1  MICHAEL B. BROWN, Bar No. 179222
   michael.brown@stoel.com
2  THOMAS A. WOODS, Bar No. 210050
   thomas.woods@stoel.com
3  BENJAMIN J. CODOG, Bar No. 307034
   ben.codog@stoel.com
4  MICHELLE J. ROSALES, Bar No. 343519
   michelle.rosales@stoel.com
5  STOEL RIVES LLP
   500 Capitol Mall, Suite 1600
6  Sacramento, CA 95814
   Telephone: 916.447.0700
7  Facsimile: 916.447.4781

8  *Attorneys for Plaintiff*
   METROPOLITAN LIFE INSURANCE
9  COMPANY, a New York corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, a California limited liability company, as successor by merger to 104 PARTNERS, LLC; WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; ASHLAN & HAYES INVESTMENTS, LLC, a California limited liability company; GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, a California limited liability company; MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR BREACH OF LOAN AGREEMENT; BREACH OF GUARANTY; JUDICIAL FORECLOSURE; SPECIFIC PERFORMANCE AND APPOINTMENT OF RECEIVER; INJUNCTIVE RELIEF; AND REPLEVIN**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Action Filed:<br>Trial Date: Not Set |

-1-

PLAINTIFF'S COMPLAINT

126267864.4 0053564-00653

**COMPLAINT**

Plaintiff METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation ("Plaintiff" or "MetLife"), hereby states its complaint against ACDF, LLC, a California limited liability company, as successor by merger to 104 PARTNERS, LLC; WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; ASHLAN & HAYES INVESTMENTS, LLC, a California limited liability company; GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, a California limited liability company; MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual (collectively "Defendants"):

**SUMMARY OF LITIGATION**

1. This action is filed by MetLife in its effort to preserve, liquidate, and collect on collateral and personally guaranteed sums enabling repayment on a (defaulted) $7,326,00.00 secured loan that MetLife extended to certain borrowers in 2017. This summary preamble provides a road map and general detail from loan and security origination to the present day.

2. MetLife is, among other things, a long-term lender to agricultural loan borrowers. Repayment of these loans is typically secured (as here) by MetLife taking priority lien interests (in addition to interests in contractual benefits appurtenant to land) on borrowers' agricultural collateral. Such collateral generally includes and is not limited to the borrowers' interest in: agricultural real estate and easements, fixtures, and improvements thereon (not limited to orchards and other irrigated crops); and personalty, not limited to harvested crops; proceeds from harvested crops and rents running with the land; in addition to water rights appurtenant to the land that enable irrigation of the crops.

3. Following loan origination, borrowers and collateral may be substituted for other obligors and collateral. Here, there were multiple substitutions of obligors and collateral.

4. Relevant to this case, in 2017 MetLife extended a loan of $7,326,00.00 to certain borrowers, repayment of which was secured by the borrowers' grant of first lien interests and their transfers of rights in agricultural real and personal property to MetLife. Three individual Guarantors also personally guaranteed repayments on the loan. Following various reconveyances, releases,

recordings, filings, substitutions, and consents to transfer, the Real Property and its Vested Owners at issue in this action are identified as follows:

| **Kern County** | | **Vested Owner** |
|---|---|---|
| APN | 220-130-35-00-4 | Willow Avenue Investments, LLC |
| | 220-130-17-00-2 | Grantor Fresno Clovis Investments, LLC |
| | 220-130-24-00-2 | |
| | 220-130-05-00-7 | |
| | 220-130-30-00-9 | |
| **Fresno County** | | **Vested Owner** |
| APN | 038-141-59S | ACDF, LLC |
| *and associated easements | | |

5. MetLife now details and establishes its first lien and priority interests in the agricultural land, crops, proceeds, and water rights associated therewith that MetLife is entitled to preserve, foreclose and otherwise collect on, following defaults on the loan it holds.

## THE PARTIES

6. Plaintiff is, and at all times mentioned herein was, a New York corporation, qualified to do business in the State of California.

7. Defendant ACDF, LLC, successor by merger to 104 PARTNERS, LLC, is a California limited liability company and owner of the portion of the real property collateral located in Fresno County.

