# EXHIBIT 7

Loan No. 198935

## COLLATERAL SUBSTITUTION AND LOAN ASSUMPTION AGREEMENT

THIS COLLATERAL SUBSTITUTION AGREEMENT (this "**Agreement**") is made and entered into as of August _i_ , 2019 (the "**Effective Date**"), by and between MARICOPA ORCHARDS, LLC, a California limited liability company, ASHLAN & HAYES INVESTMENTS, LLC, a California limited liability company, and GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, a California limited liability company (all of the foregoing, individually and collectively, "**Borrower**"), 104 PARTNERS, LLC, a California limited liability company ("**104 Partners**"), and FARID ASSEMI, a married man; FARSHID ASSEMI, a married man; and DARIUS ASSEMI, a single man aka Dariush Assemi (individually and collectively, "**Guarantor**"), in favor of METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation ("**Lender**").

## RECITALS

A.    Lender has made a loan (the "**Loan**") to Borrower under the terms of that certain Loan Agreement dated as of August 18, 2017 executed by Borrower for the benefit of Lender (the "**Loan Agreement**") and evidenced by the Promissory Note dated as of August 18, 2017 in the original principal amount of $7,326,000 (the "**Note**").

B.    The Loan is secured by, among other things, that certain that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated August 18, 2017, recorded on August 18, 2017, in the Official Records of Kern County under Document No. 0217110039 (the "**Deed of Trust**").

C.    The Loan is supported by certain Loan Guaranty Agreements executed by Guarantor wherein Guarantor, among other things, guarantees the payment and performance of all obligations of Borrower under the Note (collectively, the "**Guarantees**").

D.    Borrower has requested that Lender consent to the exchange of certain collateral encumbered by the Deed of Trust (the "**Release Parcel**") for another parcel of real property (the "**Additional Parcel**") for which title is vested in Rachel Marie White, an unmarried woman ("**Non-Borrower Trustor**") and in which the ground lease interest is held by 104 PARTNERS, LLC, a California limited liability company ("**104 Partners**") (such release and exchange, the "**Parcel Exchange**"). The Release Parcel is described on <u>Exhibit A</u> attached hereto. The Additional Parcel is described on <u>Exhibit B</u> attached hereto.

1

E.      Lender has agreed to grant its consent to the Parcel Exchange only upon the terms, covenants and conditions herein contained.

## AGREEMENTS

NOW THEREFORE, in consideration of the consent by the Lender to the Parcel Exchange and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties do hereby agree as follows:

1.      <u>Confirmation of Loan</u>.  The Loan Agreement, the Note, the Guarantees, the Deed of Trust and all loan agreements and other documents executed to evidence or secure the Loan (the "**Loan Documents**") are hereby confirmed by Borrower and Guarantor as being valid, in full force and effect and Borrower and Guarantor acknowledge that (a) to the best of their knowledge, none have any defenses or offsets to any of their obligations thereunder and (b) to the best of Borrower's and Guarantor's knowledge, Lender has performed all of its obligations to this date.

2.      <u>Consent to Parcel Exchange</u>.   Subject to the conditions contained herein, Lender hereby consents to the Parcel Exchange.  To effectuate the Parcel Exchange, Non-Borrower Trustor and 104 Partners will execute (i) a Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing for the benefit of Lender, encumbering the Additional Parcel as security for the Loan (the "**Additional Parcel Deed of Trust**") and recorded substantially of even date herewith in the Official Records of Fresno County, California, (ii) an Environmental Indemnity Agreement (also to be executed by Guarantor), and (iii) any other documents that the Lender may require to evidence the Parcel Exchange and the assumption of the Loan by 104 Partners (collectively, the "**Parcel Exchange Documents**").

3.      <u>Assumption of Loan</u>.  As of the Effective Date, 104 Partners hereby assumes and agrees to pay and perform, jointly and severally with Borrower, all of the obligations evidenced by the Loan Documents and this Agreement, and agrees for the benefit of Lender and its successors and assigns, to be bound by, observe and perform, all past (to the extent unsatisfied), present and future liabilities, terms, provisions, covenants and obligations of Borrower under the Note and the other Loan Documents, including, without limitation, all indemnities and covenants set forth in the Loan Agreement.  104 Partners agrees that it is bound by all of such terms and provisions, and further agrees to promptly pay all such liabilities and to promptly observe and perform all such covenants and obligations under the Loan Documents, with the same force and effect as if 104 Partners had originally executed and delivered the Note and the other Loan Documents.  As of the Effective Date, all references to "Borrower" or "Borrowers" in the Loan Documents shall mean Borrower and 104 Partners, jointly and severally.

