MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

*Attorneys for Plaintiff METROPOLITAN LIFE INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, a California limited liability company, as successor by merger to 104 PARTNERS, LLC; WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; ASHLAN & HAYES INVESTMENTS, LLC, a California limited liability company; GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, a California limited liability company; MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:24-cv-01261-KES-SAB<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Dept.:<br><br>Action Filed: October 16, 2024<br>Trial Date: Not Set |

-1-

# *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER AND FOR PRELIMINARY INJUNCTION

Plaintiff METROPOLITAN LIFE INSURANCE COMPANY ("Plaintiff" or "MetLife"), by and through its counsel, and for its *Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction* (the "Motion"), states as follows:

## I.   INTRODUCTION

Defendants ACDF, LLC, Grantor Fresno Clovis Investments, LLC, and Willow Avenue Investments, LLC (the "Borrower-Owners"), together with affiliated Defendant Borrowers[1] and Guarantors, are in default to MetLife (alone) on a more than $7 million secured debt obligation. Since mid-September, almost <u>all</u> the Defendants have been sued by other financial institutions for defaults on secured agricultural loans associated with imperiled harvests and imminent loss of trees, irrigated crops, water rights, and delivery systems. Receiverships on other closely associated properties are springing as fruitfully as the agriculture.[2] Defendants are out of money, and the collateral that is valuable to California's agricultural supply stream *is out of time*. A receivership and injunction to protect the land MetLife is responsible for is now warranted and requested.

As security for the obligations under MetLife's Loan Documents[3], the Borrower-Owners granted to MetLife, among other rights, priority and continuing, recorded (and perfected) security interests in real property and personal property as collateral located in Kern and Fresno counties. As part of the Loan Documents, the Original Borrowers and now Borrower-Owners expressly consented to MetLife's appointment of a receiver in the event of default. (Declaration of Jeremy

---

[1] Other Defendant Borrowers include the "Original Borrowers" under the loan in question, who are Defendants Ashlan & Hayes Investments, LLC and Maricopa Orchards, LLC. The Guarantor Defendants include Farid Assemi, Fashid Assemi and Darius Assemi, each individually.

[2] Request for Judicial Notice ("RJN"), Exs. 1-3.

[3] MetLife incorporates the terms of its October 16, 2024 Complaint (Dkt. 1). Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

Rasmussen (the "Rasmussen Decl.") ¶¶ 16-18; Complaint[4], Ex. 1 (Dkt.1-1), Loan Agreement, § 11.1(g); Exs. 4 (Dkt. 1-4), 6 (Dkt. 1-6), Deeds of Trust, Section 14.1(g).)

Accordingly, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, MetLife requests the appointment of a receiver in order to conserve, maintain, and manage: (i) real property owned by Borrower-Owners, including all appurtenances, improvements, permanent plantings, water rights and irrigation equipment and infrastructure, easements, and rent, issues and profits (the "Real Property") (as further defined and described in MetLife's Complaint, ¶ 4); and (ii) personal property, not limited to: all equipment, goods, and accounts, whether attached or appurtenant to the Real Property; all crops (including without limitation harvested crops, farm products, and seed and the products and proceeds thereof) along with all present and future income, rents, issues, profits and revenues of the crops now or hereafter growing on the Real Property; all rights to the use and enjoyment of water, whether or not appurtenant to the Real Property, and all improvements for water delivery and storage, and easements and permits associated with the same (collectively, the "MetLife Receivership Property").

The Defendants have been provided ample notice of this (and other) defaults. (*See* Ramussen Decl. ¶¶ 17-18; Complaint ¶¶ 32-33.)[5]   The defaults are evidently incurable, as Defendants and Defendants-affiliate efforts to secure long-term financing to support the agriculture have fallen short. (RJN, Exs. 1-3.) Borrower-Owner ACDF, LLC, for instance, is already subject to two receiverships, one in the process of being continued and expanded from its original scope.[6] (*Id.*) The crop harvest is also set to conclude by the end of October 2024, and no further funding

---

[4] MetLife filed the Complaint for (1) Breach of Loan Agreement; (2) Breach of Guaranty; (3) Judicial Foreclosure; (4) Specific Performance and Appointment of Receiver; (5) Injunctive Relief; and (6) Replevin.

