MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

*Attorneys for Plaintiff METROPOLITAN LIFE INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, a California limited liability company, as successor by merger to 104 PARTNERS, LLC; WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; ASHLAN & HAYES INVESTMENTS, LLC, a California limited liability company; GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, a California limited liability company; MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:24-cv-01261-KES-SAB<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Dept.:<br><br>Action Filed: October 16, 2024<br>Trial Date: Not Set |

-1-

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE ISO *EX PARTE* MOTION FOR ORDER APPOINTING
RECEIVER AND FOR PRELIMINARY INJUNCTION - Case No. 1:24-cv-01261-KES-SAB
126365950.1 0053564-00653

# REQUEST FOR JUDICIAL NOTICE

Under Rule 201, facts appropriate for judicial notice are those "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Plaintiff METROPOLITAN LIFE INSURANCE COMPANY, by and through its counsel, requests that the Court take judicial notice of the following exhibits in support of its Ex Parte Motion for Order Appointing Receiver:

**Exhibit 1:**  Attached hereto as Exhibit 1 is a true and correct copy of an Agreed Order Appointing Receiver With Limited Authority filed September 25, 2024 [Dkt. 51], in *The Prudential Insurance Company of America, et al. v. ACDF, LLC, et al.*, U.S.D.C., Case No. 1:24-cv-01102-KES-SAB (E.D. Cal.).

**Exhibit 2:**  Attached hereto as Exhibit 2 is a true and correct copy of  the Stipulation and Order on Motion for Order Appointing Receiver filed September 28, 2024 [Dkt. 32], in *U.S. Bank National Association v. Touchstone Pistachio Company, LLC, et al.*, U.S.D.C., E.D. Cal. Case No. 1:24-cv-01105-KES-SKO.

**Exhibit 3:**  Attached hereto as Exhibit 3 is a true and correct copy of an [Agreed] [Proposed] Order Expanding Receivership and for Preliminary Injunction filed October 11, 2024 [Dkt. 59-1] in *The Prudential Insurance Company of America, et al. v. ACDF, LLC, et al.*, U.S.D.C., Case No. 1:24-cv-01102-KES-SAB (E.D. Cal.).

DATED: October 22, 2024                    STOEL RIVES LLP


By: /s/ Thomas A. Woods
MICHAEL B. BROWN, Bar No. 179222
THOMAS A. WOODS, Bar No. 210050
BENJAMIN J. CODOG, Bar No. 307034
MICHELLE J. ROSALES, Bar No. 343519

*Attorneys for Plaintiff*
METROPOLITAN LIFE INSURANCE
COMPANY

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-2-

PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE ISO *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION - Case No. 1:24-cv-01261-KES-SAB
126365950.1 0053564-00653

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PGIM REAL ESTATE FINANCE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE.<br><br>Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br><br><br><br><br>AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY |

Upon due consideration of the Plaintiffs' Ex Parte *Motion for Order Appointing Receiver and for Preliminary Injunction* (the "**Motion**"), the Complaint (as defined below), the Declaration of William Sciacqua (the "**Plaintiff Declaration**"), and the Declaration of proposed receiver Lance Miller (the "**Receiver Declaration**"), the Oppositions filed to the Motion and the oral argument of counsel and good cause appearing therefor, and the Court being advised that the relief granted herein has been agreed to by both the Plaintiffs and the Farming Defendants (as defined below), and overruling any objections raised by any other parties appearing at the hearing hereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

B.      On September 16, 2024, Plaintiffs filed a Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents And Profits Clause; and Injunctive Relief (the "**Complaint**") against the above-captioned defendants (the "**Defendants**").[1]

C.      The Complaint alleges that: (a) Plaintiffs made certain loans to various entities, including ACDF, LLC; Assemi and Sons, Inc.; Avila Ranch EA, LLC; Bear Flag Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; DA Real Estate Holdings, LLC; Favier Ranch, LLC; Fg2 Holdings LLC; Gradon Farms, LLC; Granville Farms, LLC; Grantland Holdings No. 1, LLC; Grantland Holdings No. 2, LLC; Grantor Real Estate Investments, LLC; GVM Investments, LLC; GV Ag, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC; Panoche Pistachios, LLC; and Sageberry Farms, LLC (collectively, the "**Borrowers**") pursuant to the Loan Documents (as defined in the Complaint); (b) as security for the Borrowers' obligations under the Loan Documents, the Plaintiffs were granted, among other rights, a

---

[1] The term "Defendants" shall mean all named defendants in this action, while the term "Borrowers" shall mean all Defendants with the exceptions of Derek Bell and Rachel Marie White. **Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement** (each as defined in the Complaint).

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

continuing and first priority security interest in all real and personal property granted by Borrowers to Lender as security for the Loans, defined or otherwise described as "Property" in the Instruments (collectively, the "**Property**"); and (c) Plaintiffs perfected their security interest in the Property by, among other things, filing UCC-1 Financing Statements and the Instruments (as defined in the Complaint) with the relevant government offices. Plaintiffs further allege Defendants breached their obligations under the Loan Agreement by committing multiple Events of Default (as defined in the Loan Documents and described in more detail in the Complaint).

D.      On September 18, 2024, counsel for ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC and Sageberry Farms, LLC (the "**Farming Defendants**" and together with the Plaintiff, the "**Parties**") entered their appearance.

E.      On September 18, 2024, Plaintiffs filed a *Ex Parte* Motion for Order Appointing Receiver and for Preliminary Injunction (the "**Receiver Motion**") seeking to appoint Lance Miller of Pivot Management Group, LLC as receiver in the above-captioned action.

F.      On September 21, 2024, the Farming Defendants filed their Opposition to the Receiver Motion.

G.      The appointment of a receiver is not intended to be, nor shall it be, an election of remedies by Plaintiffs, and the appointment of the receiver is without prejudice or waiver to any claim, defense or argument that Plaintiffs or the Defendants may have with respect to the Complaint.

H.      There is good cause for the appointment of a receiver over the Property.  Based on the facts and circumstances of this case, federal law, the Loan Documents, and the agreement of the Plaintiffs and the Farming Defendants, the appointment of a receiver is warranted.

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

I.      Further, Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops. Such actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die.

J.      [Intentionally Omitted].

K.      Following counsel meeting and conferring, Plaintiffs and the Farming Defendants have agreed to the entry of this Agreed Order and the relief provided for herein, namely, that a Receiver be appointed solely for the purpose of inspecting, monitoring, observing and auditing the Farming Defendants' use of Receivership Property (defined below), the proceeds of the Crop Financing (defined below), cash and cash collateral, and proceeds of all of the foregoing, through the completion of the 2024 harvest season (estimated to conclude November 1, 2024).

L.      Plaintiffs and the Farming Defendants have further advised the Court that the Plaintiffs have agreed to finance such amounts as are reasonably necessary to complete the 2024 crop harvest (estimated to conclude by November 1, 2024) and in accordance with the Budget and the Term Sheet attached hereto as <u>Exhibit A</u> (the "**Crop Financing**").  The Crop Financing shall be loan funds advanced to Borrowers that shall be administered by the Receiver.  Advances on the loan shall be made by Plaintiffs to the Receiver for disbursement in accordance with this Order.   As part of the Crop Financing, the Plaintiffs will advance $32.404 million, or such higher amount as the Plaintiffs may agree in their sole discretion, for purposes of completion of pistachio and almond harvest for all properties of the Borrowers, whether or not such properties are subject to deeds of trust in favor of Plaintiffs.   Such advances shall be made pursuant to the Budget attached hereto as **<u>Exhibit A</u>**.  The Plaintiffs shall advance such funds directly to the Receiver, and the Receiver shall disburse the funds pursuant to the Budget to the Borrowers for operations.  The Borrowers shall continue to operate in the ordinary course of business subject to Receiver's monitoring and as otherwise provided herein.

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

M.      Accordingly, pursuant to the agreement of the Plaintiffs and the Farming Defendants, the provisions of this Agreed Order provide for an initial, limited "oversight and reporting" role for the temporary Receiver through October 31, 2024.

N.      [Intentionally Omitted].

O.      Lance Miller of Pivot Management Group, LLC (the "**Receiver**") is not interested in this action and is competent and qualified to act as receiver.

**IT IS ORDERED**:

1.      Lance Miller of Pivot Management Group, LLC (the "**Receiver**"), is appointed as Receiver.[2]

2.      The Receiver shall have the power and authority set forth in this Order or any supplemental Order signed by the Court.

3.      The term "**Receivership Property**" shall be defined as follows:

a.  The Property;

b.  The Farming Defendants' respective business operations in connection with Property; and

c.  The Farming Defendants' claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, wherever located, solely related to or arising out of the Property (clauses (a), (b), and (c) above, collectively, the "**Receivership Property**").

---

[2] The Receiver shall charge the amounts set forth in the Receiver Declaration for his services and expenses incurred, each of which is subject to annual adjustment upon notice to the parties.

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

4.     The Parties and/or the Receiver shall be authorized to make motion or application to this Court to expand or narrow the scope of Receivership Property or the parties subject to this Order, which shall be heard upon notice and hearing.

5.     From the date of entry of this Order until November 1, 2024, or such other date as agreed to in writing among the Plaintiffs and Defendants and filed with the Court, the Receiver shall monitor the harvest and business operations of the Farming Defendants and make Crop Financing advances as determined by the Receiver in his reasonable discretion, and as provided for herein.

6.     In the event the Receiver determines, in his sole discretion, that the Borrowers are not adequately preserving the value of the Property, or otherwise if the Receiver observes a material diminution in the value of the Property, the Receiver may seek further relief from this Court in order to manage the operations of the Farming Defendants and such other Defendants as the Receiver deems necessary or appropriate, with all rights of any party in interest to oppose same expressly reserved.

7.     [Intentionally Omitted].

8.     The Receiver shall be granted full access to and observation rights over the Farming Defendants' respective business operations and financial affairs related in any way to the Receivership Property.

9.     The Farming Defendants shall make their respective directors, officers, management, and employees available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties.

10.    The Receiver shall be, and hereby is, entitled to all rights, privileges, and protections afforded to each of the Farming Defendant's directors, officers or other fiduciaries including, but not limited to, insurance coverage under any currently existing insurance policies.

