JOHN D. FREED (State Bar No. 261518)
jakefreed@dwt.com
MATTHEW E. LADEW (State Bar No. 318215)
mattladew@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

JOSEPH M. VANLEUVEN (*admitted pro hac vice*)
joevanleuven@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
Telephone: (503) 778-5325
Fax: (503) 701-0023

Attorneys for Intervenor
U.S. BANK NATIONAL ASSOCIATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, a California limited liability company, as successor by merger to 104 PARTNERS, LLC; WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; ASHLAN & HAYES INVESTMENTS, LLC, a California limited liability company; GRANTOR FRESNO CLOVIS INVESTMENTS, LLC, a California limited liability company; MARICOPA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1 through 100, inclusive,<br>      Defendants. | Case No. 1:24-cv-01261-KES-SAB<br><br>**INTERVENOR U.S. BANK NATIONAL ASSOCIATION'S LIMITED OBJECTION TO PLAINTIFF'S [PROPOSED] ORDER GRANTING MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION** |

U.S. Bank National Association ("U.S. Bank") makes a limited objection to Plaintiffs' [Proposed] Order Granting Motion For Receiver and For Preliminary Injunction (filed as Ex. A to Doc. 39 and hereafter, the "**Receivership Order**") for the following reasons.

1. In Plaintiff's "Cover Sheet" regarding the proposed Receiver Order (Doc. 39), Plaintiff states: "*Following meet and confer with counsel for represented Borrower-Owners ACDF, LLC, Willow Avenue Investments, LLC, and Maricopa Orchards, LLC ("Represented Borrower-Owners") and counsel for U.S. Bank National Association ("U.S. Bank"), an agreement has been reached on the Receivership Order*." Unfortunately, at approximately 4 p.m. yesterday afternoon, shortly before that Cover Sheet was filed, U.S. Bank's counsel received an email from Lance Miller, the receiver in the Prudential case (the "**Prudential Receiver**"), raising significant concerns about the viability of having two receivers attempting to collect the defendants' crop receivables from the same Processors, which were inconsistent with what U.S. Bank had heard from Plaintiff's counsel. As a consequence, U.S. Bank can no longer agree to all of the provisions of the proposed Receivership Order.

2. To be clear, U.S. Bank does not oppose appointment of a receiver (the "**MetLife Receiver**") over Plaintiffs' real property collateral (the "**MetLife Property**"), nor to the vast majority of terms in the Receivership Order. Instead, U.S. Bank files this Limited Objection in an effort to synchronize the terms of the receivership orders under consideration by this Court in this case and the Prudential case (Case No. 1:24-cv-01102-KES-SAB) so that account debtors are not served competing payment direction letters, each supported by a Court order.

3. As drafted, the entered and pending receivership orders in this case and the Prudential case (the "**Receivership Orders**")[1] authorize, among other things: (i) the MetLife Receiver to collect proceeds arising from crops grown on the properties listed in the Receivership Order; and (ii) the Prudential Receiver to collect proceeds arising from crops grown on other properties. The problem is that as the Court has heard, defendants' farms and orchards were run as a unitary operation. Defendants sell their crops to processors ("**Processors**"), which

---

[1] *See* Case No. 1:24-cv-01230-KES-SAB, Dkt. No. 29 (the Proposed Order) and Case No. 1:24-cv-01102-KES-SAB, Dkt. No. 51 (order appointing Lance Miller as receiver with limited authority), 107 (order amending), and 108 (proposed order expanding receivership).

historically made a single payment for crops they purchased from a given defendant entity, even though in most cases those crops were sourced from fields or orchards serving as collateral for multiple different lenders.

4. Despite this, U.S. Bank was advised by Plaintiff's counsel that the Processors could and would calculate and make separate payments for crops grown on the MetLife Property vs. defendants' other orchards and farmland. With that understanding, U.S. Bank was willing to allow the MetLife Receiver to collect the money owed for crops grown on the MetLife Property, while the Prudential Receiver proceeded in parallel to collect the money owed for crops grown on defendants' other properties. We understood that the two receivers would be working together this week on a coordinated communication to the processors directing them to make those separate payments to the respective receivers.

