MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

*Attorneys for Plaintiffs*
BRIGHTHOUSE LIFE INSURANCE COMPANY,
METROPOLITAN LIFE INSURANCE COMPANY,
and METLIFE REAL ESTATE LENDING, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br>v.<br>ACDF, LLC, a California limited liability company, *et al.*,<br><br>Defendants. | Lead Case No. 1:24-cv-01261-KES-SAB<br><br>Consolidated with Case Nos:<br>1:24-cv-01226; 1:24-cv-01230;<br>1:24-cv-01231; 1:24-cv-01232;<br>1:24-cv-01233; 1:24-cv-01235; and<br>1:24-cv-01241<br><br>**MOTION TO CONTINUE RECEIVERSHIPS**<br><br>Date: January 13, 2024<br>Time: 1:30 pm (PT)<br>Dept.: Courtroom 6, 7th Floor |
| ☒ Affects All Cases<br>☐ Affects Metropolitan Life Ins. Co. v. ACDF, LLC, et al., 1:24-cv-01261<br>☐ Affects Metropolitan Life Ins. Co. v. FNF Farms, LLC, et al., 1:24-cv-01226<br>☐ Affects Metropolitan Life Ins. Co. v. C & A Farms, LLC, et al., 1:24-cv-01230<br>☐ Affects Metropolitan Life Ins. Co. v. Maricopa Orchards, LLC, et al., 1:24-cv-01231<br>☐ Affects Brighthouse Life Ins. Co. v. Kamm South, LLC, et al., 1:24-cv-01232<br>☐ Affects Brighthouse Life Ins. Co. v. Manning Avenue Pistachios, LLC, et al., 1:24-cv-01233 Case No. 1:24-cv-01233<br>☐ Affects Brighthouse Life Ins. Co. v. ACDF, LLC, et al., 1:24-cv-01235<br>☐ Affects MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., 1:24-cv-01241 | |

MOTION TO CONTINUE RECEIVERSHIPS -1- LEAD CASE NO. 1:24-CV-01261-KES-SAB

127222309.2 0053564-00653

# MOTION TO CONTINUE RECEIVERSHIPS

## I. INTRODUCTION

Plaintiffs Metropolitan Life Insurance Company, MetLife Real Estate Lending Company, LLC, and Brighthouse Life Insurance Company (collectively, "Plaintiffs") respectfully request a continuation of their respective Agreed Orders Appointing Receiver and for Preliminary Injunction ("Receivership Orders"[1]), administered by receiver Phillip Christensen (the "Receiver" and "Receiverships"), currently in effect pursuant to the Receivership Orders filed in related and administratively consolidated Case Nos.: 1:24-cv-01261; 1:24-cv-01226; 1:24-cv-01230; 1:24-cv-01231; 1:24-cv-01232; 1:24-cv-01233; 1:24-cv-01235; and 1:24-cv-01241 (the "Receivership Cases").

The appointment of the Receiver was, and continues to be, necessary to conserve, maintain, and manage the respective Receivership Property[2] that is, in each case, facing irreparable harm and imminent danger of diminished value. Plaintiffs satisfied, and continue to satisfy, the applicable standard for appointment of a receiver under federal law. The Receiverships should continue because 1) the Receivership Property remains subject to irreparable harm; 2) the Receiver continues to develop strategies to manage and preserve the Receivership Property, which is critical for the 2025 crop and critical to preserving the value of Plaintiffs' security interests (collateral); and 3) the Receiver has proved effective at the preservation of assets and gathering critical information for further preservation and management.

While the Receiverships would continue until further notice, Plaintiffs are open to periodic Receivership Status Conferences every 90 days, should the Court find those useful.

//

//

---

[1] The Receivership Orders can be found at the following docket numbers: 1:24-cv-01261 (Dkt. 45); 1:24-cv-01226 (Dkt. 18); 1:24-cv-01230 (Dkt. 39); 1:24-cv-01231 (Dkt. 17); 1:24-cv-01232 (Dkt. 20); 1:24-cv-01233 (Dkt. 22); 1:24-cv-01235 (Dkt. 22); and 1:24-cv-01241 (Dkt. 18).

[2] Each of the Receivership Orders (*see* fn. 1) describe the property and collateral at issue in each respective Receivership Order at ¶ 2.

