**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723

Attorneys for Defendants Touchstone Pistachio Company, LLC, ACAP Farms, LLC, ACDF, LLC, Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC, Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ACDF, LLC, et al.,<br><br>　　　　　　Defendants.<br><br>Affects All Cases. | Lead Case No. 1:24-cv-01261-KES-SAB<br><br>Consolidated with Case Nos: 1:24-cv-01226; 1:24-cv-01230; 1:24-cv 01231; 1:24-cv-01232; 1:24-cv-01233; 1:24 cv-01235; and 1:24-cv-01241<br><br>**STATEMENT OF POSITION IN RESPONSE TO EX PARTE APPLICATION FOR APPROVAL OF SALES PROCEDURES; DECLARATION OF JASON HOLLRAH IN SUPPORT THEREOF**<br><br>Judge: Hon. Kirk E. Sherriff<br>Date:　March 3, 2025<br>Time:　1:30 p.m.<br>Crtrm: Robert E. Coyle U.S. Courthouse<br>　　　　2500 Tulare Street<br>　　　　Courtroom 6, 7th Floor<br>　　　　Fresno, CA 93721 |

Defendants Touchstone Pistachio Company, LLC, ACAP Farms, LLC, ACDF, LLC, Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC, Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms, LLC (collectively, the "Maricopa Defendants") respectfully respond to the Receiver's Motion for Approval of Sale Procedures on an *Ex Parte* basis filed by Phillip Christensen, as Receiver ("Metropolitan Receiver") for Plaintiff Metropolitan Life Insurance Company ("Metropolitan"), based on the below Declaration of Jason Hollrah. The Maricopa Defendants respectfully submit as follows:

## I. INTRODUCTION

The Maricopa Defendants do not, in principle, oppose the entry of an order approving sales procedures. The Maricopa Defendants file this statement to ask that the sales procedures in these cases, along with the U.S. Bank National Association case (1:24-cv-01105) and Prudential Insurance Company of America case (1:24-cv-01102) where receivers have also been appointed, include provisions for cooperation in the sales process by all three receivers. Particularly, as discussed further below, the Metropolitan Receiver, the U.S. Bank Receiver and the Prudential Receiver were each appointed to take control of different parts of the real and personal property that, collectively, constitutes an integrated farming and processing enterprise. The Maricopa Defendants are concerned that a piecemeal sale that does not have procedures that account for potential buyers who want to bid on the integrated enterprise or on properties that impact the water rights or other assets of property of one of the other receivership estates, will not maximize the value of the

assets for the benefit of all creditors. Particularly, the sales processes in the three cases should proceed in a fashion that allows the sales to progress along the same timelines with similar procedures so that the sales can accommodate a buyer who wants to purchase the entirety of the assets.

## II. SUMMARY OF RELEVANT BACKGROUND

Before the appointment of receivers in this and the other actions, the Assemi family managed an integrated farming and processing enterprise comprising tens of thousands of acres, both planted and unplanted acres throughout the Central Valley. *See* Hollrah Decl., ¶ 3. Historically, financing that was extended by lenders to help fund the farming enterprise was collateralized in a variety of different ways. *See id.*, ¶ 5. In some instances, the lender encumbered the real property itself (*i.e.*, the "dirt"). *Id.* And in other instances, the lender encumbered either the underlying business entity, or specific assets of the business entity, such as the crops themselves. *Id.* Regardless of how the collateral was pledged in any specific instance, the entirety of the farming enterprise was managed collectively as one unit. *Id.*, ¶ 6. Segregating parcels such that a party is only entitled to farm specific collateral is impracticable because some parcels are landlocked by other parcels and because new infrastructure would be required to make it independently farmable from that of the other parts of the enterprise, such as the construction of water wells or electric meters for parcels that do not currently have such infrastructure. *See id.*, ¶ 8. Importantly in this respect, the farming enterprise shares a complex water related infrastructure which is essential to farming operations. *See id.*, 11. Put differently, the water infrastructure serves the entirety of the farming assets, it is not segregated based on which property constitutes collateral for a given loan.

Similarly, the pistachio processing facility owned by Defendant Touchstone goes hand-in-hand with the farming assets because the pistachios grown on the agricultural land

are processed in the Touchstone facility. *See id.*, ¶ 4. Touchstone's processing assets, thus, are worth more when it has contracts to process the pistachios grown on the land. Selling the farming assets and the processing assets on a piecemeal basis deprives a potential buyer of the enterprise value of purchasing the whole.