8. Defendant MARICOPA ORCHARDS, LLC, is a California limited liability company located in Fresno, California.

9. Defendant WILLOW AVENUE INVESTMENTS, LLC, is a California limited liability company and owner of a portion of the real property collateral located in Kern County.

10. ASHLAN & HAYES INVESTMENTS, LLC, is a California limited liability company.

11. GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, is a California limited liability company, and owner of a portion of the real property collateral located in Kern County.

12. Defendant FARID ASSEMI is, on information and belief, a resident of Fresno County, California.

13. Defendant FARSHID ASSEMI is, on information and belief, a resident of Fresno County, California.

14. Defendant DARIUS ASSEMI is, on information and belief, a resident of Fresno County, California.

15. FARID ASSEMI, FARSHID ASSEMI and DARIUS ASSEMI are collectively referred to herein as the "Guarantor Defendants."

16. Plaintiff is ignorant of the true names and capacities of Defendants designated herein as DOES 1 through 100, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such Defendants when the same have been ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such conduct.

**JURISDICTION AND VENUE**

17. The Court has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. section 1332 because complete diversity between Plaintiff and the named Defendants exists, and because the amount in controversy exceeds $75,000.

18. Venue is proper in this District because one or more Defendants reside in this District, and all Defendants are residents of the State of California. 28 U.S.C. section 1391(b)(l). Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because the subject of the action is situated in this District. *Id.* § 1391(b)(2).

19. Under Civil Local Rule 120, this case shall be assigned to the Fresno Division because Plaintiff's claims arose in Fresno County and this judicial district.

# FACTUAL BACKGROUND

**A.     The Loan and Loan Documents, and the Collateral Provided by Borrowers to Lender**

20.     On or about August 18, 2017, MetLife made a loan to Ashlan & Hayes Investments, LLC, a California limited liability company ("Ashlan"), Grantor Fresno Clovis Investments, LLC, a California limited liability company ("Grantor Fresno") and Maricopa Orchards, LLC, a California limited liability company (Maricopa, together with Ashlan and Grantor Fresno, collectively, "Original Borrowers"), in the original principal amount of Seven Million Three Hundred Twenty Six Thousand and 00/100 Dollars ($7,326,000.00) ("Loan"), pursuant to that certain Loan Agreement dated as of August 18, 2017 ("Loan Agreement"), by and among Original Borrowers, MetLife and Farid Assemi, Farshid Assemi and Darius Assemi, as guarantors (collectively, "Guarantors").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 1**.

21.     The Loan is evidenced by that certain Promissory Note (the "Note") payable to the order of MetLife, in the original principal sum of Seven Million Three Hundred Twenty-Six Thousand and 00/100 Dollars ($7,326,000.00) as amended by that certain First Amendment to Promissory Note dated July 5, 2018 ("First Amendment to Note").  A true and correct copy of the Note is attached hereto as **Exhibit 2**.  A true and correct copy of the First Amendment to Note is attached hereto as **Exhibit 3**.

22.     The Loan is secured by, *inter alia*:

(a)     That certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated August 18, 2017, and recorded on August 18, 2017, with the Kern County Official Records as Doc No. 217110039 ("**the Kern Deed of Trust**"), in favor of MetLife, as beneficiary, under which Original Borrowers, as trustors, conveyed to Leon A. Moreno, as trustee, real property situated in the County of Kern, State of California, and described on Kern Deed of Trust, Exhibit "A" and all appurtenances, fixtures, permanent plantings, rights and benefits thereto, as described in the Kern Deed of Trust, including Water Rights described on Kern Deed of Trust, Exhibit "A-1" and all water rights, water agreements and related water delivery contracts, easements, offsite wells, permits, and licenses (the "**2017 Real Property**"). The Kern Deed of Trust