2

4.    <u>Amendment of Loan Documents</u>.  Borrower and Guarantor hereby expressly agree that as of the Effective Date:

(a)    All references in the Loan Documents to the "Property" are hereby amended to include the Property defined in the Additional Parcel Deed of Trust and to delete the Release Parcel.  All references in the Loan Documents to the "Loan Documents" are hereby amended to include the Parcel Exchange Documents.

(b)    An Event of Default, as defined in the Loan Documents, under any Loan Document shall also be an Event of Default under the Additional Parcel Deed of Trust, and likewise, an Event of Default under the Additional Deed of Trust shall constitute an Event of Default under all of the Loan Documents.

(c)    All references in the Loan Agreement and the other Loan Documents to "Collateral Documents" shall mean the Deed of Trust, the Additional Parcel Deed of Trust and all assignments, security and pledge agreements, guarantees and all of the other documents entered into now or in the future in connection with the Loan.

(d)    Section 3.1(g) of the Loan Agreement is hereby amended to remove Jonathan Reiter as an Authorized Person and to substitute Kevin Assemi in place thereof.

5.    <u>Guarantor Consent</u>.  Guarantor hereby consents to and approves the Parcel Exchange and the assumption of the Loan, as provided herein and the documents delivered pursuant hereto, agrees that the Guarantees shall remain unmodified and in full force and effect with regard to the Loans, except as expressly modified hereby and pursuant to the other documents to be delivered pursuant to the terms of this Agreement.  All terms of the Guarantees are hereby reaffirmed by Guarantor with regard to the Loan.

6.    <u>Release of Lender</u>.  As part of the consideration for this Agreement, as of the Effective Date, Borrower, 104 Partners and Guarantor, on behalf of themselves and their successors and assigns, hereby each acknowledge that they have no claims of whatsoever nature against Lender in connection with the Loan and forever release, waive and discharge Lender from, and covenant not to bring any suit against Lender for, any such claim, cause of action, demand, suit, cost or expense they may have, of whatsoever nature and kind, based on any facts existing prior to the date of this Agreement.  Said releasing parties acknowledge that this release extends to known and unknown claims.

7.    <u>Payment of Costs and Expenses</u>.  Borrower shall reimburse the Lender, or shall cause the Lender to be reimbursed, upon demand for all title premiums, title search charges, UCC search or filing fees, escrow fees, documentary stamps, intangible taxes, recording fees and other costs, expenses and reasonable attorneys' fees incurred by the Lender in connection

3

with this Agreement or the satisfaction of any of the closing conditions (the "**Expense Reimbursements**"), regardless of whether the Parcel Exchange contemplated by this Agreement is closed. If the Parcel Exchange does not close, all Expense Reimbursements shall be paid to Lender by Borrower within ten (10) days of Lender's billing of such charges to Borrower.

8.      <u>Waiver</u>.  Borrower hereby waives the right, in the event of a default under or breach of any of the Existing Loan Documents, to require Lender to proceed against any particular Borrower or Guarantor or to pursue any other remedy available to Lender.

9.      <u>Representations and Warranties</u>.  As of the date of this Agreement, Borrower, 104 Partners and Guarantor (hereinafter, each, an "**Obligor**" and collectively, the "**Obligors**") hereby jointly and severally represent and warrant to the Lender as follows:

(a)      <u>Affiliate Ownership and Integrated Business Strategies</u>.  Due to the common ownerships and business relationships among the Obligors there is a community of interests among the Obligors such that the benefits of the Loan to any one Obligor also benefits the other Obligors. The benefit of the Loan to the Obligors constitutes the reasonably equivalent value of the aggregate transfers made and the obligations incurred by each of the Obligors in connection with the Loan. Neither the Parcel Exchange nor the obligations incurred by each Obligor in connection the Loan are made with the intent to hinder, delay or defraud any person to which any Obligor was, is, or hereinafter will become, indebted. Each Obligor hereby reaffirms the covenants and representations set forth in Section 8.1 of the Loan Agreement as of the Effective Date.