[5] *See also* RJN, Exs. 1 and 2.

[6] Borrower-Owners and/or their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations and acknowledged that "Borrowers face significant cash flow issues and will not have sufficient case to maintain, preserve, and care for the Property, including but not limited to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at 4:1-4.)

-3-

1  exists after that time to preserve and maintain the MetLife Receivership Property.  (RJN, Ex. 1.) Without sufficient funding, the MetLife Receivership Property, and particularly the trees comprising a significant portion of the value thereof, are subject to damage or destruction if not properly maintained during and after harvest.

MetLife is contractually and equitably entitled to the immediate appointment of a receiver to manage and operate, subject to the discretion of this Court, the MetLife Receivership Property. MetLife also has the right to a preliminary injunction because it faces irreparable harm should Borrower Owners and/or other associated Defendants' officers and directors, affiliates, creditors or other interested parties interfere with the receiver in the performance of its duties.

This requested order will ensure that MetLife shall protect and preserve the MetLife Receivership Property.  MetLife requests that this Court issue an order appointing a receiver over the MetLife Receivership Property and enjoining any and all Borrowers, Guarantors, and third parties from interfering with the receiver's maintenance and operation of the MetLife Receivership Property during the pendency of these proceedings.  In addition to maintaining and managing the MetLife Receivership Property, MetLife also requests that the order appointing the receiver instruct the receiver to: operate the MetLife Receivership Property pending any sale of such property; sell inventory and collect accounts in the ordinary course of operations; liquidate the MetLife Receivership Property, in whole or in part, by auction or by private sale subject to Court approval; and perform all other acts consistent with the terms of the order entered by the Court.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  THE LOAN DOCUMENTS AND LENDER'S COLLATERAL.

On or about August 18, 2017, MetLife made the Loan to the Original Borrowers, in the principal amount of Seven Million Three Hundred Twenty-Six Thousand and 00/100 Dollars ($7,326,000.00), the "Loan".  The Loan was secured by, *inter alia*, the Deeds of Trust in favor of MetLife as beneficiary.  (Rasmussen Decl. ¶ 7(a)-(e); Complaint, Exs. 4 (Dkt. 1-4 ), 5 (Dkt. 1-5), 6 (Dkt.1-6).)  The Deeds of Trust secured the Loan in favor of MetLife encumbering the Real Property and further includes as additional collateral an absolute assignment of Borrowers' right,

title, and interest in all present and future income, issues, profits, and revenues of the Real Property, Crops from the Real Property, leases relating to and arising from the Real Property, and Proceeds from the Real Property (as those terms are defined therein), and all benefits to be derived therefrom. (Rasmussen Decl. ¶ 21; Complaint, Exs. 4 (Dkt. 1-4), 6 (Dkt. 1-6) Deeds of Trust, Granting Clause C, § 11.5(a).)

The Deeds of Trust constitute a Security Agreement with respect to the MetLife Receivership Property. As further described in the Rasmussen Decl., ¶¶ 11-13 and the recorded instruments described therein (Dkt. 1-4, 1-6), including partial reconveyances, a collateral substitution and two consents to transfer, MetLife possesses, through the Deeds of Trust, priority security interests in: (i) Real Property, comprising of approximately 598.70 acres of irrigated agricultural land associated with Accessor's Parcel Numbers ("APN") owned by the Borrower-Owners as summarized in the chart below; (ii) all appurtenances, fixtures, permanent plantings, rights and benefits thereto, including all water rights, water agreements and related water delivery contracts, easements, leases, water storage agreements, rights under irrigation districts, well agreements, drainage rights and all water inventory and water in storage, water permits, and water licenses; and (iii) the products and proceeds thereof related to the MetLife Real Property including, but not limited to, the products and proceeds of agricultural products and permanent plantings including, but not limited to, cherries and pistachios.