11.    Prior to appointment, the Receiver shall take the oath and file a bond in the sum of $5,000.00 to secure his faithful performance of his duties as the Receiver.

12.     [Intentionally Omitted].

13.     The Receiver shall be compensated in the amount of $50,000.00 per month, plus $875 / hour for each hour during a particular month that the Receiver expends more than 60 hours in the performance of his duties hereunder.

14.     The Receiver shall be entitled, to the fullest extent of the law, to indemnification from the Farming Defendants, and such Farming Defendants shall hold the Receiver harmless from any liability, loss, or damage the Receiver may suffer as a result of claims, demands, costs or judgments against him arising out of the activities to be carried out pursuant to the authority and obligations of his appointment pursuant to this Order or any supplemental Order; provided however, the Receiver shall not be entitled to indemnification for willful misconduct, gross negligence, or fraud as determined by a final order of the Court.   The carveout and charging lien provided for Paragraph 39 below shall also apply to any indemnification obligations owed pursuant to this Paragraph.

15.     All income tax reporting and payments, whether for periods prior to or during the terms of this receivership, shall remain the obligation of Defendants.  The Receiver shall not be required to report any income generated by the Receivership Property (including interest earned), or to pay any income taxes due thereon, nor shall Receiver bear liability for the failure of Defendants to report said income to taxing authorities or pay the taxes associated with such income.

16.     The Receiver is acting solely in his capacity as Receiver and shall have no personal liability for claims against the Farming Defendants, individually or collectively. With respect to any insurance coverage, the Receiver, and other parties with insurable interests, shall be named as additional insureds on the policies for the period that the Receiver shall be appointed.

17.     [Intentionally Omitted].

18.     The Receiver shall prepare periodic interim statements reflecting the fees and expenses of the Receiver, his financial advisors, and retained counsel incurred for said period in the observation of the

7

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

Defendants and the Receivership Property (each, an "**Interim Statement**"). Upon completion of an Interim Statement, and the mailing of said statement to the parties' respective attorneys of record or any other designated personal agent, the Borrowers shall pay the amount set forth in such Interim Statement. Despite the preparation of Interim Statements, such fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a noticed interim request for fees or a Receiver's final account and report. The Receiver is authorized to provide this Court or the Plaintiffs with any additional reports or information he deems appropriate.

19.     [Intentionally Omitted].

20.     [Intentionally Omitted];

21.     [Intentionally Omitted];

22.     Upon entry of this Order, Plaintiff shall take all reasonable efforts to serve this Order promptly on all Defendants, including Defendants other than the Farming Defendants, the parties intervening in this case ("**Intervenors**"), and all lenders of any Defendants whose loans are made primarily for agricultural purposes and are secured primarily by real property (the "**Real Estate Lenders**").

23.     A hearing on whether the receivership should be continued shall be set for October 22, 2024 at 1:30 P.M. (PT), with parties able to appear via Zoom. On or before October 11, 2024, Parties shall file pleadings as to whether the receivership should be continued with opposition pleadings due by October 18, 2024. On October 18, 2024, the Receiver shall file a report summarizing the temporary receivership.

**IT IS FURTHER ORDERED** that in addition to the rights and benefits granted in the prior decretal paragraphs of this Order, the Receiver is hereby also vested with the following rights and benefits:

24.     To inspect, monitor, audit, and observe the Farming Defendants' possession of, custody of, and use of the Receivership Property;

25.     To inspect, monitor, audit, and observe the Farming Defendants use of the Crop Financing provided by the Plaintiffs;

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

26.     To enter into any property where the Receivership Property may be located in order to inspect, monitor, audit, and observe the Farming Defendants' use, possession of, and custody of the Receivership Property;

27.     To inspect, monitor, audit, and observe the Farming Defendants' operations related to the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract, employment arrangement and all other aspects of any business operation in connection with or otherwise related to the Receivership Property;

28.     To inspect, monitor, audit, and observe the Borrowers' cash usage associated with managing, controlling, operating, and maintaining the Receivership Property;

29.     To obtain such Order(s) from the Court he deems prudent or necessary in the Receiver's sole discretion, for any reason;

30.     To make a motion or application to the Court regarding instruction or clarification in connection with the powers and scope of the receivership and this Order;

31.     To gain access to all Receivership Property;

32.     To inspect, monitor, audit, and observe the Farming Defendants' respective cash management systems, to the extent that such systems are used in connection with or otherwise relate to or include Receivership Property, including all bank accounts of Farming Defendants that are used as bank accounts for the business of operating the Receivership Property, and chattel paper that pertains to the Receivership Property, wherever located;

33.     To establish bank accounts in the name of any of the Farming Defendants, under any of their respective Employer Identification Numbers, at any bank the Receiver deems appropriate for the deposit of monies and funds advanced by the Plaintiffs, provided that all funds on deposit are insured by an agency of the United States government.  The Farming Defendants shall provide the Receiver within

24 hours of the Receiver's request all information, documentation, and signatures required by any bank or other financial institution to open or maintain any accounts as provided under this Order;

34. To investigate and identify any and all claims or causes of action that are Receivership Property;

35. To employ a law firm as Receiver's legal counsel ("**Receiver's Counsel**") in this matter, as reasonably necessary to accomplish the purposes of this Order, and pay the reasonable fees and expense of such Receiver's Counsel for services rendered in preparation of and during the receivership. Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the Receivership estate and in preparing for the Receiver's appointment. The attorneys' fees and cost incurred by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 39 of this Order;

36. To employ Pivot Management Group, LLC ("**Pivot Group**"), as Receiver's financial advisor in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to Pivot Group shall be based on the hourly rates and expenses as set forth in the Receiver Declaration, subject to annual adjustment upon notice to the parties. Pivot Group shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the receivership estate. The fees and costs incurred by Pivot Group may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 39 of this Order;

37. To employ such other professionals the Receiver deems reasonably necessary to accomplish the purposes of this Order;

38. To inspect, monitor, audit, and observe the books, records, and files of Farming Defendants and any related third party, including bank account and accounting records to determine the sources and uses of cash, accounts, and proceeds of the Receivership Property and to report the results of same to the Court and Plaintiffs. Receiver shall reasonably cooperate and communicate with the Intervenors and other

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

parties in interest with respect to his monitoring pursuant to the terms of this Order and shall provide any reports set forth in the preceding sentence of this Paragraph and any reports required of the Farming Defendants to the Intervenors and, upon request, other parties in interest;

39.    To pay: (a) fees and expenses owing to the Receiver, Receiver's Counsel, Pivot Group, and other professionals, and (b) any indemnification owing to the Receiver in connection herewith (collectively, the "**Administrative Claimants**"), in each case prior to payment to Plaintiffs. The Plaintiffs have agreed and there hereby is a carveout from the Plaintiffs' interests in the Receivership Property sufficient to secure payment in full of all amounts owed or owing to the Administrative Claimants. The Receiver is acting solely in his capacity as Receiver and in no event shall have any personal liability for any debts or obligations incurred by or on behalf of Farming Defendants; and

40.    This Order, and any financing provided under this Order, is without prejudice to, and has no effect on, any parties', including but not limited to the Parties, Intervenors, and the Real Estate Lenders, interests, priority, or positions in or with respect to the crops of Farming Defendants nor is this Order intended to modify any lien rights. This Order shall not be deemed to prejudice any such parties' rights to seek enforcement remedies or take other such actions, including but not limited to the seeking of the appointment of a receiver as to their respective interests.


IT IS SO ORDERED.

   Dated:   September 25, 2024   

_____
UNITED STATES DISTRICT JUDGE

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>          Plaintiff,<br><br>   vs.<br><br>TOUCHSTONE PISTACHIO COMPANY, LLC; FARSHID ASSEMI; FARID ASSEMI; DARIUS ASSEMI; NEEMA ASSEMI; MELISSA LAYNE; SONIA ROSEMARY ASSEMI; MARICOPA ORCHARDS, LLC; C&A FARMS, LLC; ACDF, LLC; CANTUA ORCHARDS, LLC; LINCOLN GRANTOR FARMS, LLC; PANOCHE PISTACHIOS, LLC; ADAMS GRANTOR LAND, LLC; GRANVILLE FARMS, LLC; SAGEBERRY FARMS, LLC; GRADON FARMS, LLC; MANNING AVENUE PISTACHIOS, LLC; ASSEMI AND SONS, INC.; WINSTON FARMS, LLC; FFGT FARMS, LLC; FAVIER RANCH, LLC; GRANTLAND FARMS, LLC; WHITESBRIDGE FARMS, LLC; ACAP FARMS, LLC; BEAR FLAG FARMS, LLC; COPPER AVNEUE INVESETMENTS, LLC; WILLOW AVENUE INVESTMENTS, LLC; ASHLAN & HAYES INVESTMENTS, LLC; ASSEMI BROTHERS, LLC,<br><br>          Defendants. | Case No. 1:24-cv-01105-KES-SKO<br><br>**STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING RECEIVER**<br><br>Action Filed : September 17, 2024 |

1.    On September 17, 2024, Plaintiff U.S. BANK NATIONAL ASSOCIATION ("U.S. Bank") filed its Complaint for Breach of Credit Agreement, Breach of Guaranty Agreement, Breach of Forbearance Agreement, Judicial Foreclosure, Specific Performance, Appointment of Receiver, Replevin and Injunctive Relief (the "Complaint").

2.    The Complaint alleges causes of action against defendants TOUCHSTONE PISTACHIO COMPANY, LLC ("Touchstone"); FARSHID ASSEMI; FARID ASSEMI; DARIUS ASSEMI; NEEMA ASSEMI; MELISSA LAYNE; SONIA ROSEMARY ASSEMI; MARICOPA ORCHARDS, LLC; C&A FARMS, LLC; ACDF, LLC; CANTUA ORCHARDS, LLC; LINCOLN GRANTOR FARMS, LLC; PANOCHE PISTACHIOS, LLC; ADAMS GRANTOR LAND, LLC; GRANVILLE FARMS, LLC; SAGEBERRY FARMS, LLC; GRADON FARMS, LLC; MANNING AVENUE PISTACHIOS, LLC; ASSEMI AND SONS, INC.; WINSTON FARMS, LLC; FFGT FARMS, LLC; FAVIER RANCH, LLC; GRANTLAND FARMS, LLC; WHITESBRIDGE FARMS, LLC; ACAP FARMS, LLC; BEAR FLAG FARMS, LLC; COPPER AVNEUE INVESETMENTS, LLC (sic); WILLOW AVENUE INVESTMENTS, LLC; ASHLAN & HAYES INVESTMENTS, LLC; and ASSEMI BROTHERS, LLC.