5. However, as noted above, just before 4 p.m. yesterday afternoon, U.S. Bank's counsel learned from the Prudential Receiver that he and personnel with Pivot Management Group, LLC have reached out to multiple Processors, who, in the upcoming weeks, are expected to remit millions of dollars in payments that are subject to competing liens (the "**Proceeds**"). These Processors have informed the Prudential Receiver that they unable or unwilling (or both) to calculate allocations of Proceeds in order pay each receiver separately. Indeed, many are only willing to cut a single check. The Prudential Receiver advised U.S. Bank that when he pushed Processors to allocate Proceeds and cut multiple checks (as the Receivership Orders contemplate), the Processors refused, and some threatened not to process crops at if the issue is pressed. U.S. Bank's counsel heard the same thing directly from one Processor.

6. The Prudential Receiver has advised that he can track crop deliveries and trace Proceeds to the respective lenders' real property collateral. However, there will be no Proceeds to track and trace if the Processors hold up payments. As drafted, the Receivership Orders authorize *each* Receiver to send a payment direction letter to the same Processors to make allocated payments that the Processors appear unable and/or unwilling to make. Even if a few Processors would be willing to calculate allocations and make separate payments, there is a risk that an affected lender may disagree with their calculations. This process will likely lead to Processors

either holding checks or sending payments in haphazard fashion or in incorrect amounts, none of which benefits the receivership estates.  Simply put, there must be consistency between the Receivership Orders in the two cases regarding the collection of Proceeds.

7. Unfortunately, since late afternoon Friday, Plaintiff's lawyers have been unavailable to discuss our concerns.  Emails today to each of Mr. Woods and Mr. Brown resulted in "out of office" responses.  Hence, this Limited Objection.

8. Ironically, Plaintiff has only a relatively small stake in this issue.  U.S. Bank claims a senior priority security interest in all of defendants' crops and Proceeds, with a projected value of over $100 million.  According to defendants' records, less than 4.5% in value of those crops were grown on the MetLife Property.  U.S. Bank was willing to cede to Plaintiff's desire to the MetLife Receiver collect that 4.5% only because we were told that it would not interfere with collection of the other 95.5%.  It is now clear that information was incorrect.

9. Despite repeated requests, Plaintiff has failed to explain *why* it is opposed to allowing the Prudential Receiver to be the initial collection point for all of the crop receivables.  U.S. Bank and other lenders should not be forced to defer to the unexplained desire of a small junior creditor to have its own receiver collect its 4.5% of the crop receivables, when that risks gumming-up collection of the remaining 95.5%.  Given the circumstances, there are only two reasonable alternatives:

   a. the Court should enter a revised Receivership Order, eliminating the involvement of the MetLife Receiver in the collection of Proceeds entirely, leaving all Proceeds to be dealt with under the Prudential Receivership order, as modified to include MetLife's Proceeds in the same bucket with proceeds from crops grown on properties of the "Other Lenders;" or

   b. the Court should require that the Receivership Order in this case be coordinated with the receivership order in the Prudential case, by requiring the Processors to make all of their payments to the Prudential Receiver and requiring the Prudential Receiver to make an initial calculation, allocating amounts received on account of crops from respective fields, and reporting

to the creditors.  (The Prudential Receiver order requires that already.)  The MetLife Receiver can review the calculation of Proceeds from crops grown on the MetLife Property. If he agrees with it, the money can be paid-over to him to hold and disburse under the terms of Section II of the proposed Receivership Order in this case.  If there is a dispute, the Court can resolve it.  This would require only modest revisions to Section II of the proposed Receivership Order, to make it clear that the "collection" of Proceeds means collection from the Prudential Receiver rather than directly from the Processors in the first instance.

WHEREFORE, U.S. Bank respectfully requests that the Court direct that the proposed Receivership Order be amended to address the issues identified above.

DATED  November 1, 2024

DAVIS WRIGHT TREMAINE LLP
Joseph M. VanLeuven
John D. Freed
Matthew E. Ladew

By: /s/ *John D. Freed*
Attorneys for Proposed Intervenor
U.S. BANK, National Association