## II. **FACTUAL BACKGROUND**

### A. **Appointment of the Receiver Phillip Christensen.**

In eight Receivership Cases, Plaintiffs filed Complaints alleging (1) Breach of Loan Agreement; (2) Breach of Guaranty; (3) Judicial Foreclosure; (4) Specific Performance and Appointment of Receiver; (5) Injunctive Relief; and (6) Replevin against borrower and guarantor defendants (the "Defendants").

Beginning on October 22, 2024 through November 21, 2024, Plaintiffs filed *Ex Parte* Motions for Appointment of Receiver and for Preliminary Injunction in each Receivership Case.

Beginning with *Metropolitan Life Ins. Co. v. ACDF, LLC, et al.*, 1:24-cv-01261, on November 7, 2024 and through December 4, 2024, Plaintiffs in the Receivership Cases caused to have entered the Receivership Orders, appointing Phillip Christensen of Agriglobe LLC as receiver "in order to preserve perishable agriculture and property and to maximize the recovery to creditor-Plaintiff...." (Receivership Orders, ¶ C.)

As part of the Receiver's duties, the Receiver is authorized and directed to "take possession of, manage, control and collect all present and future [Receivership Property] … and to sell or otherwise liquidate or dispose of any or all of the [Receivership Property] by public or private sale or such other method as deemed appropriate by the [Receiver] exercising business judgment." (Receivership Orders, Power and Duties of the Receiver, ¶¶ 5-7.)

### B. **The Receivership Property Remains Subject to Irreparable Harm and Defendants Remain in Default.**

The Defendants' defaults and financial strain that precipitated the Complaints and Receivership Orders have persisted. No Defendant has contested any of the recent Receivership Orders on any grounds that the Orders are unnecessary or that financing has been secured to assist them with business operations. Many of the same Defendants in these cases are subject to additional suits for breach of loan agreements and appointment of receivers (*see The Prudential Insurance Company of America et al. v. ACDF, LLC et al.*, 1:240-cv-01102 and *U.S. Bank National Association v. Touchstone Pistachio Company, LLC et al.*, 1:24-cv-0115) and have recently been subject to additional suits on the same bases (s*ee American Equity Investment Life Insurance*

*Company v. Maricopa Orchards, LLC et al.*, 1:24-cv-1406 and *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et al.*, 1:24-cv-1455). Defendants' financial strain and lack of operating cash flow places the collective Receivership Property in distress and serious peril. (Declaration of Phillip Christensen ("Receiver Decl.") ¶ 3.) There has been and will continue to be, if the Receiverships are not continued, deferred maintenance of equipment necessary to agricultural operations and deferred cultural maintenance of biological assets on Receivership Property due to Defendants' financial distress. (Receiver Decl. ¶ 4.) The following needs to occur in the coming months or else the biological assets on the Receivership Property will be damaged or destroyed before the 2025 harvest even arrives: post-harvest fertility; post-harvest soil amendments; winter sanitation (removal of any crop remaining on the trees); dormant insecticide spray applications; vertebrate control; pruning; marketing and contracting of the 2025 crop; and general repairs and maintenance to the irrigation systems and other infrastructure. (Receiver Decl. ¶ 5.) In the case of pistachios, those are especially vulnerable because they are an "every other year bumper crop" and the 2024 harvest was a low-yield harvest. (Receiver Decl. ¶ 6.) Adequate preparation is required for the 2025 harvest (the bumper year), but Defendants do not have the financial ability to prepare, protect, and harvest. (Receiver Decl. ¶ 7.) The Receiver will ensure the preparation, protection, and harvest of such vulnerable crops. (Receiver Decl. ¶ 8.)

As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the collective Receivership Property, which, along with the revenue generated by its operations, are the primary sources for repayment of loans, and Plaintiffs, as an interested and secured party that has asserted its rights, is threatened with material losses and injuries for which it has no adequate remedy at law against Defendants.

### III. **LEGAL ARGUMENT**

#### A. **Legal Standard**

"The decision on whether to terminate a receivership turns on the facts and circumstances of each case, including any relevant equitable considerations, particularly absent any statutory limitations on the court's power to terminate a receivership." *WB Music Corp. v. Royce Int'l Broad. Corp.*, 47 F.4th 944, 953 (9th Cir. 2022) (quoting 65 Am. Jur. 2d Receivers § 94 (2022)).

In this regard, "a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).

Federal law governs the appointment of a receiver in a diversity case. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291-1292 (11th Cir. 1998); *New York Life Ins. Co. v. Watt West Investment Corp.*, 755 F. Supp. 287 (E.D. Cal. 1991). Federal Rule of Civil Procedure 66 provides in relevant part,

> The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules.