In these consolidated cases, the Metropolitan Receiver is seeking to sell a portion of the agricultural lands that are part of the enterprise, comprised primarily of pistachio crops and water assets in Fresno and Kern counties. At the same time, the Prudential Receiver has control over agricultural lands, comprised primarily of pistachio crops in Fresno, Kings, Kern and Madera counties. And, the U.S. Bank Receiver has control over the pistachio processing facility assets.

The Maricopa Defendants understand that certain potential buyers have expressed an interest in acquiring both the farming assets and the processing assets. *See id.*, ¶ 12. To accommodate such buyers and to maximize value, the Maricopa Defendants have urged the U.S. Bank Receiver to closely coordinate efforts with the Prudential Receiver, who has expressed a keen willingness to cooperate and coordinate with the U.S. Bank Receiver. By the same token, the Maricopa Defendants believe that coordination with the Metropolitan Receiver would likewise serve to attract buyers who are interested in purchasing the entire enterprise and protect against unintended consequences from selling a parcel that may negatively impact the water rights or other assets of other parcels in other receivership estates.

### III.   THE RECEIVERS SHOULD COOPERATE TO MAXIMIZE VALUE

While the Maricopa Defendants appreciate that the three receivers have control over different collateral, and the Maricopa Defendants in no way seek to unduly delay the sale process, approaching the sale of the farming and processing assets on an individual basis does not serve the goal of maximizing value where the assets are designed to be and have historically been operated as an integrated enterprise. In *SEC v. Champion-Cain*, Case No.

3:19-cv-1628, 2020 U.S. Dist. LEXIS 80717 (S.D. Cal. May 6, 2020), for example, that Court found that the receiver was "acting in best interests of the receivership estate" when she decided to sell a leasehold interest together with the personal property that was operated at the premises, even though that meant the sale would be delayed, reasoning that avoiding a piecemeal sale showed "a considered regard for the type of sale that would fetch the best return for the estate overall." *Id.* at *19-20. Although there are three receivers here, the same considerations apply. Each of the receivers, including the Metropolitan Receiver, should be approaching the sale process in a manner designed to "fetch" the best return overall. Omitting, at the outset of the process, coordinated sales procedures that allow for interested buyers to bid on the entire enterprise is contrary to that end. The Maricopa Defendants are asking only that the three receivers work together to ensure that the market is sufficiently tested with respect to obtaining the highest and best offer for all assets. This is in line with the public notice and overbid provisions of 28 U.S.C. §§ 2001 and 2002, the purpose of which is to secure bidders and bring about the best sale price. *Id.* at *20.

Further, this Court has very broad power to supervise and determine the appropriate action to be taken in the administration of the receivership. *See S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). "The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions." *Id.* (quoting *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)). This is also the case here, where there are three separate receivers administering many interrelated parcels of real property subject to separate liens held by unique lienholders. "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *S.E.C. v. Am. Capital Investments, Inc.* 98 F.3d 1133, 1144 (9th Cir. 1996) (quoting *Reebok Int'l v. Marnatech Enter., Inc.,* 970 F.2d 552, 561-62 (9th Cir. 1992)). Here, far from restricting the court's authority, 28 U.S.C. § 2001 provides that real property may be sold at public auction or by private sale "upon such terms and conditions as the court directs," and in the case of a

private sale, upon the court's finding "that the best interests of the estate will be conserved thereby." *See* 28 U.S.C. § 2001(a)-(b).

## IV.   CONCLUSION

For the reasons stated above, the Maricopa Defendants respectfully ask that the Court approve sales procedures that provide for cooperation among the Metropolitan Receiver, Prudential Receiver and U.S. Bank Receiver such that the sale process accommodates potential buyers interested in bidding on the farming and processing enterprise in its entirety. If necessary, the Maricopa Defendants will file a motion to coordinate the sales of the three receivers, along with a request for an evidentiary hearing on the benefits of implementing a coordinated sale process.

Respectfully submitted,

KELLER BENVENUTTI KIM LLP

By: /s/ *Jane Kim*
     Jane Kim
     Attorneys for the Maricopa Defendants

RESPONSE TO EX PARTE MOTION

**DECLARATION OF JASON HOLLRAH**

I, Jason Hollrah, declare:

1. I am the Chief Executive Officer of the Assemi Group. I am over 18 years of age. The statements contained in this declaration are true and based on my personal knowledge, except as otherwise indicated. If called upon as a witness to testify to these statements, I could and would competently do so under oath.

2. In my capacity as Chief Executive Officer of the Assemi Group, I am familiar with many of the businesses entities that are the Defendants in this action, as well as the collateral over which Metropolitan Life Insurance Company ("MetLife") has imposed a receivership.