was affected by (i) that certain Partial Reconveyance (Without Satisfaction) dated as of May 21, 2019 and recorded on May 23, 2019, with the Kern County Official Records as Doc No. 219059814 (the "**May 2019 Partial Reconveyance**"); (ii) that certain Partial Reconveyance (Without Satisfaction) dated as of July 30, 2019 and recorded on August 1, 2019, with the Kern County Official Records as Doc No. 219093365 (the "**August 2019 Partial Reconveyance**"); and (iii) that certain Partial Reconveyance (Without Satisfaction) dated as of November 8, 2019 and recorded on November 13, 2019, with the Kern County Official Records as Doc No. 21915116 (the "**November 2019 Partial Reconveyance**"), all releasing certain parcels from the lien of the Kern Deed of Trust, but maintaining the lien and security interest on the balance of the 2017 Real Property described in the Kern Deed of Trust (the 2017 Real Property as amended, the "**Kern Property**"), with Original Borrowers being the owners or lessees of separate portions of the Kern Property. A true and correct copy of the Kern Deed of Trust is attached hereto as **Exhibit 4**. True and correct copies of the Partial Reconveyances are collectively attached hereto as **Exhibit 5**.

(b) That certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated August 1, 2019, and recorded on August 1, 2019, in the Fresno County Recorder's Office as Doc No. 2019-0085655 ("**Fresno Deed of Trust**" collectively with the Kern Deed of Trust, "**Deeds of Trust**"), in favor of MetLife, as beneficiary, under which 104 Partners, LLC, a California limited liability company ("**Additional Borrower**") and Rachel Marie White, as trustors, granted to Leon A. Moreno, as trustee, real property situated in the County of Fresno, State of California, and described on the Fresno Deed of Trust, Exhibit "A" and all appurtenances, fixtures, permanent plantings, rights and benefits thereto, as described in the Deeds of Trust, including Water Rights described on Fresno Deed of Trust, Exhibit "A-1" and all water rights, water agreements and related water delivery contracts, easements, offsite wells, permits, and licenses (the "**Fresno Real Property**", together with the Kern Real Property, as amended from time to time, the "**Real Property**"). A true and correct copy of the Fresno Deed of Trust is attached hereto as **Exhibit 6**.

(c) The Fresno Deed of Trust was executed in connection with that certain Collateral Substitution and Loan Assumption Agreement by and between Original Borrowers,

Additional Borrower, Guarantors and MetLife, dated August 1, 2019 (the "**Collateral Substitution**"), pursuant to which MetLife consented to the exchange of certain collateral encumbered by the Kern Deed of Trust for the Fresno Real Property, and assumption of the loan by Additional Borrower 104 Partners, LLC, jointly and severally with the Original Borrowers. A true and correct copy of the Collateral Substitution is attached hereto as **Exhibit 7**.

(d) The Deeds of Trust were affected by that certain Consent to Transfer and Assumption Agreement dated and recorded August 17, 2021, in the Fresno County Recorder's Office as Doc No. 2021-0133790 (collectively, the "**2021 Consent**"), pursuant to which Rachel Marie White, as a non-borrower trustor, was released from her obligations and with no further liability under the Deeds of Trust or Loan, in connect with her transfer of interest in the Kern Real Property to 104 Partners, LLC, a California limited liability company. Pursuant to the 2021 Consent, 104 Partners, LLC agreed to perform, jointly and severally with the Original Borrowers, all obligations under the Deeds of Trust and Loan. Thereafter, 104 Partners, LLC merged into ACDF, LLC. A true and correct copy of the 2021 Consent is attached hereto as **Exhibit 8**.

(e) The Deeds of Trust were further affected by that certain Consent to Transfer and Assumption Agreement by and among Original Borrowers, ACDF, LLC, a California limited liability company (successor in interest by merger to 104 Partners, LLC), and Willow Avenue Investments, LLC, a California limited liability company (collectively, the "Additional Borrowers"), dated and recorded December 7, 2022, in the Kern County Official Records as Doc No. 222180923, and in the Fresno County Recorder's Office as Doc No. 2022-0146224 (collectively, the "**2022 Consent**"), pursuant to which Additional Borrowers assumed all obligations evidenced by the Note and all documents evidencing the Loan from Original Borrowers. A true and correct copy of the 2022 Consent is attached hereto as **Exhibit 9**.