(b)      <u>Solvency</u>.  No Obligor is insolvent as of the date of this Agreement. None of the Obligors will become insolvent as a result of the obligations incurred and transfers made in connection with the Parcel Exchange as provided herein.  None of the Obligors is, or is about to be, engaged in a business or transaction for which such Obligor will have an unreasonably small amount of capital after the closing of the Parcel Exchange. None of the Obligors have incurred, or contemplates incurring, debts beyond such Obligor's ability to pay as such debts become due.

(c)      <u>Joint and Several; Waiver of Surety Defenses</u>.  Each Obligor understands and agrees that each Obligor's interest in the Property and the Additional Parcel will secure the entire amount of the Loan under the Note and the Loan Documents and each Obligor shall be jointly and severally liable therefor regardless of any internal allocation agreed between the Obligor parties. To the extent any Obligor may be deemed a guarantor of any other Obligor's obligations to Lender, each such Obligor hereby waives (i) all rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available to such guarantying Obligor or its successors by

4

reason of the application of California law, including without limitation California Civil Code sections 2787 to 2855, inclusive, (ii) all rights and defenses with respect to its obligations under the Loan Documents by reason of any election of remedies by Lender or its successors in interest, and (iii) all rights and defenses arising from the alteration of the original obligation under the Loans or in the event the rights or remedies of the Lender against any Obligor are in any way impaired or suspended. In addition, each Obligor hereby subordinates indebtedness of such Obligor now or hereafter owed to the other Obligor to indebtedness of the Obligor to the Lender, and covenants with the Lender not to demand or accept any payment of principal or interest on any such indebtedness while any Default exists under the terms of the Loan Documents or the Parcel Exchange Documents. The Obligors waive any defense based upon the Lender's election of any remedy, the Lender's failure to disclose to any Obligor any information concerning the financial condition of Borrower or any other circumstances bearing on the ability of any Borrower to pay and perform its obligations under the Loan Documents and the Parcel Exchange Documents, or the Lender's failure to provide notice of any act or omission by any Borrower from which any obligation may have arisen except to the extent such notice is expressly required pursuant to the Loan Documents and the Parcel Exchange Documents.

(d)  Authority. Execution, delivery and performance of this Agreement, the Parcel Exchange Documents or other documents executed and/or delivered in connection herewith have been authorized by each of the Obligors.

(e)  No Default. To the best of Borrower's knowledge, no default or event of default under any of the Existing Loan Documents has occurred that remains uncured, and no event has occurred which, with the giving of notice or the passage of time, or both, would constitute a default or an event of default under any of the Loan Documents.

(f)  Representations and Warranties. All of the warranties and representations contained in the Loan Documents are true, correct, complete and accurate in all material respects on the date of this Agreement, except as may be amended or changed due to this Agreement or the Parcel Exchange Documents.

10.  Integration. All rights, remedies, powers and interest provided for Lender herein are in addition to the rights, remedies, powers and interests provided for Lender in the Loan Documents, the terms and provisions of which are incorporated herein by this reference and made a part hereof. If and to the extent that any term or provision hereof is inconsistent with any term or provision of the Loan Documents, the term or provision of this Agreement shall prevail.

11.  Construction. This Agreement shall be construed in accordance with the law of the State of California (excluding choice-of-law principles). The terms of this Agreement

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001

have been mutually negotiated with each party having the opportunity to seek the advice of legal counsel and shall not be construed as though it had been prepared solely by Lender. The headings in this Agreement are inserted solely for the purpose of convenience and shall not affect the interpretation of the provisions hereof. If any portion of this Agreement is held to be invalid by any court of competent jurisdiction, such ruling shall not affect the remaining terms hereof unless and to the extent it includes a specific determination that the fundamental purposes of this Agreement are thereby significantly impaired. All sums referred to in this Agreement shall be calculated by and payable in the lawful currency of the United States

12.     <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement and understanding of the parties hereto regarding the subject matter hereof, and no oral understandings, written agreements or representations exist which are in addition to or contradict or expand upon the terms herein set forth. No amendments, variations, waivers, modifications or changes to this Agreement shall be effective unless in writing and signed by each of the parties hereto subsequent to the date hereof.

13.     <u>Counterparts</u>.   This Agreement may be executed in two or more counterparts, all of which shall constitute but one and the same instrument. The signature pages of exact copies of this Agreement may be attached to one copy to form one complete document.