///
///
///
///
///
///
///
///
///

| **Kern County** | **Borrower Owner of Record** |
|---|---|
| APN    220-130-35-00-4 | Willow Avenue Investments, LLC[7] |
| 220-130-17-00-2 | Grantor Fresno Clovis Investments, LLC |
| 220-130-24-00-2 | |
| 220-130-05-00-7 | |
| 220-130-30-00-9 | |
| **Fresno County** | **Borrower Owner of Record** |
| APN    038-141-59s * and associated easements | ACDF, LLC[8] |

B.   **BORROWERS' INCURABLE DEFAULTS.**

(1)   **Borrowers Unpaid Loan.**

On September 4, 2024, MetLife provided to all Defendants a Notice of Default and Demand for Payment for the approximate total due of $285,832.72. Defendants were further informed that if payment was not received by September 10, 2024, MetLife would initiate a demand and acceleration of the Loan. (Rasmussen Decl. ¶ 17; Complaint, Ex. 13 (Dkt. 1-13).)

The past due amount was not paid by September 10, 2024, and on or about September 18, 2024, MetLife sent Defendants a Notice of Default and Acceleration of Debt. (Rasmussen Decl. ¶ 18; Complaint, Ex. 14 (Dkt. 1-14).)

As of on or about September 18, 2024, the amounts that remain due and owing under the Loan Documents, including but not limited to all principal outstanding, interest, late charges, attorneys' fees, financial advisor fees, expenses, and advances, are in excess of $5,775,298.42. (Rasmussen Decl. ¶ 29.)

/ / /

/ / /

---

[7] Defendant Willow Avenue Investments, LLC became a borrower and assumed obligations under the associated Loan Documents and Kern and Fresno Deeds of Trust pursuant to the "2022 Consent" identified in Complaint paragraph 22(e). (Rasmussen Decl. 7(e); Dkt. 1-9.)

[8] Defendant ACDF, LLC became the successor in interest by merger to 104 Partners LLC, as described in Complaint paragraph 22 (d) (Rasmussen Decl. ¶ 7(e); Dkt. 1-8).

**(2)     Other Defaults.**

MetLife does not know the extent of Defendants' defaults to additional lenders or creditors, but these defaults (and the acceleration of the Loan) augment the precarious financial situation for Borrower-Owners and their related entities and affiliates.  (*See* RJN, Exs. 1-3.)

**C.     BORROWERS' FINANCIAL DISTRESS IS INCURABLE AND PUTS THE RECEIVERSHIP PROPERTY AT RISK OF DISTRESS.**

Borrower-Owners' financial strain and lack of operating cash flow places the MetLife Receivership Property in serious peril of distress itself.  (Rasmussen Decl. ¶¶ 23-26; Declaration of Phillip Christensen ("MetLife Receiver Decl.") ¶ 6.)  MetLife is informed and believes, based on discussions with employees at Agriglobe LLC who recently conducted inspections of the Real Property and interviews with Borrower-Owners' farm managers, there has been deferred cultural maintenance of the biological assets on the MetLife Receivership Property because of Borrower-Owners' financial distress, and the following needs to occur or the biological assets on the MetLife Receivership Property will be damaged or destroyed: post-harvest irrigation; post-harvest fertility; post-harvest soil amendments; winter sanitation (removal of any crop remaining on the trees); dormant insecticide spray applications; vertebrate control; pruning; and general repairs and maintenance to the irrigation system and other infrastructure.  (Rasmussen Decl. ¶25.)

Borrower-Owners (all Defendants) have significant cash flow and liquidity issues and have insufficient funds to operate post-harvest.  (RJN, Ex. 1 at 4:1-4.)  These issues are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the MetLife Receivership Property and care for the trees and plants located on the MetLife Receivership Property.

As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Receivership Property, which, along with the revenue generated by its operations, are the primary sources for repayment of the Loan, and MetLife, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower-Owners.

## III.  ARGUMENT AND LEGAL AUTHORITY

### A.  METLIFE IS ENTITLED TO THE APPOINTMENT OF A RECEIVER.

Federal courts may appoint a receiver under their inherent equitable powers, which appointment shall not be disturbed absent an abuse of discretion. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843–44 (9th Cir. 2009). Courts consider several factors in their analysis, including: (1) whether the moving party has a valid claim and is likely to succeed in the action; (2) whether the property interest at issue "is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (3) the possibility of irreparable injury to the moving party's interest in property; (4) whether the defendant is of doubtful financial standing; and (5) whether a receiver is necessary to protect the property or property interest of Plaintiff and other parties. *Id*. at 844; *see also N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (same).  The chief factors are the adequacy of the security serving as collateral and financial state of the defendant. *N.Y. Life*, 755 F. Supp. at 292.