3.    On September 20, 2024, Plaintiff U.S. Bank filed a *Ex Parte* Motion for Order Appointing Receiver, Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should Not Issue (the "Receiver Motion") seeking to appoint David Stapleton as receiver of the assets of defendant TOUCHSTONE.

4.    On September 20, 2024, counsel for Defendants TOUCHSTONE, ACAP FARMS, LLC, ACDF, LLC, ADAMS GRANTOR LAND, LLC, ASSEMI AND SONS, INC., BEAR FLAG FARMS, LLC, C&A FARMS, LLC, CANTUA ORCHARDS, LLC, COPPER AVENUE INVESTMENTS, LLC (erroneously sued as COPPER AVNEUE INVESETMENTS, LLC), FFGT FARMS, LLC, FAVIER RANCH, LLC, GRADON FARMS, LLC, GRANTLAND FARMS, LLC, GRANVILLE FARMS, LLC, LINCOLN GRANTOR FARMS, LLC, MANNING AVENUE PISTACHIOS, LLC, MARICOPA ORCHARDS, LLC, PANOCHE PISTACHIOS, LLC, SAGEBERRY FARMS, LLC, WHITESBRIDGE FARMS, LLC, WILLOW AVENUE

INVESTMENTS, LLC, and WINSTON FARMS, LLC entered their appearance (the

"Defendants"). At this time, none of the other named defendants in the Complaint have appeared.

5.     Defendants dispute the allegations in the Complaint. However, both U.S. Bank

and Defendants recognize the value in minimizing the cost and uncertainty of litigation, as well as

maximizing the value of the assets that are in dispute as a result of the Complaint.

6.     As such, without prejudice or waiver to any claim, defense or argument that U.S.

Bank or Defendants may have with respect to the Complaint, U.S. Bank and Touchstone hereby

stipulate to the appointment of a receiver pursuant to Federal Rules of Civil Procedure 66; Local

Rule 231; and the Court's inherent equitable power to order the appointment of a receiver under

federal law, subject to the terms and conditions set forth in the [Proposed] Order set forth below.

**IT IS SO STIPULATED.**

DATED September 27, 2024                    DAVIS WRIGHT TREMAINE LLP
                                            Mary H. Haas
                                            Joseph M. VanLeuven
                                            John D. Freed
                                            Matthew E. Ladew


                                            By:/s/John D. Freed
                                               John D. Freed

                                            Attorneys for Plaintiff
                                            U.S. BANK, National Association


DATED September 27, 2024                    MCDERMOTT WILL & EMERY LLP
                                            Michael S. Nadel


                                            By:/s/Michael S. Nadel
                                               Michael S. Nadel

                                            Attorneys for Defendants
                                            TOUCHSTONE PISTACHIO COMPANY,
                                            LLC; MARICOPA ORCHARDS, LLC;
                                            C&A FARMS, LLC; ACDF, LLC;
                                            CANTUA ORCHARDS, LLC; LINCOLN
                                            GRANTOR FARMS, LLC; PANOCHE
                                            PISTACHIOS, LLC; ADAMS GRANTOR
                                            LAND, LLC; GRANVILLE FARMS, LLC;

1   SAGEBERRY FARMS, LLC; GRADON
    FARMS, LLC; MANNING AVENUE
2   PISTACHIOS, LLC; ASSEMI AND SONS,
    INC.; WINSTON FARMS, LLC; FFGT
3   FARMS, LLC; FAVIER RANCH, LLC;
    GRANTLAND FARMS, LLC;
4   WHITESBRIDGE FARMS, LLC; ACAP
    FARMS, LLC; BEAR FLAG FARMS,
5   LLC; COPPER AVNEUE
    INVESETMENTS, LLC; WILLOW
6   AVENUE INVESTMENTS, LLC,

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

# [PROPOSED] ORDER

**The Court hereby FINDS as follows:**

A.      Appointment of a receiver is appropriate pursuant to Federal Rules of Civil Procedure 66; Local Rule 232; and the Court's inherent equitable power to order the appointment of a receiver under Federal law.

B.      David Stapleton is not interested in this action and is competent and qualified to act as receiver.

C.      Good cause exists for the appointment of a receiver in order to maximize the recovery to creditors through the orderly sale of the assets of defendant Touchstone, and collection of obligations owed to Touchstone.

D.      Good cause exists for the entry of a preliminary injunction restraining and enjoining Touchstone and its agents, partners, property managers, employees, assignees, successors, representatives, and all persons acting under and/or in concert with it from committing or permitting waste of the Receivership Property, including any misuse of cash from the operations of Touchstone that are part of the Receivership Property; from removing, transferring, encumbering, or otherwise disposing of the Receivership Property; and from interfering with the receiver in the discharge of the Receiver's duties.

Having found the foregoing,

**IT IS ORDERED:**

1.      David Stapleton (the "**Receiver**") is appointed as a general receiver in this action.

2.      The Receiver is awarded exclusive possession and control over the "**Receivership Property,**" defined as follows:

            a. The "**Collateral**," as pledged and defined by Section 1 of the Security Agreement attached as Exhibit 3 to the September 20, 2024 Declaration of Karen Boyer in Support of U.S. Bank National Association's Ex Parte Motion for Order Appointing Receiver, Etc. (the "Boyer Declaration");

            b. The "**Trust Estate**" as set forth in the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing attached as Exhibit 4 to the Boyer

Declaration, including the personal property described therein (the "**Personal Property**"), and Touchstone's real property located at 19570 Ave. 88, Terra Bella, CA 93270, APN 319-130-022, as legally described in Exhibit A, in Exhibit 4 to the Boyer Declaration (the "**Real Property**"); and

    c.  All rights, entitlements, leases, interests, contracts, contracts for sale, and business affairs associated with and relating to the Collateral, Personal Property or Real Property.

3.    Until further order of the Court, the Receivership Property and any disputes related to the Receivership Property shall remain under this Court's exclusive jurisdiction.

4.    The Receiver shall not be subject to the control of any of the parties to this matter, but shall be subject only to the Court's direction in the fulfillment of the Receiver's duties.

<u>**Power and Duties of the Receiver**</u>

The Receiver shall have the following authority, powers and duties:

1.    During the pendency of the receivership, the Receiver is authorized and directed to take possession of, manage, control and collect all present and future Receivership Property, wherever located (including such Receivership Property as may be in the possession or control of third parties). In the course of liquidating and collecting the Receivership Property, the Receiver is authorized to conduct limited operations of the Receivership Property if, in his business judgment, the benefit of such operations would exceed the cost.

2.    The Receiver shall have exclusive right to possession of the Receivership Property and may (in accordance with applicable state law) enter any other property where the Receivership Property may be located in order to recover such Receivership Property.

3.    The Receiver is authorized to sell or otherwise liquidate or dispose of any or all of the Receivership Property by public or private sale or such other method as deemed appropriate by the Receiver exercising business judgment. All sales of Receivership Property shall be "as is" and "with all faults," free and clear of liens, claims and encumbrances, without representations or warranties and without recourse. Subject to the foregoing,

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

a.      The Receiver is authorized to employ a marketing agent to list and market from time-to-time any or all of the Receivership Property, in whole or in part, and to enter into such agreements to sell any portion of the Receivership Property on a contingency commission arrangement based on the close of any such sale, provided that each such agreement, the sale price, the commission, and the sale procedures to be employed shall be as authorized by and subject to the terms, covenants, and conditions contained in the Loan Agreements and Terra Bella DOT (as those terms are defined in Plaintiff's complaint), shall be subject to Plaintiff's prior written consent, which may be given or withheld in the exercise of Plaintiff's sole opinion and judgment, and shall be subject to approval and confirmation by this Court.  The Receiver is excused from effectuating the sale of any receivership Property in accordance with California Code of Civil Procedure § 568.5 and/or the provisions of the Enforcement of Judgments Act, and the Receiver may employ such sale procedures that the Receiver decides to employ in the exercise of the Receiver's discretion. Plaintiff and Defendants shall be kept apprised of the Receiver's efforts to market and sell the Receivership Property.  The Receiver is further authorized to retain other professionals that the Receiver determines in his reasonable discretion to be necessary to effectively market and sell the Property including, but not limited to, real estate appraisers, environmental consultants, and development consultants.  All real estate broker fees to be paid in connection with the Receiver's sale of the Property are subject to the prior approval of Plaintiff and this Court.  Sales of Real Property shall be in accordance with 28 U.S.C. § 2001;

b.      Except as ordered by the Court after notice and a hearing, all sales of Real Property shall be subject to the express written approval of U.S. Bank;

c.      The Receiver may conduct such sales of Touchstone's inventory as the Receiver may deem prudent in the ordinary course of Touchstone's business;

d.      The Receiver may sell equipment and other personal property Collateral at one or more commercially reasonable, professionally conducted auctions without any requirement to obtain an appraisal of such Collateral or Court order confirming such sales; and

e.      The  Receiver may sell inventory, equipment and other personal property Collateral outside the ordinary course of Touchstone's business with an aggregate price not more

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

than $150,000 to any one buyer, without further order of the Court, upon prior written approval from Plaintiff.

4. The Receiver may contract for, hire and terminate agents, employees, appraisers, guards, clerks, accountants, liquidators, auctioneers, attorneys and management companies and consultants without cause, to administer the Receivership Property, assist the Receiver in his duties, and to protect the Receivership Property as the Receiver deems necessary; purchase insurance, materials, supplies and services and pay therefore at the usual rate and prices out of funds that shall come into the Receiver's possession; pay the reasonable value of said services out of the proceeds of the estate; and no risk or obligation incurred by said Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the Receivership Property, subject to applicable federal law.