"Indeed, as the Eleventh Circuit reasoned in *National Partnership*, 'to the extent Rule 66 dictates what principles should be applied to federal receiverships, courts must comply with the Rule even in the face of differing state law'." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 842-843 (9th Cir. 2009) (*quoting Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289 at 1291 (11th Cir. 1998)).

According to federal law, the appointment of a "receiver is an extraordinary equitable remedy" and must be used with caution. *Id*. at 844 (*quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)). "However, there is 'no precise formula for determining when a receiver may be appointed'." *Id*. Instead, federal courts consider a variety of factors when determining whether to appoint a receiver, including:

1. Whether the party seeking the appointment has a valid claim,
2. Whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant,
3. The property is in imminent danger of being lost, concealed, injured, diminished in value or squandered,
4. Whether legal remedies are inadequate,

5.  Whether the harm to the plaintiff by denial of the appointment would outweigh the injury to the party opposing appointment,

6.  The plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property, and

7.  Whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id.*; 12 Wright Miller & Marcus Federal Practice & Procedure: Civil, § 2983 (2d ed. 2011); *see also New York Life Ins. Co.*, 755 F. Supp. 287 (E.D. Cal. 1991) (appointing a receiver for real property in circumstances similar to this case).

At to the <u>first</u> factor in each case, Plaintiffs have filed Complaints alleging Defendants' defaults under the respective Loan Documents, as those documents are defined in the pleadings.[3] The obligations due and owing from Defendants continue to accrue. Moreover, third-party filings more recently filed in November, such as *American Equity Investment Life Insurance Company v. Maricopa Orchards, LLC et al.*, 1:24-cv-1406 and *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et al.*, 1:24-cv-1455), continue to accrue showing that, not only have Defendants' financial problems leading to Receiverships continued, but are exacerbated. These defaults have no sign of cure or abatement. Moreover, Defendants expressly consented to the appointment of a receiver in the event of a default in at least two Loan Documents in each case: the Loan Agreements and Deeds of Trust.[4] Under the Loans and Deeds of Trust, pursuant to the

---

[3] *See* Complaints, Loan Documents: 1:24-cv-01261 (Dkt. 1, Factual Background, section A); 1:24-cv-01226 (Dkt. 1, Factual Background, section A); 1:24-cv-01230 (Dkt. 1, Factual Background, section A); 1:24-cv-01231 (Dkt. 1, Factual Background, section A); 1:24-cv-01232 (Dkt. 1, Factual Background, section A); 1:24-cv-01233 (Dkt. 1, Factual Background, section A); 1:24-cv-01235 (Dkt. 1, Factual Background, section A); and 1:24-cv-01241 (Dkt. 1, Factual Background, section A).

[4] *See* Motion for Appointment of Receiver and for Preliminary Injunction regarding Borrowers' written agreements establishing entitlement to the appointment of a Receiver: 1:24-cv-01261 (Dkt. 11, Section III (Legal Argument), subsection a(1)); 1:24-cv-01226 (Dkt. 12, Section III (Legal Argument), subsection a(1)); 1:24-cv-01230 (Dkt. 13, Section III (Legal Argument), subsection a(1)); 1:24-cv-01231 (Dkt. 15, Section III (Legal Argument), subsection a(1)); 1:24-cv-01232 (Dkt. 17, Section III (Legal Argument), subsection a(1)); 1:24-cv-01233 (Dkt. 18, Section III (Legal Argument), subsection a(1)); 1:24-cv-01235 (Dkt. 20, Section III (Legal Argument), subsection a(1)); and 1:24-cv-01241 (Dkt. 16, Section III (Legal Argument), subsection a(1)).

respective "Rights and Remedies on Default," Plaintiffs have the right to have a receiver appointed to:

> take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, ex parte, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law.

The first factor weighs heavily in favor of continuing the Receiverships because Defendants' financial distress and bases for Plaintiffs claims are substantial and ongoing.

As to the second factor relating to fraudulent conduct, another receiver in a related action (*see The Prudential Insurance Company of America et al. v. ACDF, LLC et al.*, 1:240-cv-01102) acquired evidence that Assemis ("Guarantor Defendants" in the Complaints) improperly transferred water and failed to pay water invoices.[5] The continuation of the Receiverships will ensure additional information is collected regarding potential fraudulent conduct.