3. Assemi Group provides management services for its related business entities, including Maricopa Orchards LLC and Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Grandon Farms, LLC, Lincoln Grantor Farms, LLC, Panoche Pistachios, LLC, and Sageberry Farms, LLC (the "Maricopa Defendants"). Among other things, the Assemi Group manages business entities and real property parcels of the Assemi family farming enterprise comprising tens of thousands of acres, both planted and unplanted acres throughout the Central Valley. In total, the planted and unplanted acres extend over thousands of separate legal parcels and legal business entities.

4. As part of the business strategy, the ownership of the Maricopa Defendants process crop grown on the agricultural land in the facility of Touchstone Pistachio Company, LLC ("Touchstone"). There was economic advantage in processing the agricultural products of the Maricopa Defendants in the Touchstone facility, as over the long term, this integrated approach should enhance the value of the overall enterprise by permitting a single ownership group to capture the profit margin of the producer and the processor.

5. Historically, financing extended by lenders such as MetLife to help fund the farming enterprise has been collateralized in a variety of different ways. For example, in some instances, the lender has encumbered the real property itself (*i.e.*, the "dirt"). And in other instances, the lender has encumbered either the underlying business entity, or specific assets of the business entity, such as the crops themselves.

6. Regardless of how the collateral has been pledged in any specific instance, the entirety of the farming enterprise is managed collectively as one unit.

7. I believe that given the complexity of the number of legal entities and legal parcels it would take years to segregate the parcels in such a manner that would allow a party to only farm specific collateral, as opposed to the enterprise as whole. At a minimum, extensive surveys would need to be done and physical infrastructure would need to be constructed.

8. In many cases, physical segregation of a parcel would be impossible because the parcel would be landlocked by other parcels. In other parcels, new infrastructure would be required to make it independently farmable from that of the other parts of the enterprise, such as the construction of water wells or electric meters for parcels that do not currently have such infrastructure.

9. In addition, even if such a segregation of collateral was physically possible to achieve, I believe it would nonetheless be impossible to administer due to the complexity in obtaining water rights that are needed to make the parcels productive for farming.

10. Each parcel owned by the Maricopa Defendants is in a water district. The Maricopa Defendants' property is in as many as 13 distinct water districts, with the majority in three water districts. Each water district features different water rights. The Maricopa Defendants operate the properties as an integrated farm; collectively, they have a single

account for each of the water districts. That account dictates how water is used across the farm.

11. Water that is obtained from the water districts is delivered by a complex network of pipes to the parcels without regard to who owns the underlying property or who it is collateralized by. Water wells exist but they are placed based on the best source of the water, not according to parcel or what lender owns the underlying collateral. There is no distinction based on which lender identifies the parcel as collateral. Pipelines cut across fields. A parcel pledged as collateral to Plaintiffs may or may not have a well. Similarly, some areas receive water from a canal. The canal has turnouts on particular parcels; parcels without turnouts rely on water from the integrated business. If the relief requested by Plaintiffs is granted, properties would be cut off from the integrated whole and would not get water. Without water, the trees on the properties would die and the properties would subsequently be materially devalued.

12. The Maricopa Defendants have received expressions of interest from buyers who wish to acquire both the Maricopa farming assets and the Touchstone processing assets. There is significant value that can be generated from the integrated enterprise from economies of scale on cost management and pricing for delivery of large volumes, and value that could be lost by the sale of individual parcels without regard to the impact on other properties within the enterprise. To maximize value, the sale of the enterprise must be coordinated.

*[Signature on next page]*

1 | I declare under the penalty of perjury that the foregoing is true and correct.

Executed by: _____  Date: February 26, 2025
JASON HOLLRAH

CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2025:

(i) I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing, including the following:

- **Mark Anishchenko**
  markanishchenko@dwt.com, rosalindcook@dwt.com;
- **Robert Cullen Barton**
  rbarton@mwe.com, acorona@mwe.com, mnadel@mwe.com;
- **Michael Barrett Brown**
  michael.brown@stoel.com, docketclerk@stoel.com, rebecca.lerma@stoel.com, jill.keehnen@stoel.com, ha.nguyen@stoel.com;
- **Dumar LLC**
  reisslaw@reisslaw.net;
- **John D. Freed**
  jakefreed@dwt.com, kimberlysimmonsgreene@dwt.com;
- **Michael S. Nadel , PHV**
  mnadel@mwe.com;
- **Saul Reiss**
  reisslaw@reisslaw.net, fay.pugh@outlook.com;
- **Zev M. Shechtman**
  Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com, Shelly.Guise@saul.com, hannah.richmond@saul.com, LitigationDocketing@saul.com;
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com, borozco@wtjlaw.com;
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com, sgomez@wtjlaw.com, abroome@wtjlaw.com;
- **Thomas Andrew Woods**
  thomas.woods@stoel.com, docketclerk@stoel.com, dalila.tobin@stoel.com, 1261239420@filings.docketbird.com, rebecca.lerma@stoel.com;