23. In connection with the Loan, Original Borrowers, Additional Borrowers, Transferee Borrower (collectively, the "Borrowers") and Guarantors entered into certain Environmental Indemnity Agreements dated as of August 18, 2017 and August 1, 2019 related to the Kern Real Property and Fresno Real Property, respectively, (the "**Environmental Indemnities**"), pursuant to which Borrowers and Guarantors have agreed to indemnify MetLife from environmental claims

and violations of environmental laws, as more specifically described therein.  True and correct copies of the Environmental Indemnities are collectively attached hereto as **Exhibit 10**.

24. The Deeds of Trust and the Loan Agreement further provide that the Loan is secured by "Water Rights" as that term is defined in the Deeds of Trust, including without limitation, those rights of Defendants under all agreements, service contracts and other entitlements to water including without limitation the Water Agreements in each respective Exhibit "A-1" of the Deeds of Trust and all water rights, water agreements and related water delivery contracts, easements, offsite wells, permits, and licenses. (Loan Agreement, § 2.4, Deeds of Trust, Granting Clause E.)

25. In connection with the Loan, each Guarantor has entered into a Loan Guaranty Agreement dated as of August 18, 2017 (collectively, the "**Guaranty**"), pursuant to which Guarantors have personally, jointly and severally, guaranteed the Loan.  True and correct copies of each Guaranty are collectively attached hereto as **Exhibit 11**.

26. The Real Property is irrigated agricultural land consisting of approximately 478.70 acres of irrigated agricultural products including but not limited to almond orchards and pistachio orchards and includes without limitation the rights and benefits under the Water Rights described on Exhibit "A-1" of the Deeds of Trust and related fixtures, equipment, trees and other appurtenances, permanent plantings and all water rights, water agreements and related water delivery contracts, easements, offsite wells, permits, and licenses.

27. The Deeds of Trust secured the Loan in favor of MetLife encumbering the Real Property and further includes as additional collateral an absolute assignment of Borrowers' right, title, and interest in all present and future income, issues, profits, and revenues of the Real Property, Crops from the Real Property, leases relating to and arising from the Real Property, and Proceeds from the Real Property (as those terms are defined therein), and all benefits to be derived therefrom. (Deeds of Trust, Granting Clause C, § 11.5(a).)

28. The Deeds of Trust constitute a security agreement ("Security Agreement") with respect to the Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds, and any other personal property including the description of the Property (as all those terms are defined therein), and Real Property granted to Plaintiff a security interest therein, and provides that:

**11.1 Security Agreement**. This instrument shall constitute a security agreement with respect to the Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds and Minerals and any other personal property included in the description of the Property, and Trustor hereby grants to Beneficiary a security interest therein.

**11.2 Security Interest**. Trustor authorizes Beneficiary to file in any relevant jurisdiction any initial financing statements (including fixture filings) and amendments thereto necessary to perfect and continue Beneficiary's security interest in the Property. Upon request by Beneficiary, Trustor shall take whatever other action is reasonably requested by Beneficiary to perfect and continue Beneficiary's security interest in the Property. Trustor hereby appoints Beneficiary as Trustor's attorney-in-fact for the purpose of executing or filing any documents necessary to perfect or continue the security interest granted therein. Trustor will reimburse Beneficiary for all expenses incurred in perfecting or continuing this security interest.

29. The Security Agreement under the Kern Deed of Trust was further perfected by MetLife's filing of UCC-1 Financing Statement with the California Secretary of State on August 18, 2017, at Filing No. 177601754694 (the "**Kern Deed of Trust UCC Filing**"). The Security Agreement under the Fresno Deed of Trust was further perfected by MetLife's filing of UCC-1 Financing Statement with the California Secretary of State on August 5, 2019, at Filing No. 19-7726980110 (the "**Fresno Deed of Trust UCC Filing**," together with the Kern Deed of Trust UCC Filing, the "**UCC Filings**"). The Kern Deed of Trust UCC Filing was "continued" through the official filing of a UCC Financing Statement Amendment on July 22, 2022, at Filing No. U220212597526. Transferee Borrower Willow Avenue Investments, LLC was added as a debtor through the filing of a UCC Financing Statement – Amendment of the Kern Deed of Trust UCC Filing, filed December 8, 2022. Debtor Rachel Marie White was removed and Debtor 104 Partners, LLC was changed to ACDF, LLC in UCC Financing Statement – Amendments of the Fresno Deed of Trust UCC Filing, filed December 8, 2022. Certain Collateral was deleted from the Kern County Deed of Trust through the filing of a UCC Financing Statement – Amendment, filed December 12, 2022. The Security Agreement as perfected by the UCC Filings grants to and perfects in Lender a security interest in and to all of Borrowers' right, title and interest in personal property not limited to: all equipment, goods, and accounts, whether attached or appurtenant to the Real Property; all crops (including without limitation harvested crops, farm products, and seed and the products and