14.     <u>Consent Limited; No Waiver</u>.   The Lender's consent in this Agreement is limited to this transaction only, and this Agreement shall not constitute a waiver or modification of any terms, provisions or requirements of the Loan Documents in any respect except as herein specifically set forth or as otherwise expressly agreed to by the Lender in writing, including any conditions to or fees which may be imposed for any future transfer or conveyance of any portion of the Property or any interest in any of Borrower.

**IMPORTANT:   READ BEFORE SIGNING.   THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

*[signature page follows]*

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

BORROWER:

ASHLAN & HAYES INVESTMENTS, LLC,
a California limited liability company

By:  _____
     Neema Assemi
     Its General Manager

By:  _____
     Kevin Assemi
     Its General Manager

By:  _____
     Darius Assemi
     Its General Manager

*[signatures continue on following pages]*

7

MARICOPA ORCHARDS, LLC,
a California limited liability company

By: _____
    Farid Assemi
    Its General Manager

By: _____
    Farshid Assemi
    Its General Manager

By: _____
    Darius Assemi
    Its General Manager

GRANTOR FRESNO CLOVIS INVESTMENTS, LLC,
a California limited liability company

By: _____
    Neema Assemi
    Its General Manager

By: _____
    Kevin Assemi
    Its General Manager

*[signatures continue on following pages]*

8

104 PARTNERS, LLC,
a California limited liability company

By: _____
      Farid Assemi, as trustee of the Amended and
      Restated Farid Assemi Revocable Trust
      Its Member/General Manager

By: _____
      Farshid Assemi, as trustee of the Amended and
      Restated Farshid Assemi and Sonia Rosemary
      Assemi Revocable Trust
      Its Member/General Manager

By: _____
      Sonia Rosemary Assemi, as trustee of the
      Amended and  Restated Farshid Assemi
      and Sonia Rosemary Assemi Revocable Trust
      Its Member/General Manager

By: _____
      Darius Assemi, as trustee of the Amended and
      Restated Darius Assemi Revocable Trust
      Its Member/General Manager

_____
RACHEL MARIE WHITE, an unmarried woman

9

**GUARANTOR**:

FARID ASSEMI

FARSHID ASSEMI

DARIUS ASSEMI

*[signatures continue on following pages]*

10

**LENDER**:

METROPOLITAN LIFE INSURANCE
COMPANY, a New York corporation

By:    MetLife Investment Management, LLC
        its investment manager

By: _____
Printed Name: *Leonides A. Moreno*
Its:   Authorized Signatory and Director

*[Acknowledgments follow on next pages]*

11

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF FRESNO                       )

On ~~August~~ July 30, 2019 before me, L. Diaz, Notary Public, personally appeared NEEMA ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____          (seal)

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235002
FRESNO COUNTY
My Comm. Exp. April 20, 2022

12

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               ) ss.
COUNTY OF _FRESNO_             )

On ~~August~~ July 31, 2019 before me, _L. Diaz_____, Notary Public, personally appeared KEVIN ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____        (seal)

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

13

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF _FRESNO_ )

On August 31, 2019 before me, _L. Diaz_, Notary Public, personally appeared DARIUS ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ (seal)

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235802
FRESNO COUNTY
My Comm. Exp. April 20, 2022

14

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
                                ) ss.
COUNTY OF ___Fresno___ )

On ~~August~~ July 31, 2019 before me, ___L. Diaz___, Notary Public, personally appeared FARID ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____  (seal)

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

15

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF  _Fresno_                    )

On ~~August~~ July 30, 2019 before me, _L. Diaz_ , Notary Public, personally appeared FARSHID ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____                    (seal)

L. DIAZ
NOTARY PUBLIC . CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

16

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF _FRESNO_____ )

On ~~August~~ July 30, 2019 before me, ____L. Diaz_____, Notary Public, personally appeared SONIA ROSEMARY ASSEMI, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature:_____     (seal)

> L. DIAZ
> NOTARY PUBLIC . CALIFORNIA
> COMMISSION # 2235602
> FRESNO COUNTY
> My Comm. Exp. April 20, 2022

17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
  ) ss.
COUNTY OF  FRESNO  )

On ~~August~~ July 30, 2019 before me, L. Diaz , Notary Public, personally appeared RACHEL MARIE WHITE, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____   (seal)

L. DIAZ
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2235602
FRESNO COUNTY
My Comm. Exp. April 20, 2022

18

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA               )
                                  ) ss.
COUNTY OF _Fresno_____        )

On _July_____ _30_, 2019 before me, _Cathy M. Kelly_____,
Notary Public, personally appeared LEONIDES A. MORENO, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
         Signature:_____     (seal)

CATHY M. KELLY
Notary Public - California
Fresno County
Commission # 2285788
My Comm. Expires May 17, 2023

19

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001

EXHIBIT A
RELEASE PARCEL

The land referred to is situated in the unincorporated area of the County of Kern, State of California, and is described as follows:

PARCEL ONE:

The West half of the Southwest quarter of Section 34, Township 32 South, Range 25 East, Mount Diablo Meridian, in the unincorporated area of the County of Kern, State of California, as per the Official Plat thereof.