#### 1.  Borrowers' Written Agreements Establish MetLife's Entitlement to the Appointment of a Receiver.

Federal courts have upheld the validity of receiverships based on an express agreement between lender and debtor. *See Okura & Co. (Am.), Inc. v. Careau Grp.*, 783 F.Supp. 482, 499 (C.D. Cal. 1991) ("the appointment of receiver, as provided for in the Deed of Trust and Security Agreement, for the defendants' property is necessary to protect the plaintiff's interest").

Here, Borrower-Owners expressly consented to the appointment of a receiver in the event of a default in at least two Loan Documents: the Loan Agreement and Deeds of Trust.  Under the Loan and Deeds of Trust, pursuant to the respective "Rights and Remedies on Default," MetLife has the right to have a receiver appointed to:

> take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, ex parte, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency

-8-

of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law.

(Rasmussen Decl. ¶¶ 16-18; Complaint, Ex. 1, ¶ 14(g) (Dkt. 1); Exs. 4 (Dkt. 1-4), 6 ¶ 14.1(g) (Dkt. 1-6).)

### 2.  MetLife Has a Valid Claim and Is Likely to Succeed.

A receiver is proper here, as MetLife is overwhelmingly likely to succeed on the merits of its claims for breach of the Loan. *See N.Y. Life*, 755 F. Supp. at 292 ("[I]n appointing receivers federal courts consider ... plaintiff's probable success in the action"). The Rasmussen Declaration comprehensively addresses Borrower-Owners' continuing defaults under the Loan Documents and Borrower-Owners' failure to timely pay in response to MetLife's Notice of Default and Acceleration of Debt. The amounts due and owing to MetLife as a result of those defaults continue to increase on a daily basis.

### 3.  MetLife Is Entitled to a Receiver to Protect Its Property Interests and Collateral From Irreparable Harm.

A court is "well within its discretion" to appoint a receiver where property constituting collateral is "in danger of substantial waste and risk of loss" or "may become insufficient to discharge the debt which it secures." *Canada Life Assur. Co.*, 563 F.3d at 845. Borrower-Owners are experiencing extreme financial difficulties and will not be able to continue operating without additional funds, including being unable to maintain post-harvest activities essential to the maintenance and operation of the MetLife Receivership Property. (Rasmussen Decl. ¶19; RJN Ex. 1 at 4:1-4.) If the MetLife Receivership Property is not cared for, substantial and long-lasting damage is likely to occur in the next several weeks and beyond. (Rasmussen Decl. ¶ 25.) The Receivership Property, including Proceeds, are under an immediate threat of damage, thereby threatening the value of MetLife's collateral and its ability to recover. A receivership is immediately necessary to prevent Borrowers from further eroding MetLife's Receivership Property and undermining prospects for repayment.

/ / /

/ / /

### 4. Borrowers' Financial Distress Requires the Court to Appoint a Receiver.

A "foremost factor" in whether a receiver should be appointed is the defendant's doubtful financial standing and imminent insolvency. *Canada Life Assur. Co.*, 563 F.3d at 844–45; *N.Y. Life*, 755 F. Supp. at 292 ("Most important among the factors are the adequacy of the security and the financial position of the mortgagor"). The Borrower-Owners are in financial distress. Borrower-Owners and/or their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations (RJN, Exs. 1 and 2) and in one stipulation, acknowledged that "Borrowers face significant cash flow issues and will not have sufficient case to maintain, preserve, and care for the Property, including but not limited to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at 4:1-4.) There is no evidence to suggest that Borrower-Owners' financial condition will improve at all, let alone enough to manage, operate, and appropriately care for the MetLife Receivership Property.

## B. THE COURT SHOULD GRANT METLIFE A PRELIMINARY INJUNCTION.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008). In determining whether to grant a temporary restraining order or preliminary injunction, courts in this Circuit consider four factors: (1) whether the applicant is likely to succeed on the merits of their claim; (2) whether the applicant is likely to suffer irreparable harm absent the preliminary injunction; (3) whether the equities weigh in favor of the proposed injunction; and (4) whether the preliminary injunction is in the public interest. *Id.* at 20.