5. The Receiver may engage a locksmith for the purposes of gaining entry to any of the Receivership Property through any security system, in order to obtain any property or documents to which the Receiver is entitled pursuant to this Order.  The Receiver may have locks or security codes changed, or have keys created that will work for the existing locks.  The Receiver may obtain unfettered access to any electronic systems and/or accounts owned by Touchstone ("Electronic Accounts"); provided however, that for the avoidance of doubt, electronic systems and/or accounts owned by other Defendants or affiliates of Touchstone shall not be considered Electronic Accounts.  Touchstone shall provide, or shall direct its agents, partners, property managers, employees, assignees, successors, representatives, and all persons acting under and/or in concert with it to provide, the Receiver with any all means of accessing the Electronic Accounts, including but not limited to usernames, passwords, credentials, and/or the answers to challenge questions.

6. The Receiver may demand, collect, and receive all receipts, rents, profits, monies, security deposits, advance deposits, funds and payments arising from the Receivership Property, as a whole or as to any and all improvements thereon, and take all actions necessary or appropriate in furtherance thereof, including commencing any court actions, lawsuits, or other proceedings deemed appropriate by the Receiver in order to protect Receivership Property.

7.     The Receiver may take any and all steps necessary to receive, collect and review all mail and deliveries addressed to Touchstone and any post office boxes held in the name of Touchstone and, at the Receiver's discretion, to instruct the U.S. Postmaster to re-route, hold, and or release said mail to the Receiver.  Mail reviewed by the Receiver in the performance of duties will promptly be made available for inspection to Touchstone after review by the Receiver.

8.     The Receiver may take possession of all of Touchstone's bank accounts and chattel paper that pertain to the Receivership Property wherever located and receive possession of any money on deposit in said bank accounts.  The subject bank is discharged from further responsibility for accounting to Touchstone for funds for which the Receiver has given a receipt.

9.     The Receiver may establish bank accounts at any bank the Receiver deems appropriate for the deposit of monies and funds collected and received in connection with the administration of the Receivership Property, provided that all funds on deposit are insured by an agency of the United States government.  Touchstone shall provide the Receiver within 48 hours of the Receiver's request all information, documentation and signatures required by any bank or other financial institution to open or maintain any accounts as provided under this Order.

10.     Upon presentation of a conformed copy of this Order to any third party, including but not limited to banks or depositories owing performance of any obligation or duty to Touchstone with respect to the Receivership Property, such third parties shall render any performance or duties with respect to the Receivership Property directly to the Receiver.

11.     The Receiver may seek discovery of any books and records of Touchstone's affiliates or other persons or entities that the Receiver deems necessary or desirable to carry out the Receiver's duties, including the books and records of Assemi Group, Inc. ("**AGI**") concerning or related to Touchstone.

12.     The Receiver shall execute and prepare all documents and perform all acts, including entering into contracts, operating licenses, or signing checks or initiating and processing electronic funds transfers either in the name of Touchstone, as it is applicable, or in the Receiver's own name, which are necessary or incidental to preserving, protecting, managing, controlling and/or liquidating the Receivership Property.

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

13.     The Receiver may compromise debts related to the Receivership Property and do all things and to incur the risks and obligations of similar businesses operating the Receivership Property.  Subject to applicable federal law, no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the Receiver, but shall be the risk or obligation of the Receivership Property.

14.     The Receiver may contact, and bring and prosecute all proper actions for collection from any debtor on the accounts receivable for the Receivership Property ("Accounts Receivable Debtors"), and advise them not to send further accounts receivable payments to Touchstone and instruct the Accounts Receivable Debtors to send any and all payments directly to the Receiver.

15.     **Net proceeds from sale of Receivership Property, and other money coming into possession of the Receiver and not expended for any of the purposes herein authorized, shall be held by said Receiver for the payment of the obligations of Touchstone to Plaintiff and other creditors, subject to such orders as the Court may hereinafter issue as to its disposition.**

16.     The Receiver may institute ancillary proceedings in this State or other states and countries, prosecute and tender all suits or insurance claims, and pursue all remedies available by law as is necessary to preserve and protect the Receivership Property and ensure compliance with the Receiver's authority. The Receiver may bring and prosecute all proper action for collection of payments, rent and lease payments due, if any, on the Receivership Property, as well as necessary actions and proceedings for the removal of tenants or lessees in default for any rental or lease agreement, or any other persons, from the Receivership Property, and may bring and prosecute all proper actions for the protection of the Receivership Property or recovery thereof.

17.     Receiver, as an agent of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the Receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership Property, without further order from the Court.

18.     The Receiver may exclude any person or entity who does not have a lease or rental agreement from possession of the Receivership Property, or any portion thereof.

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

19.     The Receiver may assume, extend, or modify any pre-receivership contracts or agreements, including unexpired leases, relating to the Receivership Property, and/or reject such contracts in the Receiver's sole judgment and discretion.

20.     Unless otherwise ordered by the Court, the Receiver is not obligated to undertake, and will have no liability for any remediation or cleanup with respect to hazardous materials presently existing under, on or about the Real Property. The Receiver is authorized, in its sole discretion, to initiate environmental due diligence, inspections, or other environmental monitoring it initiates, and shall have no liability for any hazardous materials presently existing under, on or about the Real Property.

21.     The Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes arising before the date of this order.  The Receiver shall otherwise comply with all applicable laws and regulations relating to tax-reporting requirements. The Receiver shall furnish Defendants with such access to books and records within the Receiver's custody or control as reasonably may be necessary for Defendants to complete and file tax returns on their own behalf.

22.     The Receiver shall be entitled to utilize Touchstone's tax identification numbers in connection with any powers exercised pursuant to this Order or, at the Receiver's discretion obtain new tax identification numbers.

23.     Any utility company providing services to the Receivership Property, including gas, electricity, water, sewer, trash collection, telephone, cable, communications Wi-Fi, Internet, or similar services, shall be prohibited from discontinuing and prohibited from failing to comply with any request by the Receiver to, and are prohibited from refusing to, reinstitute service to the Receivership Property based any non-payment by Touchstone prior to the Receiver's appointment by the Court based upon unpaid bills incurred by Touchstone.  Further, such utilities shall transfer all rights to any deposits held by the utility company to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services.  New accounts under the name of the Receivership may be established within 30 days, or the Receiver may continue to operate under Touchstone's accounts.

24.     The Receiver may analyze the books, records, and files of (a) Touchstone and (b) on order of the Court, following notice to the affected party, those of AGI or other person or entity with respect to Touchstone, including bank account and accounting records to determine the sources and uses of cash, accounts, and asset sale proceeds, to investigate transfers of funds by or to Touchstone, and to engage in other forensic accounting as deemed appropriate to the Receiver.

25.     The Receiver, on order of the Court, following notice and a hearing, and on the conditions or terms that the Court considers just and proper, may abandon any Receivership Property that is burdensome to the Receiver or is of inconsequential value or benefit. Property that is abandoned shall no longer constitute Receivership Property.

26.     The Receiver, or any party to this action, may from time to time, and on due notice to all parties, make application to the Court for further orders instructing said Receiver or expanding the Receiver's authority.

## Receivership Expenses

27.     The Receiver shall charge the amount of $475 per hour for his services, subject to annual adjustment upon notice to the parties, plus expenses as set forth in Exhibit 2 to the September 20, 2024 Declaration of David Stapleton filed in support of the Receiver Motion, which is subject to annual adjustment upon notice to the parties.

28.     The Receiver shall pay the operating expenses of the Receivership Property from the income generated by the Receivership Property, and to the extent Receivership Property income is inadequate to pay the operating expenses, may borrow money from the "**Lenders**" described in Plaintiff's Complaint (such borrowings, the "**Receivership Advances**").

29.     The Lenders shall not be obligated to make Receivership Advances, but any such Receivership Advances shall be added to the obligations owed by Touchstone to the Lenders making said Receivership Advances. Receivership Advances shall bear interest at the rate provided under the Loan Agreements, and shall be paid to the extent of available Receivership Property no later than upon approval of the Receiver's final report and account. If there is insufficient Receivership Property to repay the Receivership Advances in full, Touchstone and the

defendant Guarantors shall have sole liability to repay such deficiency and, and the Receiver shall have no liability to repay such deficiency.

30.     The Receiver may issue to Plaintiff, as Collateral Agent for the Lenders, Receiver's Certificates to evidence Receivership Advances, with such Receiver's Certificates to be liens against the Receivership Property that have priority over all other liens, interests and claims against the Receivership Property on a priority repayment basis, except for fees and costs approved under Paragraph 32.  The original Certificates shall be delivered to Plaintiff, to be filed and/or recorded in Plaintiff's discretion.

31.     Within 30 days following entry of this Order, the Receiver shall prepare an operating budget for the receivership (the "**Budget**") and submit it to Plaintiff for approval, which must include all anticipated fees, expenses, and disbursements of the Receivership Property.

32.     The Receiver is authorized to make payment for any bond, fees and costs, and for the Receiver's fees and fees and costs of professionals, by filing a notice of intent to compensate professionals and serving such notice, together with a reasonably detailed description of the time periods, services and amount requested, on the parties or their counsel, if applicable, creditors having liens, security interests or other interests on or in the Receivership Property, and anyone else filing an appearance in this case.  If no party in interest objects to such notice within 10 calendar days of its filing and service, the fees and costs shall be deemed approved as being fully and finally earned without further order or leave of the Court.  If a party objects, the party will serve a written objection on the Receiver stating the nature and scope of the objection.  Upon receipt of an objection, the Receiver and the objecting party must first attempt to resolve the objection through negotiation.  If the objection cannot be so resolved, the objecting party may file its objection in Court within 7 days after the date of the objection.  Unless otherwise agreed by the Receiver, any objection not filed within 7 days after the date of service of the objection is deemed waived.  Only those portions of the fees and costs that are the subject of a timely objection will be withheld from payment until the objection is resolved, and all other portions of the fees and costs will be deemed approved without further order or leave of the Court.  The approved fees and costs of the Receiver and its professionals shall be paid from the gross receipts derived from the

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

Receivership Property and shall be a first-priority lien on Receivership Property.  If Receivership

Property is not sufficient to pay the Receiver's fees and its professional's fees as presented, the

Plaintiff shall advance funds to the Receiver sufficient to pay such approved fees and costs.  Any

such advance will be considered a Receivership Advance.

33.     The Receiver may employ a law firm as Receiver's legal counsel ("Receiver's

Counsel") in this matter, as reasonably necessary to accomplish the purposes of this Order.