As to the third factor (closely associated here with the sixth, and seventh factors), the Defendants' continued financial distress places the Receivership Property in danger of irreparable injury, loss, deterioration, and diminution, which, along with the revenue the Receivership Property generates by its operations, are the primary sources for repayment of obligations owed to Plaintiffs via the Loan Documents at issue. The Plaintiffs' interests are well-served by the Receiverships because the Receiver is experienced in the maintenance, management, and daily operation of agricultural properties similar to the Receivership Property, and, together with the Receiver's employees, contractors, and professionals, in consultation with the Plaintiffs and other interest parties, the Receiver continues to develop strategies to preserve and maintain the Receivership

---

[5] *See* Declaration of Jeremy Rasmussen In Support Of Motion for Appointment of Receiver and for Preliminary Injunction and accompanying Exhibit 1: 1:24-cv-01226 (Dkt. 12-3); 1:24-cv-01230 (Dkt. 13-3); 1:24-cv-01231 (Dkt. 15-3); 1:24-cv-01232 (Dkt. 17-13); 1:24-cv-01233 (Dkt. 18-3); 1:24-cv-01235 (Dkt. 20-3); and 1:24-cv-01241 (Dkt. 16-3).

Property, ensuring that post-harvest activities and infrastructure are in place for future harvests. (Receiver Decl. ¶ 9.)

As to the <u>fourth</u> factor, the legal remedies are inadequate given the circumstances. The collective Receivership Property is under immediate threat of damage, which would damage any potential for future crop harvests. (Receiver Decl. ¶ 3.) A money judgment is meaningless because Defendants appear to be collectively severely insolvent, and the collective Receivership Property requires immediate and sustained management and preservation that extends beyond a temporary cash flow from a judgment. This factor weighs in favor of continuation.

As to the <u>fifth</u> factor, Plaintiffs note that there were extensive meet-and-confer efforts with represented Defendants' counsel to arrive at the agreed Receivership Orders.[6] Moreover, here, there is no risk of injury to a party that could or would oppose appointment because it can only benefit Defendants to preserve as much of the value of the Receivership Property as possible. The Receiver is well-suited to preserve the Receivership Property for the benefit of all parties in interest.

In sum, **all seven factors weigh in favor of the continuation** of the Receiverships to preserve Plaintiffs' interests and rights and to prevent further loss and irreparable harm to the collective Receivership Property.

## IV. CONCLUSION

Based upon all of the foregoing factors, pursuant to Federal Rule of Civil Procedure 66, Plaintiffs respectfully request that the Court enter an Order continuing the Receiverships.

Plaintiffs respectfully request that the Agreed Orders Appointing Receiver and for Preliminary Injunction currently in effect in related and administratively consolidated Case Nos.: 1:24-cv-01261 (Dkt. 45); 1:24-cv-01226 (Dkt. 18); 1:24-cv-01230 (Dkt. 39); 1:24-cv-01231 (Dkt. 17); 1:24-cv-01232 (Dkt. 20); 1:24-cv-01233 (Dkt. 22); 1:24-cv-01235 (Dkt. 22); and 1:24-cv-01241 (Dkt. 18), be continued until further Court Order.

Plaintiffs further state that they are amenable to a Status Conference Re Receiverships on

---

[6] *See* Declaration of Thomas A. Woods In Support Of Ex Parte Application for Motion for Appointment of Receiver and for Preliminary Injunction: 1:24-cv-01261 (Dkt. 12-1); 1:24-cv-01226 (Dkt. 13-1); 1:24-cv-01230 (Dkt. 13-1); 1:24-cv-01231 (Dkt. 15-1); 1:24-cv-01232 (Dkt. 17-1); 1:24-cv-01233 (Dkt. 18-1); 1:24-cv-01235 (Dkt. 20-1); and 1:24-cv-01241 (Dkt. 16-1).

Monday, April 14, 2025 (or as soon thereafter as the Court deem appropriate), at 1:30 p.m., in Courtroom 6, 7th Floor, of the above-referenced Court.

DATED: December 16, 2024

STOEL RIVES LLP

_____
MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com

*Attorneys for Plaintiffs*
BRIGHTHOUSE LIFE INSURANCE COMPANY, METROPOLITAN LIFE INSURANCE COMPANY, and METLIFE REAL ESTATE LENDING, LLC

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MOTION TO CONTINUE RECEIVERSHIP

-9-

LEAD CASE NO. 1:24-CV-01261-KES-SAB

127222309.2 0053564-00653