(ii) I will cause notification of such filing to be sent to the email addresses listed below:

- **Daryl Stuart Bartow**
  DSBartow@duanemorris.com, CMWinter@duanemorris.com, SLei@duanemorris.com, Ajhanna@duanemorris.com, PARyan@duanemorris.com;
- **Mark R. Bateman**
  mbateman@youngwooldridge.com;
- **Joseph R. Dunn**
  jdunn@cov.com, docketing@cov.com;
- **Garrett Eggen, PHV**
  geggen@sussmanshank.com;
- **Mary H. Haas**
  maryhaas@dwt.com, Lit-Docket@dwt.com;

1
- **Theodore W. Hoppe**
    tad@hoppe-law.com, barbara@hoppe-law.com, lisa@hoppe-law.com,
2   alexa@hoppe-law.com, rachel@hoppe-law.com, service@hoppe-law.com,
    stacey@hoppe-law.com, robyn@hoppe-law.com;
3
- **Monique Debrikka Jewett-Brewster**
    mjb@lathropgpm.com, crystal.knode@lathropgpm.com,
4   natalie.gonzalez@lathropgpm.com;
- **Jan Leslie Kahn**
5   jkahn@kschanford.com, mmoran@kschanford.com;
- **Matthew Ladew**
6   mattladew@dwt.com, mercedesmendoza@dwt.com;
- **Jeffrey C. Misley**
7   jmisley@sussmanshank.com, jhume@sussmanshank.com;
- **Julia Philips Roth**
8   jphilipsroth@cov.com;
- **David P. Stapleton**
9   david@stapletoninc.com;
- **Richard P. Steelman , Jr**
10  RPS@LNBYG.COM, damon@lnbyg.com;
- **Joseph M. VanLeuven , PHV**
11  joevanleuven@dwt.com;
- **Marshall Craig Whitney**
12  mwhitney@wtjlaw.com, sgomez@wtjlaw.com, abroome@wtjlaw.com;
- **Thomas Andrew Woods**
13  thomas.woods@stoel.com, docketclerk@stoel.com, dalila.tobin@stoel.com,
    1261239420@filings.docketbird.com, rebecca.lerma@stoel.com;
14
- **Yellow Hotel II LLC**
    mjb@lathropgpm.com;
15
- **Beth Ann R. Young**
    bry@lnbyg.com;
16
- **American Equity Investment Life Insurance Company**
    adeleest@marshackhays.com;
17
- **Yelena E. Archiyan , PHV**
    yelena.archiyan@katten.com;
18
- **Terence G. Banich**
    terence.banich@katten.com, courtalertlax@katten.com;
19
- **Michaela C. Crocker , PHV**
    michaela.crocker@katten.com;
20
- **Aaron E. De Leest**
    adeleest@marshackhays.com, alinares@ecf.courtdrive.com,
21  adeleest@ecf.courtdrive.com;
- **Jason J DeJonker , PHV**
22  jdejonker@seyfarth.com, lcreasap@seyfarth.com,
    CHIDocketMail@seyfarth.com, 6505178420@filings.docketbird.com;
23
- **Brandon K. Franklin**
    brandon.franklin@clydeco.us, 6663841420@filings.docketbird.com,
24  krodrigues@seyfarth.com;
- **Gabriel P. Herrera**
25  gherrera@kmtg.com, tcorbett@kmtg.com, bxiong@kmtg.com;
- **Michael Robert Johnson, PHV**
26  mjohnson@rqn.com, asanchez@rqn.com, docket@rqn.com;

**Keller Benvenutti Kim LLP**
425 Market Street, 26th Floor
San Francisco, California 94105

- **Matthew Ladew**
  mattladew@dwt.com, mercedesmendoza@dwt.com;
- **Nicholas R. Marcus, PHV**
  nmarcus@seyfarth.com, lcreasap@seyfarth.com, ChiDocketMail@seyfarth.com;
- **John E. Mitchell , PHV**
  john.mitchell@katten.com;
- **Michael Ryan Pinkston**
  rpinkston@seyfarth.com, jmcdermott@seyfarth.com, 5314522420@filings.docketbird.com, sfocalendar@seyfarth.com;
- **Michelle Rosales**
  michelle.rosales@stoel.com

By: /s/ *Jane Kim*
Jane Kim