proceeds thereof) along with all present and future income, rents, issues, profits and revenues of the crops now or hereafter growing on the Real Property; all rights to the use and enjoyment of water, whether or not appurtenant to the Real Property, and all improvements for water delivery and storage, and easements and permits associated with the same, as further described in the UCC Filings.  The UCC Filings and Amendments are collectively attached hereto as **Exhibit 12**.

30. The Loan, Deeds of Trust, Environmental Indemnities, Guaranty, and any other agreements or documents related thereto, are collectively referred to as the Loan Documents.

31. Lender has provided all notices to enforce its right, title and interest in all collateral under the Security Agreement and has a priority security interest therein.

**B.  Default on the Loan and Related Lawsuits Involving Unpaid Loans by the Guarantor Defendants and Their Affiliated Farming Operations**

32. On September 4, 2024, Plaintiff provided to Defendants a Notice of Default and Demand for Payment for the approximate total due of $285,832.72.  Defendants were further informed that if payment was not received by September 10, 2024, Plaintiff would initiate a demand and acceleration of the Loan.  A true and correct copy of this notice is attached hereto as **Exhibit 13**.

33. The past due amount was not paid by September 10, 2024, and on September 18, 2024, Plaintiff sent to Defendants a Notice of Default and Acceleration of Debt.  A true and correct copy of this Notice of Acceleration of Debt is attached hereto as **Exhibit 14**.

34. The Guarantor Defendants, through the affiliated companies they own, have substantial farm holdings including thousands of acres of pistachio and almond orchards that they have been farming for decades. The Guarantor Defendants and their farming entities have experienced extreme financial difficulties and the inability to repay their loans from Plaintiff and its affiliated companies in an amount of over $48,600,000 from a total of nine defaulted loan agreements that has resulted in the filing of this action and other judicial foreclosure proceedings in this Court.

35. The Guarantor Defendants and their affiliated companies' financial distress and defaults to their lenders is also not limited to Plaintiff alone.  The following cases filed in the Court

involve the Guarantor Defendants and include claims alleging over $770 million in defaulted loan obligations and are possibly related to the instant action pursuant to Local Rule 123:

- The Prudential Insurance Company of America, et al. v. ACDF, LLC, et al., Case No. 1:24-cv-01102-KES-SAB, filed September 16, 2024; and
- U.S. Bank Nation Association v. Touchstone Pistachio Company, LLC, et al., Case No. 1:24-cv-01105-JLT-SKO, filed September 17, 2024.[1]

## FIRST CAUSE OF ACTION

**(Breach of Loan Agreement Against Borrowers)**

36. Plaintiff incorporates and re-alleges paragraphs 1 through 35 above as if fully set forth herein.

37. The Loan Agreement constitutes a binding agreement between Plaintiff and Borrowers.

38. Plaintiff has fully performed the Loan Agreement and to the extent Plaintiff has failed to comply with any material provision therein, it was excused from doing so by Borrowers' breach of the Loan Agreement by, among other things, failing to make payments when due under that agreement.

39. Borrowers' breaches and default of the Loan Agreement's terms are not limited to those expressed in Loan Agreement § 11.1 (a) and (b), requiring payment of interest and principal when due, which resulted in harm to Plaintiff.

40. Borrowers' breaches and default under the Loan Agreement have caused Plaintiff to incur damages in excess of $5,775,298.42, with further amounts, fees, costs, and interest accruing *per diem*.