(APN: 220-130-32s)

Exhibit A

EXHIBIT B
ADDITIONAL PARCEL

The land referred to is situated in the unincorporated area of the County of Fresno, State of California, and is described as follows:

FEE PARCEL 1: (APN: 038-141-59S)

THE WEST 1,344.4 FEET OF THE SOUTHWEST QUARTER OF SECTION 15, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID SECTION 15; THENCE, (1) NORTHERLY, ALONG THE WEST BOUNDARY OF SAID SECTION 15, A DISTANCE OF 50 FEET; THENCE, (2) SOUTH 87° 34' 31" EAST, A DISTANCE OF 535.37 FEET; THENCE, (3) SOUTHEASTERLY ALONG THE ARC OF A TANGENT CURVE, CONCAVE TO THE NORTHEAST (HAVING A 37,950 FOOT RADIUS, A RADIUS POINT WHICH BEARS NORTH 02° 25' 29" EAST AND A CENTRAL ANGLE OF 01° 13' 10") A DISTANCE OF 807.70 FEET; THENCE, (4) SOUTH 88° 47' 41" EAST, PARALLEL WITH AND 30 FEET NORTH OF THE SOUTH BOUNDARY OF THE SAID SOUTHWEST QUARTER, TO A POINT ON THE EAST BOUNDARY OF THE SAID SOUTHWEST QUARTER; THENCE, (5) SOUTHERLY ALONG SAID EAST BOUNDARY, A DISTANCE OF 30 FEET TO THE SOUTH QUARTER CORNER OF SAID SECTION 15; THENCE, (6) NORTH 88° 47' 41" WEST, ALONG SAID SOUTH BOUNDARY OF THE SOUTHWEST QUARTER, A DISTANCE OF 2646.07 FEET TO THE POINT OF BEGINNING.

SAID LEGAL DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE, PLA 05-13(A), RECORDED MAY 11, 2007 AS INSTRUMENT NO. 2007-0093874 OF OFFICIAL RECORDS OF FRESNO COUNTY.

EXCEPTING AND RESERVING, HOWEVER, TO THE UNITED STATES ALL THE COAL AND OTHER MINERALS IN THE LANDS SO ENTERED AND PATENTED, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME PURSUANT TO THE PROVISIONS AND LIMITATIONS OF THE ACT OF DECEMBER 29, 1916 (39 STAT. 862).

ALSO EXCEPTING THEREFROM ANY AND ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERAL THEREIN AND THEREUNDER AS PREVIOUSLY RESERVED OR GRANTED OF RECORD.

EASEMENT PARCEL 1:

Exhibit B

A NON-EXCLUSIVE EASEMENT FOR AN EXISTING PIPELINE TO TRANSPORT IRRIGATION WATER TOGETHER WITH THE RIGHT OF INGRESS AND EGRESS AS GRANTED TO R. TODD HENRY AND LINDA J. HENRY, AS TRUSTEES OF THE TODD AND LINDA HENRY REVOCABLE TRUST AND GARY G. ROBINSON AND KAREN E. ROBINSON, AS TRUSTEES OF THE GARY G. ROBINSON AND KAREN E. ROBINSON 2004 TRUST BY INSTRUMENT RECORDED JUNE 15, 2005 AS DOCUMENT NO. 2005-0132006 OF OFFICIAL RECORDS OVER AND ACROSS THE FOLLOWING DESCRIBED PARCELS "A" AND "B".

PARCEL A: (APN: 038-071-46S)

THE WEST 30 FEET OF THE FOLLOWING DESCRIBED PARCEL:

ALL THAT PORTION OF LOTS 21 TO 29, INCLUSIVE, IN SECTION 10, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE MAP OF PART OF CALIFORNIA LAND INVESTMENT COMPANY'S TRACT NO. 1, RECORDED MAY 8, 1912 IN BOOK 7, PAGE 49 OF RECORD OF SURVEYS, FRESNO COUNTY RECORDS, LYING SOUTHWESTERLY OF THE SAN LUIS CANAL.