The evidence laid out above establishes each factor weighs in favor of MetLife and the Court's issuance of immediate injunctive relief. The amounts due and owing under the Loan Documents, the defaults thereunder, and the impossibility to cure any such defaults given the size

of the obligations also establish MetLife's likeliness to succeed on the merits of its claim. Additionally, MetLife has also shown above that it is likely to suffer irreparable harm in the absence of relief, and that the balance of the equities tips in its favor. Finally, once the Court appoints a receiver herein, an injunction benefits the public interest because the receiver needs to be able fulfill its duties and obligations without potentially disruptive interference.

## C.  IF A BOND IS REQUIRED, A NOMINAL UNDERTAKING IS APPROPRIATE.

Security is required for issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).

### 1.  The Court Should Order a Nominal Undertaking.

In light of the Borrower-Owners' financial distress, MetLife proposes a nominal undertaking to redress Defendants from any damage that may result from the Court's appointment of a temporary receiver and issuance of a preliminary injunction. Any damage Borrowers' assets may suffer as a result of the Court's appointment of a temporary receiver and issuance of a preliminary injunction would not harm Borrowers, but MetLife.  An undertaking should be nominal.  (*See* MetLife Receiver Decl. ¶ 9.)

### 2.  Receiver's Bond.

Under L.R. 232(i), the receiver must maintain an undertaking. Pursuant to L.R. 151(h), MetLife, upon issuance of the Court's order appointing the receiver, proposes it post a cash deposit and submit a proposed written instrument, "executed and acknowledged by the party, setting forth the conditions on which the deposit is made, and the fact that the Clerk may collect or sell the obligations and apply ... the cash deposited[] in the case of default." L.R. 151(h).

## D.  THE COURT SHOULD APPOINT PHILLIP CHRISTENSEN OF AGRIGLOBE LLC AS RECEIVER.

MetLife requests that Phillip Christensen of Agriglobe LLC (the "MetLife Receiver") be appointed as receiver herein. The Declaration of Phillip Christensen ("MetLife Receiver Decl.") supporting his proposed receivership is attached hereto, which, among other things, provides for a general overview of Agriglobe LLC and a proposed fee schedule, and attaches the proposed MetLife Receiver's curriculum vitae.  These documents demonstrate that the proposed MetLife

-11-

Receiver is experienced in the maintenance, management, and daily operation of properties similar to the MetLife Receivership Property.

Mr. Christensen is a proper and competent receiver here. He is neither a party nor an attorney for a party to this action; has no interest in the action; and is not related to any judge of this Court. He will accordingly act as an agent of the Court and not of any party, carrying out its receivership duties neutrally and "for the benefit of all who may have an interest in the receivership property," and it will hold "assets for the court," not for any party. He will provide, as necessary, an inventory, monthly reports, and a final report. *See* L.R. 232(e)(1)–(2).

## IV.   CONCLUSION

Based upon all of the foregoing factors, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, MetLife respectfully submits that a receiver must be appointed to operate, preserve, and protect the Metlife Receivership Property pending a resolution of the above-captioned action. MetLife also respectfully request the entry of a preliminary injunction to prevent parties from interfering with the MetLife Receiver or the MetLife Receivership Property during the pendency of this receivership.

WHEREFORE, in view of the foregoing, the Plaintiff hereby request that the Court enter an Order:

(i) appointing Phillip Christensen as the MetLife Receiver to operate, preserve, and protect the MetLife Receivership Property, to collect the rents from and pay the expenses of the MetLife Receivership Property (including the fees and expenses of the MetLife Receiver), to turn over the net rents (if any) to MetLife on a monthly basis, and to take such other and further actions with regard to the MetLife Receivership Property as are permitted by the Order and applicable law;

(ii) for an order calendaring a hearing on the continuation of the receivership and order to show cause as to why a preliminary injunction should not issue. See L.R. 232(c); L.R. 231;

(iii) enjoining the Borrowers and Guarantors, their officers and directors, vendors, and any and all third parties from interfering with the MetLife Receiver or the MetLife Receivership Property during the pendency of the receivership; and

    (iv)    providing MetLife with such other and further relief as the Court deems just and appropriate.

DATED: October 22, 2024      STOEL RIVES LLP

By: /s/ Thomas A. Woods
MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com

*Attorneys for Plaintiff*
METROPOLITAN LIFE INSURANCE COMPANY