Compensation to Receiver's Counsel shall be based on an hourly rate not to exceed $600.00 per

hour, subject to annual adjustment upon notice to the parties.  Receiver's Counsel shall be entitled

to reimbursement of all reasonable costs and expenses incurred on behalf of the Receivership

estate. The attorneys' fees and cost incurred by Receiver's Counsel may be included in the

administrative costs and expenses to be paid to the Receiver in accordance with paragraph 32 of

this Order.

34.     The Receiver may employ The Stapleton Group as Receiver's agent in this matter,

as reasonably necessary to accomplish the purposes of this Order.  Compensation to The Stapleton

Group shall be based on the hourly rates and expenses as set forth in Exhibit 2 to the Declaration

of David Stapleton, subject to annual adjustment upon notice to the parties.  The Stapleton Group

shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the

Receivership Property.  The reasonable fees and costs incurred by The Stapleton Group may be

included in the administrative costs and expenses to be paid to the Receiver as set forth in

Paragraph 32.

### Financial Reporting

35.     To the extent feasible, the Receiver shall, within thirty (30) days of qualification

hereunder, file in this action an inventory of all property of which the Receiver has taken

possession pursuant to this Order and shall conduct periodic accountings thereafter.

36.     Beginning on the second Thursday following approval of the Budget and weekly

thereafter, the Receiver shall provide the Plaintiff with weekly reporting regarding the

Receivership Property's performance under the Budget, including a variance report with

explanations for any negative variance on a line-item basis.  The Receivership Advances

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

authorized above shall be consistent with the Budget.  Total disbursements for any particular measurement period on an aggregate, accumulated, and rolling basis, shall not exceed any line item in an approved budget by more than 10 percent of Budgeted amounts, without the written consent of the Plaintiff. The Receiver and the Plaintiff may amend the Budget from time to time by agreement.

37.     The Receiver shall provide the Court, the parties or their counsel, if applicable, and anyone else filing a notice of appearance in the case, monthly reports on the operations and financial affairs of the Receivership Property (each, a "Report").  Each Report shall be due by the last day of the subsequent month and shall include: (a) a balance sheet; (b) a statement of income and expenses; (c) a cash flow statement; (d) a statement of accrued accounts receivable of the receiver, with amounts considered uncollectable; (e) a statement of accounts payable of the receiver, including professional fees; (f) Receivership Property sale progress reports; and (g) a narrative summary of the operations, if any, of the Receivership Property.  The Receiver's Report shall also include a copy of any Receivership Certificates issued during the period covered by the Report.  The Receiver's first Report shall be a report of the first two months of operation.

38.     If there is insufficient insurance coverage on the Receivership Property, the Receiver shall have thirty (30) business days to procure said insurance on the Receivership Property, provided the Receiver has funds available to do so, and during said period, the Receiver shall not be personally responsible for claims arising or for the procurement of insurance.  With respect to any insurance coverage, the Receiver, and other parties with insurable interest, shall be named as additional insureds on the policies for the period that the Receiver shall be in possession of the Receivership Property.  With respect to any property coverage in existence or obtained, Plaintiff shall be named as the mortgagee and loss payee.

### Procedure for Notice and Hearing

39.     To the extent this Order requires Court approval for any action herein, the Receiver may file a notice of proposed action and proposed Order, with a seven-day response time.  If no party-in-interest files a written objection to the proposed action or form of Order within the Response Time, the Receiver may submit such Order for entry by the Court, supported by a

declaration attesting that no objections were filed.

## Effective Date

40.     Appointment of the Receiver as the receiver is effective as of the date the Receiver furnishes a bond from a court-approved surety in the sum of $50,000.

41.     Entry of this Order, countersigned by the Receiver, evidences the Receiver's acceptance of its rights and duties hereunder and constitutes administration of any required oath of office.

## Preliminary Injunction

42.     Touchstone and its respective agents, partners, property managers, employees, assignees, successors, representatives, members, managers, creditors, lessors, customers, tenants, lienholders of Receivership Property, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Touchstone, and all others acting for or on behalf of such persons or acting under and/or in concert with them, including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies, and their respective attorneys, agents, servants, and employees, excluding Plaintiff("Restrained Parties") are hereby preliminarily enjoined as of  9/28/2024   at  6:55 p.m. as follows:

> a.     Restrained Parties shall not interfere with the Receiver in the performance of his duties, or commit or permit any waste of the Receivership Property.
>
> b.     Restrained Parties shall not transfer any part of the Receivership Property, including cash proceeds of operations, to any third party for any purpose other than payment bona fide accounts payable to unaffiliated third parties of Touchstone for its business operations.
>
> c.     Restrained Parties shall not expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property without prior Court order.
>
> d.     Restrained Parties shall not commence, prosecute, continue or enforce any suit or proceeding against Touchstone, except as such actions may be filed to toll

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

any applicable statutes of limitations with respect to Receivership Property.

e.      Restrained Parties shall not commence, prosecute, continue or enter into any suit or proceeding in the name or on behalf of Touchstone with respect to property of the Receivership Property.

f.      Restrained Parties shall not accelerate the due date of any obligation or claimed obligation, enforce any lien upon, or take or attempt to take possession of, or retain possession of, any of the Receivership Property, or any property claimed by any of them or attempting to foreclose, forfeit, alter, or terminate any of Touchstone's interest in property, including, without limitation, the establishment, grant or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise with respect to the Receivership Property.

g.      Restrained Parties shall not use self-help or execute or issue, or cause the execution or issuance, of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon, any property, wheresoever located, owned by or in the possession of Touchstone or the Receiver appointed pursuant to this Order or any agent appointed by said Receiver with respect to Receivership Property; and

h.      Restrained Parties shall not do any act or thing whatsoever to interfere with the Receiver taking control, possession or management of property of the Receivership Property or any other property subject to this Receivership, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the Receivership Estate, including refusing to turn over Receivership Property upon demand by the Receiver.  Provided, however, nothing in this paragraph shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Estate with respect to Receivership Property.

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

43.     The Restrained parties are hereby affirmatively required to provide full and immediate access to the Receiver of all books and records, including banking records and Electronic Accounts, of Touchstone and access to its bank accounts.  Restrained Parties, by and through appropriate and knowledgeable persons employed by Touchstone, promptly shall respond to any and all inquiries from the Receiver as to operations.  Restrained Parties shall provide the Receiver with all keys, access codes, passwords, usernames, security questions and answers, and credentials to access Touchstone's books and records, including Electronic Accounts.

**IT IS FURTHER ORDERED,**

1.     The Receiver Motion is withdrawn.

2.     Defendants have the right to apply to the Court for modification or dissolution of this Order according to the Local Rules for the United States District Court for the Eastern District of California.

IT IS SO ORDERED.

 Dated:   September 28, 2024 

UNITED STATES DISTRICT JUDGE

STIPULATION AND ORDER ON MOTION FOR ORDER APPOINTING TEMPORARY RECEIVER
Case No.: 1:24-1105-KES-SKO

# EXHIBIT 3

1  SEYFARTH SHAW LLP
   M. Ryan Pinkston (SBN 310971)
2  rpinkston@seyfarth.com
   Brandon K. Franklin (SBN 303373)
3  bfranklin@seyfarth.com
   560 Mission Street, 31st Floor
4  San Francisco, California 94105
   Telephone: (415) 397-2823
5  Facsimile: (415) 397-8549

6  Attorneys for Plaintiffs
   The Prudential Insurance Company
7  Of America and PGIM
   Real Estate Finance, LLC

8

9                  UNITED STATES DISTRICT COURT

10                 EASTERN DISTRICT OF CALIFORNIA

11

12 THE PRUDENTIAL INSURANCE COMPANY  )
   OF AMERICA and PGIM REAL ESTATE   )   Case No. 1:24-cv-01102-KES-SAB
13 FINANCE, LLC,                     )
                                     )
14                  Plaintiffs,      )
                                     )
15 v.                                )   **[AGREED] [PROPOSED] ORDER**
                                     )   **EXPANDING RECEIVERSHIP AND FOR**
16 ACDF, LLC; ASSEMI AND SONS, INC.; )   **PRELIMINARY INJUNCTION**
   AVILA RANCH EA, LLC; BEAR FLAG    )
17 FARMS, LLC; C & A FARMS, LLC; CANTUA )
   ORCHARDS, LLC; DA REAL ESTATE     )
18 HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 )
   HOLDINGS LLC; GRADON FARMS, LLC;  )
19 GRANVILLE FARMS, LLC; GRANTLAND   )
   HOLDINGS NO. 1, LLC; GRANTLAND    )
20 HOLDINGS NO. 2, LLC; GRANTOR REAL )
   ESTATE INVESTMENTS, LLC; GVM      )
21 INVESTMENTS, LLC; GV AG, LLC; LINCOLN )
   GRANTOR FARMS, LLC; MARICOPA      )
22 ORCHARDS, LLC; PANOCHE PISTACHIOS, )
   LLC; SAGEBERRY FARMS, LLC; DEREK  )
23 BELL; and RACHEL MARIE WHITE,     )
                                     )
24                  Defendants.      )
                                     )
25 _____

26     Upon due consideration of the Plaintiffs' Ex Parte *Motion for Order Appointing Receiver and for*

27 *Preliminary Injunction* (the "**Receiver Motion**"), Plaintiff's *Motion in Support of Continuation of*

28 *Receivership* (the "**Continuance Motion**"), the Complaint (defined below), the Declaration of William

_____
                ORDER EXPANDING RECEIVERSHIP

Sciacqua (the "**Plaintiff Declaration**"), the Declaration of receiver Lance Miller (the "**Receiver Declaration**"), the Oppositions filed to the Motion, [the Court being advised that the relief granted herein has been agreed to by both the Plaintiffs, the Farming Defendants (as defined below), and certain other parties in interest,] and the oral argument of counsel and good cause appearing therefor, the Court hereby finds that:

A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

B.     On September 16, 2024, Plaintiffs filed a Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents And Profits Clause; and Injunctive Relief (the "**Complaint**") against the above-captioned defendants (the "**Defendants**").[1]

C.     The Complaint alleges that: (a) Plaintiffs made certain loans to various entities, including ACDF, LLC; Assemi and Sons, Inc.; Avila Ranch EA, LLC; Bear Flag Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; DA Real Estate Holdings, LLC; Favier Ranch, LLC; Fg2 Holdings LLC; Gradon Farms, LLC; Granville Farms, LLC; Grantland Holdings No. 1, LLC; Grantland Holdings No. 2, LLC; Grantor Real Estate Investments, LLC; GVM Investments, LLC; GV Ag, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC; Panoche Pistachios, LLC; and Sageberry Farms, LLC (collectively, the "**Borrowers**") pursuant to the Loan Documents (as defined in the Complaint), (b) as security for the Borrowers' obligations under the Loan Documents, the Plaintiffs were granted, among other rights, a continuing and first priority security interest in all real and personal property granted by Borrowers to Lender as security for the Loans, defined or otherwise described as "Property" in the Instruments (collectively, the "**Property**"), and (c) Plaintiffs perfected their security interest in the Property by, among other things, filing UCC-1 Financing Statements and the Instruments (as defined in the Complaint) with the relevant government offices. Plaintiffs further allege Defendants breached their obligations under the

---

[1] The term "Defendants" shall mean all named defendants in this action, while the term "Borrowers" shall mean all Defendants with the exceptions of Derek Bell and Rachel Marie White. **Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement** (each as defined in the Complaint).