41. Plaintiff is entitled to judgment against Borrowers for amounts owed through the date of judgment, including (i) unpaid principal; (ii) unpaid accrued interest; (iii) late charges; (iv) fees, costs, and other charges (including legal fees and costs) to which Plaintiff is entitled under the

---

[1] On September 23, 2024, the Hon. Kirk E. Sherriff in the Prudential matter found that the two cases were related. Dkt. 37.

governing documents through the date of judgment; and (v) post-judgment interest at the rate provided by law.

## SECOND CAUSE OF ACTION

**(Breach of Guaranty – Against Guarantor Defendants)**

42. Plaintiff incorporates and re-alleges paragraphs 1 through 41 above as if fully set forth herein.

43. Each Guaranty constitutes a binding agreement between Plaintiff and the Guarantor Defendants.

44. Plaintiff has fully performed under each Guaranty, and to the extent Plaintiff has failed to comply with any material provision therein, it was excused from doing so by the Guarantor Defendants.

45. As a condition to granting the Loan under the Loan Agreement, Plaintiff required the Guarantor Defendants to personally guarantee the Loan.

46. Pursuant to each Guaranty, the Guarantor Defendants unconditionally and irrevocably guarantee and promise to pay the Loan pursuant to the terms of the Loan Documents.

47. Plaintiff was harmed by the Guarantor Defendants' failure to make payments when due and despite service upon them of notices of default.

48. Guarantor Defendants' breaches and default under each Guaranty has caused Lender to incur damages in excess of $5,775,298.42, with further amounts, fees, costs, and interest accruing per diem.

49. Plaintiff is entitled to judgment against the Guarantor Defendants, jointly and severally, for amounts owed under each Guaranty through the date of judgment, plus interest thereon and Plaintiff's expenses, attorneys' fees, and collection costs.

## THIRD CAUSE OF ACTION

**(Judicial Foreclosure Under Security Agreement – Against Borrowers)**

50. Plaintiff incorporates and re-alleges paragraphs 1 through 49 above as if fully set forth herein.

51. The Security Agreement in the Deeds of Trust constitute a binding agreement between Plaintiff and Borrowers.

52. Under the Security Agreement, Borrowers granted Plaintiff a security interest with respect to the defined collateral therein including Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds, and Minerals, and any other personal property included in the description of the Property.

53. Where there is an "Event of Default" under the Loan Agreement, the Deeds of Trust give Plaintiff the rights and remedies of a secured party under the Uniform Commercial Code with respect to any part of the Property, as that term is defined therein, which constitutes personalty, and Plaintiff shall have the rights and remedies of a secured party under the Uniform Commercial Code and as well as the option of proceeding as to the Real Property and all or some of the personal property separately or together, in accordance with the unified sale procedures set forth in the Uniform Commercial Code as adopted in California.  (Exs. 4, 6, Deeds of Trust, § 14(e).)

54. Due to Borrowers' default under the Loan Agreement, Plaintiff is entitled to foreclosure of its lien under the Security Agreement and the possession and sale of the collateral secured thereunder.

## FOURTH CAUSE OF ACTION

**(Judicial Foreclosure Under Deeds of Trust – Against Borrowers)**

55. Plaintiff incorporates and re-alleges paragraphs 1 through 54 above as if fully set forth herein.

56. To secure payment of its obligations under the Loan Agreement, Borrowers and Borrower Transferee made, executed, and delivered to Plaintiff, as beneficiary, the Deeds of Trust. (See Exs. 4, 6, Deeds of Trust at 1-3.)

57. Under the Deeds of Trust, where there has been an "Event of Default" under the Loan Agreement, Plaintiff may declare at its option that "the entire outstanding principal amount of the Note, together with accrued interest thereon at the Default Interest Rate, shall immediately become due and payable without notice or demand."  (Ex. 1, Loan Agreement, § 11.1(l).)

58. In the event of any Event of Default under the Loan Documents, Plaintiff may exercise any one of the rights and remedies in the Deeds of Trust including a judicial foreclosure in accordance with and to the extent allowed by applicable law. (Exs. 4, 6, Deeds of Trust, § 14.)