EXCEPT THEREFROM THE FOLLOWING DESCRIBED PROPERTY:

BEGINNING AT A POINT IN THE WEST BOUNDARY OF SAID SECTION 10, DISTANT THEREALONG SOUTH 0° 56' WEST 2092.6 FEET FROM THE NORTHWEST CORNER OF SAID SECTION 10; THENCE ALONG SAID WEST BOUNDARY NORTH 0° 56' EAST 644.8 FEET; THENCE LEAVING SAID WEST BOUNDARY SOUTH 57° 36' EAST 35.2 FEET TO A POINT IN THE EAST BOUNDARY OF THAT CERTAIN 30-FOOT WIDE STRIP OF LAND OFFERED FOR PUBLIC DEDICATION ACCORDING TO SAID MAP; THENCE CONTINUING SOUTH 57° 36' EAST 194.8 FEET; THENCE CONTINUING SOUTH 57° 36' EAST 345.5 FEET; THENCE SOUTH 51° 54' EAST 201.0 FEET; THENCE SOUTH 57° 36' EAST 2300.9 FEET TO A POINT IN THE WEST BOUNDARY OF THAT CERTAIN 60-FOOT WIDE STRIP OF LAND OFFERED FOR DEDICATION ACCORDING TO SAID MAP; THENCE CONTINUING SOUTH 57° 36' EAST 70.4 FEET TO A POINT IN THE EAST BOUNDARY OF SAID 60-FOOT WIDE STRIP OF LAND; THENCE CONTINUING SOUTH 57° 36' EAST 93.3 FEET; THENCE SOUTH 67° 05' EAST 143.2 FEET; THENCE SOUTH 74° 07' EAST 141.9 FEET; THENCE SOUTH 79° 37' EAST 2266.6 FEET TO A POINT IN THE WEST BOUNDARY OF THAT CERTAIN 30-FOOT WIDE STRIP OF LAND OFFERED FOR PUBLIC DEDICATION ACCORDING TO SAID MAP; THENCE CONTINUING SOUTH 79° 37' EAST 30.4 FEET TO A POINT IN THE EAST BOUNDARY OF SAID SECTION 10; DISTANT THEREALONG NORTH 0° 55' EAST 1700.5 FEET FROM THE SOUTHEAST CORNER OF SAID SECTION 10; THENCE ALONG SAID EAST BOUNDARY SOUTH 0° 55' WEST 547.5 FEET; THENCE LEAVING SAID EAST BOUNDARY NORTH 79° 37' WEST 30.4 FEET TO A POINT IN THE WEST BOUNDARY OF LAST SAID 30 FOOT WIDE STRIP OF LAND; THENCE CONTINUING NORTH 79° 37' WEST 2356.8 FEET; THENCE NORTH 74° 06' WEST 245.5 FEET; THENCE NORTH 63° 06' WEST 26.0 FEET TO A POINT IN THE EAST BOUNDARY OF AFORESAID 60-FOOT WIDE STRIP OF LAND; THENCE CONTINUING NORTH 63° 06' WEST 66.8 FEET TO A POINT IN THE WEST BOUNDARY OF SAID 60-FOOT WIDE STRIP OF LAND; THENCE CONTINUING NORTH 63° 06' WEST 152.7

Exhibit B

FEET; THENCE NORTH 57° 36' WEST 2868.2 FEET TO A POINT IN THE EAST BOUNDARY OF FIRST SAID 30-FOOT WIDE STRIP OF LAND; THENCE CONTINUING NORTH 57° 36' WEST 35.2 FEET TO THE POINT OF BEGINNING.

PARCEL B: (APN: 038-141-01S)

THE WEST 30 FEET OF THE NORTHWEST QUARTER OF SECTION 15, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN.