2

Loan Agreement by committing multiple Events of Default (as defined in the Loan Documents and described in more detail in the Complaint).

D.    On September 18, 2024, counsel for ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC and Sageberry Farms, LLC (the "**Farming Defendants**" and together with the Plaintiff, the "**Parties**") entered their appearance.

E.    On September 18, 2024, Plaintiffs filed the Receiver Motion, seeking to appoint Lance Miller of Pivot Management Group, LLC as receiver in the above-captioned action.

F.    On September 21, 2024, the Farming Defendants filed their Opposition to the Receiver Motion.

G.    On September 25, 2024, the Court entered an Agreed Order Appointing Receiver with Limited Authority ("**Receivership Order**") [ECF No. 51 at 8, ¶ 23], pursuant to which the Court appointed the Receiver for the purpose of inspecting, monitoring, observing and auditing the Farming Defendants' use of Property,  the proceeds of the Crop Financing, cash and cash collateral, and proceeds of all of the foregoing, through the completion of the 2024 harvest season.

H.    The Receivership Order also set a hearing on whether the receivership should be continued for October 22, 2024, a deadline for the filing of pleadings as to whether the receivership should be continued for October 11, 2024, and a deadline for the filing of opposition pleadings for October 18, 2024.

I.    On October 11, 2024, Plaintiffs filed the Continuance Motion. Pursuant to the Continuance Motion, Plaintiffs set forth that the receivership should be continued and should be expanded.

J.    In accordance with the Loan Documents, Plaintiffs seek to expand the receivership, with the Receiver having authority to, among other things: (a) preserve the Property and protect it from dissipation and diminution in value; (b) conduct the business and affairs of the Farming Defendants related to the Property; and (c) assess whether a sale of the Farming Defendants or their assets would maximize value, and, following that assessment, implement an organized sale process of the Property.

K.    Good cause has been shown for the appointment of a receiver over the Property and the related businesses of the Farming Defendants, including that: (a) Plaintiffs have valid claims for the non-

payment of the significant debt owed to them and the multiple Events of Default under the Loan Documents; (b) there is an imminent danger the Property will be concealed, lost or diminish in value; (c) the principal legal remedy available to Plaintiffs – foreclosure – is inadequate; (d) no less drastic remedy exists; and (e) the appointment of a receiver will do more good than harm.

L.       The appointment of a receiver is not intended to be, nor shall it be, an election of remedies by Plaintiffs, and Plaintiffs expressly reserve their rights and remedies against Defendants, the Property, and any and all persons or entities that have any obligations to Plaintiffs under applicable law and the Loan Documents with respect to the debt owed to Plaintiffs under the Loan Documents.

M.      The appointment of a receiver over the Property and the related businesses of the Farming Defendants for the purposes set forth herein is necessary for the protection and preservation of the Property. Based on the facts and circumstances of this case, federal law, and the Loan Documents, the appointment of a receiver is warranted.

N.       Further, as stated in the Plaintiff Declaration, the Borrowers have indicated that they face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops. Such actions would obviously cause tremendous damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die.  Additionally, as set forth in the Plaintiff Declaration, the Farming Defendants have transferred certain crops which constitute the Property to an entity called Touchstone Pistachio Company, LLC ("**Touchstone**"), for which the Farming Defendants are not being paid and has not been paid for at least the last several months.  The Borrowers and Touchstone have common ownership and management. The Plaintiffs fear that without an ordered injunction, Touchstone (and perhaps others) will continue this course of conduct and work to frustrate the purpose, intent and efforts of any appointed receiver.  Thus, an injunction is also warranted in connection with the appointment of a receiver here.

O.       Plaintiff has established that: (i) as a result of the amounts due and owing under the Loan Documents, the defaults thereunder, and the difficulty in curing any such defaults, Plaintiff is likely to succeed on the merits of its claim; (ii) Plaintiff is likely to suffer irreparable harm in the absence of an injunction; (iii) the balance of the equities is in Plaintiff's favor; and (iv) when coupled with the

appointment of a receiver, an injunction benefits the public interest because the receiver needs to be able fulfill his duties and obligations without potentially disruptive interference.

P.      [Following counsel meeting and conferring, Plaintiffs and the Farming Defendants have agreed to the entry of this Agreed Order and the relief provided for herein.]

It is therefore:

**ORDERED** that Lance Miller of Pivot Management Group, LLC (the "**Receiver**"), who the Court finds is qualified and independent and who the Court appointed as Receiver pursuant to the Receivership Order, shall be vested with complete jurisdiction and sole control over all of the: (a) Property; (b) Farming Defendants' respective business operations in connection with Property; and (c) Farming Defendants' claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, wherever located, solely related to or arising out of the Property (clauses (a), (b), and (c) above, collectively, the "**Receivership Property**").

**IT IS FURTHER ORDERED** that the Receiver shall have sole and exclusive power and authority to manage and direct the business and financial affairs of each of the Farming Defendants in connection with or otherwise related to the Receivership Property including, without limitation, the powers set forth below, and holding authority to petition on behalf of each of the Farming Defendants for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "**Code**") and, if so filed, be and be deemed authorized to operate each of the Farming Defendants as a debtor-in-possession in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

**IT IS FURTHER ORDERED** that the Receiver shall be, and hereby is, entitled to all rights, privileges, and protections afforded to each of the Farming Defendants' directors, officers or other fiduciaries including, but not limited to, insurance coverage under any currently existing insurance policies;

**IT IS FURTHER ORDERED** that the Farming Defendants shall make their respective directors, officers, management, and employees available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties.

ORDER EXPANDING RECEIVERSHIP

314191440v.1

IT IS FURTHER ORDERED that before entering upon his duties as the Receiver, the Receiver shall take the oath and file a bond in the sum of $5,000.00 to secure his faithful performance of his duties as the Receiver;

IT IS FURTHER ORDERED that Plaintiffs shall post a bond in connection with the Preliminary Injunction in the amount of $5,000.00;

IT IS FURTHER ORDERED that, in addition to the rights, powers, benefits, and authorities granted in the preceding paragraphs, the Receiver is hereby vested with complete and sole authority and jurisdiction over the Receivership Property to the maximum extent permitted by 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and this Court's inherent powers, and is hereby empowered and permitted to take any and all actions necessary and proper carry out the express provisions of this Order, including but not limited to following rights, powers, benefits, and responsibilities:

1. To take immediate possession of, custody of, and control over all the Receivership Property;

2. To enter into any property where the Receivership Property may be located in order to take immediate possession of, custody of, and control over Receivership Property;

3. To manage, control, operate and maintain the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract, employment arrangement and all other aspects of any business operation in connection with or otherwise related to the Receivership Property, including using the Farming Defendants' cash to pay the expenses associated with managing, controlling, operating, and maintaining the Receivership Property and to pay the fees and costs of administering the receivership estate (to the extent that such cash constitutes Receivership Property);

4. To file a voluntary petition under Title 11 of the Code on behalf of each of the Farming Defendants. If a bankruptcy petition is filed, Receiver shall be empowered to operate each debtor- Farming Defendant as a debtor in possession, with all powers and duties provided to a debtor in possession under the Code to the exclusion of any other person or entity;

5. Without further order of the Court, to use, abandon, or sell all Receivership Property as the Receiver may deem prudent, whether or not such use, abandonment, or sales are in the ordinary course of the Farming Defendants' businesses.

6

ORDER EXPANDING RECEIVERSHIP

314191440v.1

(a)     All sales or transfers made by the Receiver shall be free of liens, claims, and encumbrances, with any such liens, claims and encumbrances attaching to the proceeds therefrom;

(b)     Notwithstanding that the Receiver may use, abandon, or sell Receivership Property without further order of the Court, the Receiver may nevertheless seek, by motion, and obtain such Order(s) from the Court he deems prudent or necessary to administer the Receivership Property; the Receiver shall provide no less than five (5) days' notice of such motion(s) to the Court and all parties in interest in this receivership, and the lack of any written objection by such parties in interest within the five-day period shall be deemed consent to such use, abandonment, or sale;

6.      To make a motion or application to the Court regarding instruction or clarification in connection with the powers and scope of the receivership, Receivership Property, and this Order, including but not limited to obtaining orders further instructing the Receiver or orders clarifying the scope of the receivership or the Receivership Property. Any such motion or application shall be made on no less than three (3) days' notice to the Court and all parties in interest in this Receivership, and the lack of any written objection by such parties in interest within the two-day period shall be deemed consent to the request sought therein;

7.      To gain access and control over all Receivership Property.  In furtherance of the foregoing, the Receiver may engage a locksmith, security, or similar services or professionals for the purposes of gaining entry or access to any of the Receivership Property, including with respect to any locks or security systems;

8.      To demand, collect, sue for, and receive all receipts, rents, profits, monies, security deposits, advance deposits, funds, earnings, issues, income, and/or other revenues or payments arising from the Receivership Property, as a whole or as to any and all improvements thereon;