59. As a result of Defendants' default, Plaintiff is entitled to enforce its security interest by judicial foreclosure of all of Borrowers' rights in the Real Property and personal property and other collateral through a public sale thereof by the proper judicial officer.

## FIFTH CAUSE OF ACTION

**(Specific Performance and Appointment of Receiver – Against Borrowers)**

60. Plaintiff incorporates and re-alleges paragraphs 1 through 59 above as if fully set forth herein.

61. The Loan Agreement provides that Defendants shall consent to the appointment of a receiver. (Ex. 1, Loan Agreement, § 11.1(g).) The Deeds of Trust further provide that Plaintiff is entitled to have a receiver appointed and to enforce the assignment of leases and rents provision. Section 14.1(g) of the Deeds of Trust further provides that Plaintiff is entitled to have a receiver appointed as follows:

> "Beneficiary shall have the right to have a receiver appointed to take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, <u>ex parte</u>, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law. Beneficiary's right to the appointment of a receiver shall exist whether or not apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver."

62. Plaintiff has performed all of its obligations to Borrowers under the terms of the Loan Documents.

63. Plaintiff has demanded that Defendants allow Plaintiff the ability to take possession of the Real Property to collect the rents, issues, and profits and to maintain, lease, and operate the Real Property as provided in the Deeds of Trust, recorded in both Fresno and Kern Counties.

64. There is no adequate remedy at law to enforce the assignment of leases and rents provision in the Deeds of Trust.

65. Plaintiff is entitled to specific performance of the assignment of leases and rents provision in the Deeds of Trust, including without limitation, for the appointment of a receiver.

66. The Loan Documents provide for payment to Plaintiff of all costs of collection including reasonable attorneys' fees and costs of suit. Plaintiff is, therefore, entitled to its costs, expenses, and attorneys' fees incurred in this matter.

## SIXTH CAUSE OF ACTION

### (Injunctive Relief – Against Defendants)

67. Plaintiff incorporates and re-alleges paragraphs 1 through 66 above as if fully set forth herein.

68. To enable the receiver to properly and effectively carry out his or her specific and general duties and powers, and to prevent Plaintiff from suffering irreparable injury, Plaintiff seeks a preliminary injunction and permanent injunction enjoining Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assigned successors, representatives, and all persons acting under, in concert with, or for them, from performing any action that is contrary to the requests for relief specified in the prayer of this Complaint.

## SEVENTH CAUSE OF ACTION

### (Replevin – Against Borrowers)

69. Plaintiff incorporates and re-alleges paragraphs 1 through 68 above as if fully set forth herein.

70. The Loan Documents establish Plaintiff's entitlement to all rights and interests in Proceeds, not limited to all income, profits, rents, issues, profits, and revenues of the Real Property and Crops (as defined therein). For example, Deeds of Trust, Granting Clause C and section 14 permit Plaintiff to take, sell, foreclose, and collect on the Proceeds including but not limited to

those associated with the Crops. Where there is an "Event of Default" under the Loan Documents, the Deeds of Trust gives Plaintiff expansive rights over the collateral, including but not limited to the right to take possession of and sell the collateral in both Fresno and Kern Counties. (Exs. 4, 6, Deeds of Trust, §§ 14.1, 14.2.) Borrowers and Borrower Transferee are required to deliver the collateral to Plaintiff upon request. *Id*.

71. An Event of Default has occurred and has been noticed. (See Exs. 13-14.) As a result, Plaintiff is entitled to the Proceeds and collateral described in the Loan Documents.

72. Defendants continue to possess the Proceeds and collateral described in the Loan Documents despite their non-entitlement to the same.

73. Plaintiff is entitled to a writ of attachment and/or writ of possession permitting it to collect the Proceeds, including but not limited to crops and income, profits, revenues, and accounts related thereto.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff requests the following relief against Borrowers and the Guarantor Defendants:

1. That the Court enter a money judgment against Borrowers and the Guarantor Defendants, and each of them, for:

    a. all amounts owed to date and continuing to accrue and be incurred under the Loan Documents, and each Guaranty (including but not limited to all principal outstanding, interest, late charges, attorneys' fees, financial advisor fees, expenses, and advances), in an amount exceeding $5,775,298.42.

    b. all costs of this action, including reasonable attorneys' fees;

    c. all sums that Plaintiff has expended and hereafter expends to protect its interests under the Loan Agreement, Deeds of Trust, and any other loan document;

    d. prejudgment interest; and

    e. post-judgment interest.