EASEMENT PARCEL 2: (APN: 038-060-28S)

A NON-EXCLUSIVE EASEMENT FOR WELL SITE AND POWER POLES AND ASSOCIATED POWER LINES, PIPELINES AND OTHER NECESSARY FIXTURES AS GRANTED TO FARID ASSEMI, ET AL, BY INSTRUMENT RECORDED JUNE 29, 2005 AS <u>DOCUMENT NO. 2005-0144187</u> OF OFFICIAL RECORDS OVER AND ACROSS THE FOLLOWING PROPERTY:

A 50 BY 50 FOOT SQUARE AROUND THE EXISTING IRRIGATION WELL LOCATED IN THE NORTHEAST CORNER OF THE NORTHEAST QUARTER OF SECTION 7, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EASEMENT PARCEL 3: (APN: 038-130-05S)

A NON-EXCLUSIVE EASEMENT FOR WELL SITE AND POWER POLES AND ASSOCIATED POWER LINES, PIPELINES AND OTHER NECESSARY FIXTURES AS GRANTED TO FARID ASSEMI, ET AL, BY INSTRUMENT RECORDED JUNE 29, 2005 AS <u>DOCUMENT NO. 2005-0144188</u> OF OFFICIAL RECORDS OVER AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:

A 50 BY 50 FOOT SQUARE AROUND THE EXISTING IRRIGATION WELL LOCATED IN THE NORTHEAST CORNER OF THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 17, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EASEMENT PARCEL 6: (APN: 038-060-77S)

A NON-EXCLUSIVE EASEMENT FOR IRRIGATION PIPELINE TOGETHER WITH INGRESS AND EGRESS, AS GRANTED TO R. TODD HENRY AND LINDA J. HENRY, AS TRUSTEES OF THE TODD AND LINDA HENRY REVOCABLE TRUST AND GARY G. ROBINSON AND KAREN E. ROBINSON, AS TRUSTEES OF THE GARY G. ROBINSON AND KAREN E. ROBINSON 2004 TRUST, BY INSTRUMENT RECORDED JUNE 29, 2005 AS <u>DOCUMENT NO. 2005-0144194</u> OF OFFICIAL RECORDS OVER AND ACROSS THE SOUTH 20 FEET OF THE EAST 20 FEET OF LOTS 5 TO 12, INCLUSIVE, IN SECTION 8, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE MAP OF PART OF CALIFORNIA LAND INVESTMENT

Exhibit B

CO'S TRACT NO. 1, ACCORDING TO THE MAP THEREOF RECORDED IN <u>BOOK 7, PAGE 49</u> OF RECORDS OF SURVEYS, FRESNO COUNTY RECORDS.

EASEMENT PARCEL 7:

A NON-EXCLUSIVE EASEMENT FOR AN IRRIGATION PIPELINE TOGETHER WITH THE RIGHT OF INGRESS AND EGRESS, AS GRANTED TO R. TODD HENRY AND LINDA J. HENRY, AS TRUSTEES OF THE TODD AND LINDA HENRY REVOCABLE TRUST AND GARY G. ROBINSON AND KAREN E. ROBINSON, AS TRUSTEES OF THE GARY G. ROBINSON AND KAREN E. ROBINSON 2004 TRUST BY INSTRUMENT RECORDED JUNE 29, 2005 AS <u>DOCUMENT NO. 20050144195</u> OF OFFICIAL RECORDS OVER AND ACROSS THE FOLLOWING DESCRIBED PARCELS "A" AND "B":

PARCEL A: (APN: 038-060-28S)

THE EAST 30 FEET OF THE NORTHEAST QUARTER OF SECTION 7, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL B: (APN: 038-130-02)

THE NORTH 30 FEET OF THE EAST 30 FEET OF THE NORTHEAST QUARTER OF SECTION 18, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EASEMENT PARCEL 8:

A NON-EXCLUSIVE EASEMENT FOR AN IRRIGATION PIPELINE WITH THE RIGHT OF INGRESS AND EGRESS AS GRANTED TO R. TODD HENRY AND LINDA J. HENRY, AS TRUSTEES OF THE TODD AND LINDA HENRY REVOCABLE TRUST AND GARY G. ROBINSON AND KAREN E. ROBINSON, AS TRUSTEES OF THE GARY G. ROBINSON AND KAREN E. ROBINSON 2004 TRUST BY INSTRUMENT RECORDED JUNE 29, 2005 AS <u>DOCUMENT NO. 2005-0144196</u> OF OFFICIAL RECORDS OVER AND ACROSS THE FOLLOWING DESCRIBED PARCELS "A, B, C, D AND E":

PARCEL A: (APN: 038-130-04S)

THE NORTH 30 FEET OF THE NORTHWEST QUARTER OF SECTION 17, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL B: (APN: 038-130-05S)

Exhibit B

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001

THE NORTH 30 FEET OF THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 17, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL C: (APN: 038-060-31S)

THE EAST 30 FEET OF THE FOLLOWING DESCRIBED PARCEL:

BEGINNING AT THE SOUTHEAST CORNER OF SECTION 7, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF; THENCE WEST ALONG THE SOUTH LINE OF SAID SECTION, A DISTANCE OF 96 RODS; THENCE AT RIGHT ANGLES NORTH 53 1/3 RODS; THENCE AT RIGHT ANGLES EAST, 96 RODS TO THE EAST LINE OF SAID SECTION; THENCE SOUTH ALONG SAID EAST LINE TO THE PLACE OF BEGINNING.