9.      To take any and all steps necessary to receive, collect, and review all mail, overnight or express or personal delivery, addressed to any of the Farming Defendants and any post office boxes held in the name of any of the Farming Defendants and, at the Receiver's discretion, the Receiver is authorized to instruct the U.S. Postmaster to re-route, hold, and/or release said mail to the Receiver. Mail reviewed by the Receiver in the performance of his duties will promptly be made available for inspection to Farming Defendants, upon request, after review by the Receiver;

ORDER EXPANDING RECEIVERSHIP

10.     To take possession of and control over the Farming Defendants' respective cash management systems, to the extent that such systems are used in connection with or otherwise include Receivership Property, including all bank accounts of Farming Defendants [][]that are used as bank accounts for the business of operating the Receivership Property, and chattel paper that pertains to the Receivership Property, wherever located, and receive possession of any money on deposit in said bank accounts, and the receipt by the Receiver for said funds shall discharge said bank from further responsibility for accounting to said account holder for funds for which the Receiver shall give his receipt;

11.     To establish bank accounts at any bank the Receiver deems appropriate for the deposit of monies and funds collected and received in connection with his administration of the receivership estate, including but not limited to any funds advanced by Plaintiffs, provided that all funds on deposit are insured by an agency of the United States government. The Farming Defendants shall provide the Receiver within 24 hours of the Receiver's request all information, documentation, and signatures required by any bank or other financial institution to open or maintain any accounts as provided under this Order;

12.     To take possession of all crops, farming land, and all other farm products that constitute the Receivership Property deemed appropriate by the Receiver, including, but not limited to, taking possession of any such Receivership Property in the possession or control of any other party after consulting with Plaintiffs;

13.     To immediately borrow from Plaintiffs such funds as Receiver and Plaintiffs deem necessary for the current operation of the receivership estate, to continue to borrow money from Plaintiffs for the operation of the receivership estate as needed, from time-to-time, and to issue to Plaintiffs from time-to-time Receiver's Certificates or such other documents or instruments to evidence such borrowings, subject to Plaintiffs' sole right to decide whether or not to advance any or all funds requested by the Receiver, and to issue further Receiver's Certificates as such funds may be reasonably necessary for the Receiver to fulfill his duties and as agreed upon in writing by Plaintiffs, with such Receiver's Certificates or such other documents or instruments to have liens against the Receivership Property that are junior in priority to the existing liens of Plaintiffs and, with the exceptions of fees and expenses owing to the Receiver, Receiver's Counsel, and the other professionals employed by the Receiver, have seniority over all other claims against the receivership estate on a priority repayment basis. Any liability for such

8

314191440v.1

borrowings shall solely be the responsibility of the Borrowers, and not the Receiver. After any Receiver's Certificate, or such other documents or instruments, is issued, a copy of such shall be included in the Receiver's monthly report. The original instrument shall be delivered to Plaintiffs to be filed and/or recorded in Plaintiffs' discretion;

14.   To execute and prepare all documents and to perform all acts, including entering into contracts and operating licenses, and signing checks or initiating and processing electronic funds transfers either in the name of each of the Farming Defendants, as it is applicable, or in the Receiver's own name, which the Receiver reasonably believes are necessary or incidental to preserving, protecting, managing, controlling and/or liquidating the Receivership Property, including, but not limited to any Receivership Property now in the possession or control of any third party;

15.   To compromise debts of Borrowers in connection with or related to the Receivership Property and to do all things and to incur the risks and obligations of similar businesses operating in accordance with reasonable agricultural and/or viticultural standards and practices, and no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate;

16.   To investigate, identify, pursue, and resolve, any and all claims or causes of action that are Receivership Property;

17.   To take all reasonable actions to collect, including contacting account debtors and bringing and prosecuting actions, all accounts receivable of the Farming Defendants relating to the Receivership Property, whether now existing or hereafter created, and to direct such account debtors to cease sending further accounts receivable payments to the Farming Defendants or any other third party and to instruct such account debtors and/or any other third party to send any and all payments directly to the Receiver;

18.   To take any and all actions or steps that, in the absence of this receivership, could be exercised or authorized by the Borrowers' respective Board of Directors and/or Chief Executive Officer, each as determined by the Receiver in the exercise of his reasonable business judgment to be reasonably necessary for the preservation or maximization of Receivership Property;

19.   Subject to Paragraph 36, below, the monies coming into possession of the Receiver and constituting or otherwise resulting from or out of the Receivership Property and not expended for any of

9

ORDER EXPANDING RECEIVERSHIP

the purposes herein authorized, shall be held by Receiver for the payment of the obligations of the Borrowers to Plaintiffs sued upon in the Complaint, subject to such orders as the Court may hereinafter issue as to its disposition;

20.     Hire and terminate agents, employees, appraisers, guards, clerks, accountants, liquidators, auctioneers, attorneys, management companies, and consultants without cause, to administer the receivership estate, and to protect the Receivership Property as the Receiver deems reasonably necessary provided, however, that the Receiver shall initially give preference to personnel of Borrowers who performed services in connection with the harvesting, processing, storing, and/or preserving of the Receivership Property for the purposes for which such persons are now employed or under contract, subject to the Receiver's determination as to whether such persons are suitable for the purposes for which they or any of them are or were employed; to purchase insurance, materials, supplies and services and to pay therefore at the usual rate and prices out of funds that shall come into his possession; to pay the reasonable value of said services out of the proceeds of the estate or funds that come into his possession; and that no risk or obligation incurred by the Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate;

21.     Employ a law firm as Receiver's legal counsel ("**Receiver's Counsel**") in this matter, as reasonably necessary to accomplish the purposes of this Order, and pay the reasonable fees and expense of such Receiver's Counsel for services rendered in preparation of and during the receivership. Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the Receivership estate and in preparing for the Receiver's appointment. The attorneys' fees and cost incurred by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 36 of this Order;

22.     If there is insufficient insurance coverage on the Receivership Property, it is hereby ordered that the Receiver shall have thirty (30) business days to procure said insurance on the Receivership Property, provided the Receiver has funds available to do so. The Receiver is acting solely in his capacity as Receiver and shall have no personal liability for claims against the Defendants, individually or collectively, or for failure to obtain insurance. With respect to any insurance coverage, the Receiver, and other parties with insurable interests, shall be named as additional insureds on the policies for the period

ORDER EXPANDING RECEIVERSHIP

that the Receiver shall be in possession of the Receivership Property. With respect to any property coverage in existence or obtained, Plaintiffs shall be named as the mortgagee and loss payee;

23.     To institute ancillary proceedings in this Court, the State of California, or other states and countries, prosecute and tender all suits or insurance claims, and pursue all remedies available by law as is necessary to preserve and protect the receivership estate and ensure compliance with the Receiver's authority, and the Receiver may engage the services of legal counsel in furtherance of such actions. The Receiver may pay for such services from the funds of the receivership estate;

24.     To exclude Defendants or anyone claiming under or through the Defendants who does not have a lease or rental agreement entitling them to possession of the Receivership Property, or any portion thereof;

25.     To use, operate, sell, manage and control the Receivership Property, and to care for, preserve and maintain the Receivership Property;

26.     To bring and prosecute all proper action for collection of payments, rent, and lease payments due, if any, on the Receivership Property, as well as necessary actions and proceedings for the removal of tenants or lessees in default for any rental or lease agreement, or any other persons, from the Receivership Property, to bring and prosecute all proper actions for the protection of the Receivership Property or recovery thereof;

27.     Upon presentation of a conformed copy of this Order to any third party, banks, or depositories owing performance of any obligation or duty to Defendants with respect to the Receivership Property, such third parties shall render any performance or duties with respect to the Receivership Property directly to the Receiver, and such copy may be presented to any recalcitrant third parties to advise the same of the Receiver's appointment and obtain cooperation;

28.     To assume, extend, or modify any pre-receivership contracts or agreements, including unexpired leases, relating to the Receivership Property and/or reject such contracts in the Receiver's sole judgment and discretion;

29.     Receiver, as an officer of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the receivership, if in the opinion

11

ORDER EXPANDING RECEIVERSHIP

314191440v.1

of Receiver, such assistance is necessary to preserve the peace and protect the Receivership Property and assets, without further order from the Court;

30. Any securities or deposits that constitute Receivership Property and which tenants or other persons have paid to Borrowers or their agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of Borrowers, and may not be refunded to the tenants by the Receiver;

31. All income tax reporting and payments, whether for periods prior to or during the term of this receivership, shall remain the obligation of Defendants. Receiver shall not be required to report any income generated by the subject property (including interest earned), or to pay any income taxes due thereon, nor shall Receiver bear liability for the failure of Defendants to report said income to taxing authorities or pay the taxes associated with such income.

32. The Receiver shall be entitled to utilize the tax identification numbers of any of the Borrowers in connection with any powers exercised pursuant to this Order or, at the Receiver's discretion obtain new tax identification numbers;

33. Any utility company providing services to real property subject to this Order, including gas, electricity, water, sewer, trash collection, telephone, cable, communications Wi-Fi, Internet, or similar services, shall be prohibited from discontinuing services to Receivership Property and prohibited from failing to comply with any request by the Receiver to, and are prohibited from refusing to, reinstitute service to the subject property based any non-payment by Defendants prior to the Receiver's appointment by the Court based upon unpaid bills incurred by Defendants. Further, such utilities shall transfer any deposits held by the utility company to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. New accounts under the name of the Receiver may be established within 30 days, or the Receiver may continue to operate under Defendants' accounts;

34. Employ Pivot Management Group, LLC ("**Pivot Group**"), as Receiver's financial advisor in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to Pivot Group shall be based on the hourly rates and expenses as set forth in the Receiver Declaration, subject to annual adjustment upon notice to the parties. Pivot Group shall be entitled to reimbursement of all

ORDER EXPANDING RECEIVERSHIP

reasonable costs and expenses incurred on behalf of the receivership estate. The fees and costs incurred by Pivot Group may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 36 of this Order;

35.     To analyze the books, records, and files of Borrowers and any related third party, including bank account and accounting records to determine the sources and uses of cash, accounts, and proceeds of the Receivership Property;

36.     All proceeds arising from the operation, collection, liquidation, sale, lease, or other disposition of Receivership Property shall be used to pay (a) fees and expenses owing to the Receiver, Receiver's Counsel, and other professionals, (b) amounts owed to non-insider third parties arising in the ordinary course of business of Receiver's operation and control over the Receivership Property, and (c) any indemnification owing to the Receiver in connection herewith (collectively, the "**Administrative Claimants**"), in each case prior to payment to Plaintiffs. The Plaintiffs have agreed and there hereby is a carveout from the Plaintiffs' interests in the Receivership Property sufficient to secure payment in full of all amounts owed or owing to the Administrative Claimants. The Receiver is acting solely in his capacity as Receiver and in no event shall have any personal liability for any debts or obligations incurred by or on behalf of Defendants.