2. That the Court enter judgment declaring that the rights, claims, ownership, liens, titles, and demands of Defendants are subject, subsequent, and subordinate to the Deeds of Trust.

3. That the Court enter its order appointing a receiver, and that, pursuant to the order, the receiver be authorized to: take possession and control of the Real Property and all personal property and collateral secured under the Deeds of Trust, recorded in both Fresno and Kern Counties, including Crops ("Collateral"); conserve, maintain, and manage the Real Property and Collateral, including entering into any appropriate lease(s) associated with the management of the Real Property and Collateral; and/or retaining a third party to manage the Real Property and the Collateral, collect any and all rents, sell the Real Property and the Collateral following adequate notice to Defendants, and perform all other acts consistent with the terms of the order entered by the Court.

4. That the Court enter an order for specific performance of the provisions of the Deeds of Trust, and the assignment referred to therein, relating to the right of Plaintiff, pending a foreclosure and/or trial on the issues herein, to take possession of and to care for and operate the Real Property and Collateral, and to collect the rents, income, issues, profits, and security deposits therefrom during the pendency of this action.

5. That the Court enter its order directing Defendants and anyone in possession of the Real Property and/or the Collateral to deliver possession of same to the receiver or to Plaintiff and to perform other acts and to refrain from such conduct as deemed appropriate by the Court.

6. That the Court enter a preliminary injunction and permanent injunction enjoining Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assignees, successors, and representatives and all persons acting under, in concert with, or for them, from:

    a. committing or permitting any waste on the Real Property and Collateral, or suffering or committing or permitting any act on the Real Property or any part thereof in violation of law, or removing or otherwise disposing of any of the Collateral, or the fixtures presently on the Real Property or any part thereof;

    b. directly or indirectly interfering in any manner with the discharge of the receiver's duties or the receiver's possession of and operation or management of the Real Property or the Collateral; and

1          c.      doing any act which will, or which will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Real Property, and the Collateral.

7. That, to the extent the receiver has not previously sold the Collateral securing the Loan in accordance with the order appointing the receiver, the Court order, adjudge, and decree that the liens granted pursuant to the Deeds of Trust be foreclosed; that all Collateral under the Deeds of Trust be sold according to law by the levying officer; that the proceeds of the sale be applied in payment of the amounts due on the Loan; and that Defendants and all persons claiming under them after execution of the Deeds of Trust, as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrances, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Real Property and any other collateral under those instruments when the time for redemption has elapsed.

8. That the Court award Plaintiff judgment and execution against Defendants for any deficiency that may remain after applying all net proceeds of the sale of the Real Property and the Collateral (whether sold by the receiver or through foreclosure) duly applicable to satisfy the amounts found due by the Court under this demand for judgment.

9. That the Court order, adjudge, and decree that Plaintiff or any parties to this action may purchase the Real Property and the Collateral at any foreclosure sale; that when the time for redemption has elapsed, the levying officer or receiver execute a deed to the purchaser of the Real Property and the Collateral; and that the purchaser be given possession of the Real Property and the Collateral on production of the levying officer's or receiver's deed.

10. That the Court order a writ of attachment or possession (claim and delivery) to enforce Plaintiff's right, title, or interest in any Collateral of Defendants.

11. For such other and further relief as the Court deems just and equitable.

/ / /

/ / /

/ / /

PLAINTIFF'S COMPLAINT

126267864.4 0053564-00653

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

# **JURY DEMAND**

Under Fed. R. Civ. Proc. 38 and Local Rule 201, Plaintiff demands a trial by jury of all issues raised by this Complaint that are triable by jury, as is its right under the Seventh Amendment to the Constitution of the United States and as given by statute.

DATED: October 16, 2024         STOEL RIVES LLP

By: /s/ Thomas A. Woods
MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com

*Attorneys for Plaintiff*
METROPOLITAN LIFE INSURANCE COMPANY