PARCEL D: (APN: 038-060-30S)

THE EAST 30 FEET OF THE FOLLOWING DESCRIBED PARCEL:

THAT PORTION OF THE SOUTHEAST QUARTER OF SECTION 7, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EAST LINE OF SAID SECTION 7, DISTANT THEREON 53 1/2 RODS SOUTH OF THE NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 7; THENCE WEST PARALLEL WITH THE NORTH LINE OF THE SOUTHEAST QUARTER OF SAID

SECTION 7, A DISTANCE OF 96 RODS; THENCE SOUTH PARALLEL WITH THE EAST LINE OF SAID SECTION A DISTANCE OF 53 1/3 RODS; THENCE EAST PARALLEL WITH THE NORTH LINE OF SAID SOUTHEAST QUARTER, A DISTANCE OF 96 RODS TO A POINT ON THE EAST LINE OF SAID SECTION 7; THENCE NORTH ALONG SAID EAST LINE A DISTANCE OF 53 1/3 RODS TO THE POINT OF BEGINNING.

PARCEL E: (APN: 038-060-29S)

THE EAST 30 FEET OF THE FOLLOWING DESCRIBED PARCEL:

THAT CERTAIN PORTION OF THE SOUTHEAST QUARTER OF SECTION 7, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

Exhibit B

BEGINNING AT THE NORTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 7, RUNNING THENCE WEST ALONG THE NORTH LINE OF SAID QUARTER SECTION A DISTANCE OF 96 RODS; THENCE AT RIGHT ANGLES SOUTH A DISTANCE OF 53 1/3 RODS; THENCE AT RIGHT ANGLES EAST A DISTANCE OF 96 RODS TO THE EAST LINE OF SAID SECTION; THENCE NORTH LONG SAID EAST LINE OF SAID SECTION TO THE POINT OF BEGINNING.

EASEMENT PARCEL 9: (APN: 038-060-92S)

AN EASEMENT FOR A FILTER STATION SITE AS CREATED UNDER THAT CERTAIN INSTRUMENT RECORDED SEPTEMBER 27, 2010, INSTRUMENT NO. 2010-126979 OF OFFICIAL RECORDS, OVER THE FOLLOWING DESCRIBED PROPERTY:

BEGINNING AT THE SOUTHEAST CORNER OF THE SOUTHEAST QUARTER OF SECTION 9, TOWNSHIP 16 SOUTH, RANGE 14 EAST, MOUNT DIABLO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT THEREOF; THENCE WEST PARALLEL TO THE SOUTH BORDER OF SAID SECTION 9 ALONG THE MIDDLE OF THE RIGHT OF WAY OF WEST MOUNTAIN VIEW AVENUE, A DISTANCE OF 11 FEET; THENCE NORTH PARALLEL TO THE EAST BOUNDARY OF THE SOUTHEAST QUARTER OF SAID SECTION 9, A DISTANCE OF 25 AND 1/2 FEET, WHICH IS THE POINT OF BEGINNING; THENCE NORTH PARALLEL WITH SAID EASTERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 9, A DISTANCE OF 54 FEET; THENCE WEST PARALLEL WITH SAID MIDDLE OF RIGHT OF WAY OF WEST MOUNTAIN VIEW AVENUE, A DISTANCE OF 84 FEET; THENCE SOUTH PARALLEL WITH SAID EASTERLY LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 9, A DISTANCE OF 54 FEET; THENCE EAST PARALLEL WITH SAID MIDDLE OF RIGHT OF WAY OF WEST MOUNTAIN VIEW AVENUE, A DISTANCE OF 84 FEET TO THE POINT OF BEGINNING.

Exhibit B

Collateral Substitution Agreement
Andrews Corotto Robinson Collateral Substitution
Loan No. 198935
102910413.1 0053564-00390.001