37.     Due to the existence of priority disputes in connection with the receipts, rents, profits, monies, security deposits, advance deposits, funds, earnings, issues, income, and/or other revenues or payments arising from the Receivership Property, as well as the receipts, rents, profits, monies, security deposits, advance deposits, funds, earnings, issues, income, and/or other revenues or payments arising from the Non-Receivership Property (as defined below) and Farming Defendants' respective business operations in connection with the Non-Receivership Property (collectively, the "**Proceeds**"), the Receiver shall be entitled to collect and disburse the Proceeds, notwithstanding whether they constitute Receivership Property. Notwithstanding the foregoing sentence, any disbursement of the Proceeds shall be subject to a protocol (the "**Disbursement Protocol**"), which shall provide, among other things, that: (i) the Receiver shall determine which Proceeds relate to the collateral of each of the Real Estate Lenders (as defined below) or Prudential, (ii) that the Receiver shall disburse the Proceeds in accordance with such determination, (iii) the Receiver shall submit a notice to the Court identifying the amounts of Proceeds to

13

314191440v.1

be disbursed and to whom such Proceeds will be disbursed, and (iv) providing at least twenty-one (21) days for parties in interest to object to the proposed disbursement. Prior to the proposed disbursement of any Proceeds, the Receiver shall file a written, detailed form of the Disbursement Protocol with the Court, and provide at least twenty-one (21) days for parties in interest to object to the Disbursement Protocol; *provided, however*, that the Receiver may submit modifications or amendments to the Disbursement Protocol with the Court, and shall provide at least twenty-one (21) days for parties in interest to object to such modifications or amendments. As used in this paragraph, "**Non-Receivership Property**" shall refer to the Farming Defendants' real property that is used primarily for agricultural purposes and the crops grown thereon but that are not included within the definition of Receivership Property.

38.     The Receiver shall be entitled, to the fullest extent of the law, to indemnification from the Farming Defendants, and such Farming Defendants shall hold the Receiver harmless from any liability, loss, or damage the Receiver may suffer as a result of claims, demands, costs or judgments against him arising out of the activities to be carried out pursuant to the authority and obligations of his appointment pursuant to this Order or any supplemental Order; *provided however*, the Receiver shall not be entitled to indemnification for willful misconduct, gross negligence, or fraud as determined by a final order of the Court.   The carveout and charging lien provided for Paragraph 36 above shall also apply to any indemnification obligations owed pursuant to this Paragraph.

39.     The Receiver shall have the following reporting requirements:

(a)     Prepare periodic interim statements reflecting the fees and expenses of the Receiver, his financial advisors, and retained counsel incurred for said period in the operation and administration of the receivership estate (each, an "**Interim Statement**"). Upon completion of an Interim Statement, and the mailing of said statement to the parties' respective attorneys of record or any other designated personal agent, the Receiver shall pay from the estate funds, if any, the amount set forth in such Interim Statement. Despite the preparation of Interim Statements, such fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a noticed interim request for fees or a Receiver's final account and report. The Receiver is authorized to provide this Court or the Plaintiffs with any additional reports or information he deems appropriate;

ORDER EXPANDING RECEIVERSHIP

314191440v.1

(b)     Pursuant to 28 U.S.C. § 754, the Receiver shall, to the extent practicable, within ten (10) days following entry of this Order, file copies of the Complaint and of this Order with the Clerk of the District Court for every federal judicial district in which the Receiver has reason to believe Receivership Property may be found (the "**Receivership Filings**"). Notwithstanding the ten-day time limitation set forth in 28 U.S.C. § 754, the Receiver may apply to the Court for an extension of time within which to complete the Receivership Filings. Subject to the Court's discretion, such applications shall be freely granted to enable the provisions of this Order to be carried out; and

(c)     The Receiver shall, when practicable, file in this action an inventory of all property of which he has taken possession pursuant to this Order and shall conduct periodic accountings thereafter.

40.     The scope of the Receiver's duties to the Plaintiffs are solely as follows: (a) to preserve the Receivership Property and protect it from dissipation and diminution in value; (b) to conduct the business and affairs of the Borrowers related to the Receivership Property; and (c) to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale process of the Receivership Property, whether in whole or part. The Receiver shall owe no duty, fiduciary or otherwise, to any other lender or party in interest.

41.     Upon entry of this Order, Plaintiff shall take all reasonable efforts to serve this Order promptly on all Defendants, including Defendants other than the Farming Defendants, the parties intervening in this case ("**Intervenors**"), and all lenders of any Defendants whose loans are made primarily for agricultural purposes and are secured primarily by real property (the "**Real Estate Lenders**").

42.     Receiver shall reasonably cooperate and communicate with the Intervenors and other parties in interest with respect to his monitoring pursuant to the terms of this Order and shall provide any reports set forth in Paragraph 38 above to the Intervenors and, upon request, other parties in interest.

43.     This Order is without prejudice to, and has no effect on, any parties', including but not limited to the Parties, Intervenors, and the Real Estate Lenders, interests, priority, or positions in or with respect to the crops of Farming Defendants nor is this Order intended to modify any lien rights. Except with respect to the Disbursement Protocol, this Order shall not be deemed to prejudice any such parties'

314191440v.1

rights to seek enforcement remedies or take other such actions, including but not limited to the seeking of the appointment of a receiver as to their respective interests.

44.     To the extent that there are any conflicts between this Order and the Receivership Order, this Order shall control.

## PRELIMINARY INJUNCTION IN AID OF THE RECEIVER

**IT IS FURTHER ORDERED** that, except by leave of the Court, during the pendency of the receivership ordered herein, Defendants and all of their customers, principals, investors, collectors, stockholders, members, managers, lessors, other creditors, judgment holders, and/or other persons seeking to establish or enforce any claim, debt, right, lien, and/or interest against Defendants, or any of their subsidiaries or affiliates, and/or all others acting for or on behalf of such persons, attorneys, trustees, agents, sheriffs, constables, marshals, and/or any other officers and their deputies, and their respective attorneys, servants, agents, and/or employees, be and are hereby stayed from:

1.     Interfering, hindering or molesting in any way the Receiver in the performance of the Receiver's duties and other performance of any duties incidental thereto;

2.     Transferring, directly or indirectly, any interest by sale, gift, pledge, grant of security interest, assignment or encumbrance in any manner the Receivership Property or proceeds thereof;

3.     Diverting any water from any of the real property subject to this Order to or for the benefit of any non-Defendant entity, except to the extent that such diversion is made consistent with a valid water supply agreement or similar agreement between such party and Borrower and the Receiver has not terminated or rejected such agreement.;

4.     Moving the physical location of Receivership Property from any location where Defendants are conducting business or storing the Receivership Property, or any proceeds and products thereof, from the business premises except at the direction of the Receiver;

5.     Transferring, concealing, destroying, defacing, or altering any of Defendants' books and records for the Receivership Property;

6.     Demanding, collecting, receiving, or in any other way diverting or using any of the receipts, rents, issues, profits, and or proceeds emanating from the Receivership Property;

7.      Causing any mail, express or overnight or personal delivery of Defendants in their capacity as the owner, manager or operator of the Receivership Property to be forwarded to any addresses other than the business address of each of the Borrowers, or otherwise interfering with or intercepting any mail, express or overnight or personal delivery intended for Defendants in their capacity as the owner, manager or operator of the Receivership Property;

8.      Failing to cooperate and failing to cause any related entity to cooperate with or reasonably assist Receiver, including immediately advising of the nature and extent of insurance coverage and contracts, or refusing to immediately turn over to the Receiver all contracts, monies, checks, or proceeds belonging to or for the benefit of the Borrowers or relating to the Receivership Property and/or failing to make available to the Receiver all books and records of Defendants relating to the Receivership Property;

9.      Terminating, modifying, or otherwise amending any contract or agreement with a third party that in any way relates to Receivership Property, including but not limited to Defendants' vendors, without the Receiver's express written consent; and

10.      Plaintiffs and their officers, employees, and agents and the Receiver shall have immediate access to all business premises of Defendants and their related entities that are related to the Receivership Property and the books and records of the foregoing to enable Plaintiffs and the Receiver to review and inspect the goods, farm products, inventory, and other Receivership Property for the purposes of accounting and appraisal.

**IT IS FURTHER ORDERED** that except by leave of the Court, during the pendency of the receivership ordered herein, Defendants and all of their investors, shareholders, members, managers, collectors, lessors, customers, tenants, junior lien holders of the Receivership Property, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies, and their respective attorneys, agents, servants, and employees be and are hereby stayed from the following without further order of the Court:

1.      Commencing, prosecuting, continuing or enforcing any suit or proceeding against Defendants, except as such actions may be filed to toll any applicable statutes of limitations, with respect to the Receivership Property;

17

ORDER EXPANDING RECEIVERSHIP

314191440v.1

2.      Commencing, prosecuting, continuing or entering into any suit or proceeding in the name or on behalf of Defendants with respect to the Receivership Property;

3.      Accelerating the due date of any obligation or claimed obligation in connection with, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, any Receivership Property or attempting to foreclose, forfeit, alter, or terminate any of Defendants' interest in any Receivership Property, including, without limitation, the establishment, granting or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise with respect to the Receivership Property;

4.      Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any Receivership Property, wheresoever located; and

5.      Doing any act or thing whatsoever to interfere with the Receiver taking control, possession or management of the Receivership Property or any other property subject to this receivership, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver, or to interfere in any manner with the exclusive jurisdiction of the Court over the property and assets of Defendants.

**IT IS SO ORDERED.**

DATED:_____                    _____
                                                                      Hon. Kirk E. Sherriff
                                                                      United States District Judge

18

ORDER EXPANDING RECEIVERSHIP

314191440v.1