1    **KELLER BENVENUTTI KIM LLP**
     JANE KIM (Cal. Bar No. 298192)
2    (jkim@kbkllp.com)
     JEREMY V. RICHARDS (Cal. Bar No. 102300)
3    (jrichards@kbkllp.com)
     425 Market Street, 26th Floor
4    San Francisco, California 94105
     Telephone:    (415) 496-6723

5    Attorneys for Defendants Touchstone Pistachio Company, LLC,
     ACAP Farms, LLC, ACDF, LLC, Adams Grantor Land, LLC,
6    Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC,
     Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier
7    Ranch, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantland
     Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC,
8    Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC,
     Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge
9    Farms, LLC, Willow Avenue Investments, LLC, and Winston
     Farms, LLC
10

11                    UNITED STATES DISTRICT COURT

12                   EASTERN DISTRICT OF CALIFORNIA

13

14   METROPOLITAN LIFE INSURANCE          | Lead Case No. 1:24-cv-01261-KES-SAB
     COMPANY,
15                                         | Consolidated with Case Nos: 1:24-cv-01226;
                    Plaintiff,             | 1:24-cv-01230; 1:24-cv 01231; 1:24-cv-01232;
16                                         | 1:24-cv-01233; 1:24 cv-01235; and 1:24-cv-
            v.                             | 01241
17   ACDF, LLC, et al.,
                                           | **MOTION TO IMPLEMENT
18                  Defendants.            | PROCEDURES COORDINATING
                                           | RECEIVERSHIP SALE PROCESSES**
19
                                           | <u>Proposed Hearing:</u>
20                                         | Judge:  Hon. Kirk E. Sherriff
                                           | Date:   March 17, 2025
21                                         | Time:   1:30 p.m.
                                           | Crtrm:  Robert E. Coyle U.S. Courthouse
22                                         |         2500 Tulare Street
                                           |         Courtroom 6, 7th Floor
23   Affects All Cases.                    |         Fresno, CA 93721

24

25

26

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Defendants Touchstone Pistachio Company, LLC ("Touchstone"), ACAP Farms, LLC, ACDF, LLC, Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC, Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms, LLC (collectively with Touchstone, the "Maricopa Defendants") that are defendants in (i) *Metropolitan Life Insurance Company v. ACDF, LLC, et al.*, case number 1:24-CV-01261, as consolidated with case numbers 1:24-cv-01226; 1:24-cv-01230; 1:24-cv-01230; 1:24-cv-01231; 1:24-cv-01232; 1:24-cv-01233; 1:24-cv-01235; and 1:24-cv-01241 (the "Metropolitan Cases"), (ii) *The Prudential Insurance Company of America, et al. v. ACDF, LLC, et al.,* case number 1:24-cv-01102 (the "Prudential Case"), (iii) *U.S. Bank National Association v. Touchstone Pistachio Company, LLC, et al.*, case number 1:24-cv-01105 (the "U.S. Bank Case"), and/or (iv) *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC, et al.*, case number 1:24-cv-01455 (the "FMAC Case" and together with the Metropolitan Cases, the Prudential Case, and the U.S. Bank Case, collectively, the "Receivership Cases"), each of which is before this Court, hereby move (the "Motion")[1] this Court to exercise its broad authority to enter an order, in substantially the form of Exhibit A attached hereto, implementing procedures (the "Proposed Sale Coordination Procedures") pursuant to which the respective receivers appointed in the Receivership Cases will coordinate the pending sale processes of assets within each Receivership Estate among themselves, the lenders, and the Maricopa Defendants, in order maximize the value of the assets for the benefit of all creditors.

In accordance with Section I.C of this Court's Standing Order in Civil Cases, and as set forth in the Kim Declaration below, the Maricopa Defendants' counsel made the following

---

[1] A substantively identical copy of this Motion has been filed in each of the Receivership Cases.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

conferences of counsel, by email: (i) with Thomas Woods and Rebecca Lerma, counsel for plaintiffs Metropolitan Life Insurance Company, MetLife Real Estate Lending LLC, and Brighthouse Life Insurance Company (collectively, the "Metropolitan Plaintiffs"), (ii) with Zev Shechtman, counsel for the Metropolitan Receiver, (iii) with Jason DeJonker, counsel for plaintiffs The Prudential Insurance Company of America ("Prudential"), PGIM Real Estate Finance, LLC ("PGIM" and together with Prudential, the "Prudential Plaintiffs"), (iv) John Mitchell and Michaela Crocker, counsel for the Prudential Receiver, (v) with Joseph VanLeuven, counsel for plaintiff U.S. Bank National Association (the "U.S. Bank Plaintiff"), and (vi) with Joseph Dunn, counsel for the U.S. Bank Receiver. Although the Maricopa Defendants remain open to meeting and conferring with the other parties, the Maricopa Defendants' undersigned counsel hereby certifies that, as of the date of this filing, counsel for the Metropolitan Receiver has stated that he does not support the Motion but no other parties have taken a position on the relief sought in this Motion.

In support of the Motion, the Maricopa Defendants rely on the below Declarations of Jason Hollrah[2] and Jane Kim, and respectfully submit as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

As the Maricopa Defendants have stated in their Statement of Position [Metropolitan Cases, Dkt. No. 106] filed in the Metropolitan Cases and the substantially similar Response [U.S. Bank Case, Dkt. No. 137] filed in the U.S. Bank Case, the Maricopa Defendants do not oppose the sale processes in principle. The Maricopa Defendants only seek for the various Receivers' sale efforts to be coordinated, to preserve the ability to accommodate prospective purchasers interested in purchasing all of the assets across the Receivership Cases, to address situations in which a proposed

---

[2]    The attached Declaration of Jason Hollrah ("Hollrah Decl.") also was attached to the *Statement of Position in Response to Ex Parte Application for Approval Sales Procedures* filed in case number 1:24-cv-01261, as docket number 106, and the *Response to Receiver David P. Stapleton's Notice and Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirming the Sale of Certain Real and Personal Property* filed in case number 1:24-cv-01105, as docket number 137, and is re-attached here for ease of reference.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

sale of assets in one Receivership Case may impact the value of assets in other Receivership Cases, and to allow for the greatest ability to maximize the overall value of all of the receivership assets.

The Maricopa Defendants do not dispute that there has been some coordination among the Receivers, on an informal and voluntary basis. But the Maricopa Defendants believe that an order is necessary to ensure that such coordination continues, that the coordination includes the Maricopa Defendants, and that maximizing the value of the enterprise across the Receivership Estates is taken into consideration in such coordination efforts. The Proposed Sale Coordination Procedures do not purport to impose substantial delays in the pending sale processes or restrict the Receivers from acting in the best interests of their respective Receivership Estates. They simply establish guidelines and a process designed to minimize confusion and/or conflicting processes and to facilitate access for potential buyers to coordinate bidding on receivership assets that reside with different Receivership Cases, in order to reach an outcome that provides the greatest benefit possible to all impacted parties, including the secured creditors who assert an interest in collateral that resides with different Receivership Cases.

## II.    BACKGROUND

### a. Procedural Background

On February 19, 2025, Phillip Christensen, as receiver in the Metropolitan Cases (the "Metropolitan Receiver"), filed the *Receiver's Motion for Approval of Sale Procedures* (the "Metropolitan Receiver's Motion") with respect to that certain real property of the receivership (the "Metropolitan Receivership Real Properties"). Metropolitan Cases, Dkt. No. 101.

On February 25, 2025, Lance Miller, as receiver (the "Prudential Receiver"), filed his *Motion for Entry of Order Authorizing Engagement and Compensation of Capstone Capital Markets LLC as Investment Banker* (the "Prudential Receiver's Motion") in the Prudential Case, seeking to employ Capstone Capital Markets LLC ("Capstone") to assist with marketing and the sale of certain real property of the receivership. Prudential Case, Dkt. No. 157.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

On February 28, 2025, David Stapleton, as receiver (the "U.S. Bank Receiver", and together with the Metropolitan Receiver and the Prudential Receiver, collectively, the "Receivers" and each, individually, a "Receiver"), filed his *Motion for Orders Approving Certain Bidding Procedures and Bid Protections and Confirmation of Certain Real and Personal Property* (the "U.S. Bank Receiver's Motion" and, together with the Metropolitan Receiver's Motion and the Prudential Receiver's Motion, collectively, the "Sale Motions") in the U.S. Bank Case with respect to that certain real property of the receivership.  U.S. Bank Case, Dkt. No. 131.

On February 26, 2025, the Maricopa Defendants filed a *Statement of Position* in response to the Metropolitan Receiver's Motion (the "Statement of Position"), where they noted that they did not oppose the Metropolitan Receiver's Motion, in principle, but requested that the sales procedures include provisions for cooperation in the sales process by all the Receivers. Metropolitan Cases, Dkt. No. 106.  On March 5, 2025, the Maricopa Defendants filed a substantially similar response to the U.S. Bank Receiver's Motion (the "Maricopa Response") in the U.S. Bank Case but also requesting a 30-day extension to the sale process proposed in the U.S. Bank Receiver's Motion.  U.S. Bank Case, Dkt. No. 137.  In each response, particularly, since each of the Receivers were appointed to take control of different parts of the real and personal property that, collectively, constitute an integrated farming and processing enterprise, the Maricopa Defendants expressed concern that a piecemeal sale that does not have procedures that account for potential buyers who want to bid on the integrated enterprise (or even integrated portions hereof) will not maximize the value of the assets for the benefit of all creditors.  Metropolitan Cases, Statement of Position, Dkt. No. 106, at 4-5; U.S Bank Case, Maricopa Response, Dkt. No. 137, at 4-5.  The Maricopa Defendants requested that the sales processes in the Receivership Cases proceed in a fashion that allows the sales to progress along the same timelines with similar procedures so that the sales can accommodate a buyer who wants to purchase the entirety of the assets.  Metropolitan Cases, Statement of Position, Dkt. No. 106, at 6; U.S Bank Case, Maricopa Response, Dkt. No. 137, at 7.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

The Metropolitan Receiver's Motion, the Prudential Receiver's Motion, and the U.S. Bank Receiver's Motion are all set to be heard on March 17, 2025, on the same date that the Maricopa Defendants seek to have this Motion heard.

### b. Facts Relevant to the Motion

Before the appointment of the Receivers in the Receivership Cases, the Assemi family managed an integrated farming and processing enterprise comprising tens of thousands of acres, both planted and unplanted acres throughout the Central Valley. *See* Hollrah Decl., ¶ 3. Historically, financing that was extended by lenders to help fund the farming enterprise was collateralized in a variety of different ways. *See id.*, ¶ 5. In some instances, the lender encumbered the real property itself (*i.e.*, the "dirt"). *Id.* And in other instances, the lender encumbered either the underlying business entity, or specific assets of the business entity, such as the crops themselves. *Id.* Regardless of how the collateral was pledged in any specific instance, the entirety of the farming enterprise was managed collectively as one unit. *Id.*, ¶ 6. Segregating parcels such that a party is only entitled to farm specific collateral is impracticable because some parcels are landlocked by other parcels and because new infrastructure (including easements needed to traverse infrastructure across parcels) would be required to make it independently farmable from that of the other parts of the enterprise, such as the construction of water wells, pipelines, or electric meters for parcels that do not currently have such infrastructure. *See id.*, ¶ 8. Importantly in this respect, the farming enterprise shares a complex water related infrastructure which is essential to farming operations, and without, the trees on the properties would die. *See id.*, ¶ 11. The Maricopa Defendants' property is in as many as 13 distinct water districts, each with different water rights. *Id.* ¶ 10. As an integrated farming enterprise, the Maricopa Defendants only need one account for each of the water districts, with such accounts dictating how water is used across the farm. *Id.* Water obtained from the water districts is delivered across the farming enterprise to the various parcels via a complex network of pipes strategically developed based on the needs of the enterprise. *See id.* Water wells are placed throughout the enterprise based on the best source of water. *Id.*

MOTION TO IMPLEMENT PROCEDURES COORDINATING
RECEIVERSHIP SALE PROCESSES

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Other parcels receive water from a canal served by turnouts from the canal; parcels without turnouts rely on water from the integrated enterprise. *Id.* Put differently, the water infrastructure was designed to serve the entirety of the farming assets, and it is not segregated based on which property constitutes collateral for a given loan. If approached purely from the perspective of a single lender's collateral, some parcels will have inadequate water and others will have excess.

Similarly, the pistachio processing facility owned by Defendant Touchstone goes hand-in-hand with the farming assets because the pistachios grown on the agricultural land are processed in the Touchstone facility. *See id.*, ¶ 4. Touchstone's processing assets, thus, are worth more when it has contracts to process the pistachios grown on the land.

In the consolidated Metropolitan Cases, the Metropolitan Receiver is seeking to sell a portion of the agricultural lands that are part of the enterprise, comprised primarily of pistachio crops and water assets in Fresno and Kern counties. At the same time, the Prudential Receiver has control over agricultural lands, comprised primarily of pistachio crops in Fresno, Kings, Kern and Madera counties, and the U.S. Bank Receiver has control over the pistachio processing facility assets.

The Maricopa Defendants understand that certain potential buyers have expressed an interest in acquiring both the farming assets and the processing assets. *See id.*, ¶ 12. To accommodate such buyers and to maximize value, the Maricopa Defendants have urged the U.S. Bank Receiver to closely coordinate efforts with the Prudential Receiver, who has expressed a keen willingness to cooperate and coordinate with the U.S. Bank Receiver. By the same token, the Maricopa Defendants believe that coordination with the Metropolitan Receiver would likewise serve to attract buyers who are interested in purchasing the entire enterprise and protect against unintended consequences from selling a parcel that may negatively impact the water rights or other assets of other parcels in other receivership estates.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

## III.    BASIS FOR RELIEF REQUESTED

"[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).  In order to fulfill such purpose, this Court has very broad power to supervise and determine the appropriate action to be taken in the administration of federal receiverships.  *See S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). "The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions." *Id.* (quoting *Hardy*, 803 F.2d at 1037).  This is also the case here, where there are three separate receivers administering many interrelated parcels of real property subject to separate liens held by unique lienholders.  "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *S.E.C. v. Am. Capital Investments, Inc.* 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting *Reebok Int'l v. Marnatech Enter., Inc.,* 970 F.2d 552, 561-62 (9th Cir. 1992)). Here, far from restricting the court's authority, 28 U.S.C. § 2001 provides that real property, as a whole or in separate parcels, may be sold at public auction or by private sale "upon such terms and conditions as the court directs," and in the case of a private sale, upon the court's finding "that the best interests of the estate will be conserved thereby." *See* 28 U.S.C. § 2001(a)-(b).

## IV.    RELIEF REQUESTED: THE COURT SHOULD IMPLEMENT THE PROPOSED SALE COORDINATION PROCEDURES TO ENSURE THAT THE RECEIVERS COOPERATE TO MAXIMIZE VALUE FROM THE SALE OF PROPERTY

The Maricopa Defendants appreciate that each of the three Receivers have control over separate collateral (in four different receivership cases), and the Maricopa Defendants in no way seek to unduly delay the sale process for any Receiver.  But approaching the sale of the farming and processing assets on an individual, estate-by-estate basis does not serve the goal of maximizing

value, where the assets are designed to be, and have historically been, operated as an integrated farming enterprise.  This is particularly true here, where secured creditors claim an interest to some extent in collateral that resides in one or more of the Receivership Cases, and where the water rights, pipelines, electricity, and/or easements of other parcels are critical to all of the operations across all of the Receivership Cases.  These undisputed facts support the implementation of a coordinated sale process.

For example, in *SEC v. Champion-Cain*, Case No. 3:19-cv-1628, 2020 U.S. Dist. LEXIS 80717 (S.D. Cal. May 6, 2020), that Court found that the receiver was "acting in best interests of the receivership estate" when she decided to sell a leasehold interest together with the personal property that was operated at the premises, even though that meant the sale would be delayed, reasoning that avoiding a piecemeal sale showed "a considered regard for the type of sale that would fetch the best return for the estate overall."  *Id.* at *19-20.

Here, similarly, there are parcels of real property spread among the Receivership Estates that collectively make up an integrated farming enterprise, whose value is dependent on access to the utilities, such as water and electricity, and/or easements of other parcels, which, if sold off in a piecemeal fashion, risk losing access to such utilities, diminishing their value as farmable land.  In particular, the distribution of water throughout the enterprise is dependent on a complex network of pipelines, wells, and canal access strategically planned in conjunction with varying water rights among numerous water districts to meet the irrigation needs of the integrated farming enterprise.  Unwinding this carefully orchestrated system and developing the necessary infrastructure required to farm certain segregated parcels could take years and could potentially create roadblocks to farming certain parcels along the way.  *See* Hollrah Decl., ¶ 7.

Further, as noted above, the value of the pistachio processing facility, under the control of the U.S. Bank Receiver, will be maximized when sold along with contracts to process the pistachios grown on the land, which are separately under control of the Metropolitan Receiver and the Prudential Receiver.  Selling the farming assets and the processing assets on a piecemeal basis

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Case 1:24-cv-01261-KES-SAB    Document 118    Filed 03/10/25    Page 10 of 28

deprives a potential buyer of the enterprise value of purchasing the processing facility with processing contracts already in place.

Finally, an uncoordinated hasty sell-off of individual parcels, without regard to other receivership assets, due to the volume of parcels and acreage in the enterprise, runs the risk of flooding and depressing the market and/or setting the market value for subsequent parcel sales. Further, 28 U.S.C. sections 2001 and 2002 contain requirements in both the private and public sale context for publication of notice of a sale and overbidding. These statutorily required procedures should be coordinated to avoid confusion among potential bidders.

In their Reply to the Maricopa Response, Metropolitan Life Insurance Company, MetLife Real Estate Lending LLC, and Brighthouse Life Insurance Company (collectively, the "Metropolitan Plaintiffs") suggest that the Maricopa Defendants' concerns are untimely and should be reserved for when actual sale terms are before the Court. *See* Metropolitan Cases, Dkt. No. 109, at 2:6-9. The Metropolitan Receiver, in his Reply, argues that the Metropolitan Receiver has regularly communicated and coordinated with the Prudential Receiver. *See* Metropolitan Cases, Dkt. No. 114, at 2:15-20. However, it is common sense that, to the extent coordination occurs, it should occur *before* the Receivers spend time and resources listing, marketing, and otherwise soliciting buyers and pursuing transactions for individual parcels. Each of the Receivers should be approaching its respective sale process in a manner that takes into consideration maximizing overall value, or, at the very least, in a manner that does not benefit one creditor, through a quick sale, at the expense of another. And although the Maricopa Defendants recognize that there has been some coordination among the Receivers on an informal and voluntary basis, such coordination is both inadequate to ensure the value maximization that the Proposed Sale Coordination Procedures would protect, and limited because no party currently is required to coordinate with each other.

The issue here is that there are three separate Receivers in four Receivership Cases, each tasked with liquidating their respective pieces of the integrated farming enterprise and focused on

MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESSES

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

the unique issues of their respective estates. Each of the Receivers are well versed in the issues flagged herein with respect to their respective estates; however, understandably, they are less likely to be focused on the financial impact their decisions could pose for the other estates.[3] The Proposed Sales Coordination Procedures enable the Receivers and their professionals to consider the impacts and develop solutions to address them swiftly and fairly, *before* pursuing a sale, while also preserving the ability for interested buyers to bid on the entire enterprise, or strategically packaged parcels within the enterprise, even inter-estate, which the Maricopa Defendants submit would serve to ensure the best return overall for all interested parties.

In light of the above, the Maricopa Defendants move this Court to enter an order requiring cooperation and coordination of a sale process among the Metropolitan Receiver, the Metropolitan Plaintiffs, the Prudential Receiver, The Prudential Insurance Company of America ("Prudential"), PGIM Real Estate Finance, LLC ("PGIM" and together with Prudential, the "Prudential Plaintiffs"), U.S Bank National Association ("U.S. Bank"), the U.S. Bank Receiver, and the Maricopa Defendants (collectively, the "Parties" and each, individually, a "Party") substantially on the terms described below:

- A Consultation Group (the "CG") shall be formed by no later than March 21, 2025, consisting of the following parties (by and through themselves and their respective designated professionals and representatives):

    o Phillip Christensen (the "Metropolitan Receiver");

    o Lance Miller (the "Prudential/FMAC Receiver");

    o The Prudential Plaintiffs;

    o The Metropolitan Plaintiffs; and

    o The Maricopa Defendants.

---

[3] It is also worth noting that counsel for the Metropolitan Receiver also represents the proposed stalking horse purchaser in the U.S. Bank Receiver's Motion, which presents an additional obstacle to ensuring that, absent the Court's order mandating coordination among the parties, the parties all will be motivated to maximize value across the Receivership Estates.

MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESSES

- The Prudential/FMAC Receiver shall be the chair of the CG. In that capacity, the Prudential/FMAC Receiver shall convene weekly status conferences of the CG to discuss the status of each Receivers' sale processes, including (1) bidder interest and discussions, (2) any cross-over or interest in multiple receivership assets, (3) updates on any offers received, and (4) timelines of sale processes.

- A Touchstone Consultation Group (the "Touchstone CG") shall be formed by no later than March 21, 2025, consisting of the following parties (by and through themselves and their respective designated professionals and representatives):

  o Lance Miller (the "Prudential/FMAC Receiver");

  o The Prudential Plaintiffs;

  o The U.S. Bank Receiver;

  o U.S. Bank; and

  o The Maricopa Defendants.

- The Prudential/FMAC Receiver shall be the chair of the Touchstone CG. In that capacity, the Prudential/FMAC Receiver shall convene status conferences of the Touchstone CG on an as-needed basis to discuss the sale process regarding the Touchstone facility, including (1) bidder interest and discussions, (2) updates on any offers received, (3) interest by prospective bidders in the Touchstone facility and real property in other Receivership Estates, and (4) timelines of sale processes.

- All conferences and communications and information shared pursuant to the Stipulated Protocol, to include all sharing of information and documentation, shall be confidential and conducted under and pursuant to FRE 408.

- The Parties agree to timely engage in good faith in order to reach agreement on any sales process or issue related thereto. The Parties agree to share information to assist on allocations of value.

- The Maricopa Defendants agree to timely respond to commercially reasonable information requests from the Receivers without charge to the Receivership estates.

- Each of the Metropolitan Receiver and the Prudential/FMAC Receiver shall provide, by e-mail, written notice (such receiver, the "Notifying Receiver" and such notice, a "Pre-Action Notice") to the CG and the Touchstone CG prior to taking any of the following actions (each, a "Notice Action"):

  o Listing of any real property for sale;

  o Relisting of any real property at a reduced price;

  o Selection of any bid, including stalking horse bid, and entry into contract; or

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

      o   Consummation of any sale transaction.

- Upon the receipt of a Pre-Action Notice, the other Parties shall have two (2) business days (the "Objection Period") to inform the Notifying Receiver of any concerns about the Notice Action described in the Pre-Action Notice (a "Notice of Objection"). Following receipt of a Notice of Objection, the parties will have three (3) business days to discuss any stated concerns or objections in good faith (the "Discussion Period"); provided, however, that nothing herein shall restrict or impede either (i) the Notifying Receiver from proceeding with a Notice Action, or (ii) any other Party from objecting to or otherwise seeking relief with respect to the Notice Action, following the expiration of the Discussion Period.

- Except in emergency situations, the Notifying Receiver shall not take any Notice Action until the Objection Period has expired without the receipt of a Notice of Objection, or (ii) the Discussion Period has expired.

- All rights of all Parties shall be reserved with respect to any Notice Action.

- The Parties shall consult in good faith and attempt to reach agreement on bids related to properties subject to multiple liens and to consider the impact of the proposed sale of any property on all creditors and parties and interest, and work in good faith on allocation of values related to a sale, as needed.

- The Prudential/FMAC Receiver shall create a model for recommended value allocations with respect to assets being sold by Capstone. The Parties shall engage in good faith regarding that model, and promptly provide the Prudential/FMAC Receiver with any concerns or objections, with the goal of reaching consensus prior to receipt of any bids.

- The Stipulated Order shall extend the stay currently in place in each of the Receivership Cases to the Maricopa Defendants.

- The Maricopa Defendants shall agree in the Stipulated Order that they shall not file a voluntary bankruptcy petition by or on behalf of any Maricopa Defendants or their affiliates provided that the Parties are coordinating in good faith pursuant to these procedures.

## **CONCLUSION**

For the reasons stated above, the Maricopa Defendants respectfully ask that the Court enter an order approving and implementing the Proposed Sale Coordination Procedures.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully submitted,

KELLER BENVENUTTI KIM LLP

By: /s/ *Jane Kim*_____
Jane Kim
Attorneys for the Maricopa Defendants

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

# DECLARATION OF JASON HOLLRAH

I, Jason Hollrah, declare:

1.      I am the Chief Executive Officer of the Assemi Group.  I am over 18 years of age.  The statements contained in this declaration are true and based on my personal knowledge, except as otherwise indicated.  If called upon as a witness to testify to these statements, I could and would competently do so under oath.

2.      In my capacity as Chief Executive Officer of the Assemi Group, I am familiar with many of the businesses entities that are the Defendants in this action, as well as the collateral over which Metropolitan Life Insurance Company ("MetLife") has imposed a receivership.

3.      Assemi Group provides management services for its related business entities, including Maricopa Orchards LLC and Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Grandon Farms, LLC, Lincoln Grantor Farms, LLC, Panoche Pistachios, LLC, and Sageberry Farms, LLC (the "Maricopa Defendants").  Among other things, the Assemi Group manages business entities and real property parcels of the Assemi family farming enterprise comprising tens of thousands of acres, both planted and unplanted acres throughout the Central Valley.  In total, the planted and unplanted acres extend over thousands of separate legal parcels and legal business entities.

4.      As part of the business strategy, the ownership of the Maricopa Defendants process crop grown on the agricultural land in the facility of Touchstone Pistachio Company, LLC ("Touchstone").  There was economic advantage in processing the agricultural products of the Maricopa Defendants in the Touchstone facility, as over the long term, this integrated approach should enhance the value of the overall enterprise by permitting a single ownership group to capture the profit margin of the producer and the processor.

5.      Historically, financing extended by lenders such as MetLife to help fund the farming enterprise has been collateralized in a variety of different ways.  For example, in some instances, the lender has encumbered the real property itself (*i.e.*, the "dirt").  And in other instances, the lender has encumbered either the underlying business entity, or specific assets of the business entity, such as the crops themselves.

6.      Regardless of how the collateral has been pledged in any specific instance, the entirety of the farming enterprise is managed collectively as one unit.

7.      I believe that given the complexity of the number of legal entities and legal parcels it would take years to segregate the parcels in such a manner that would allow a party to only farm specific collateral, as opposed to the enterprise as whole.  At a minimum, extensive surveys would need to be done and physical infrastructure would need to be constructed.

8.      In many cases, physical segregation of a parcel would be impossible because the parcel would be landlocked by other parcels.  In other parcels, new infrastructure would be required to make it independently farmable from that of the other parts of the enterprise, such as the construction of water wells or electric meters for parcels that do not currently have such infrastructure.

9.      In addition, even if such a segregation of collateral was physically possible to achieve, I believe it would nonetheless be impossible to administer due to the complexity in obtaining water rights that are needed to make the parcels productive for farming.

10.      Each parcel owned by the Maricopa Defendants is in a water district.  The Maricopa Defendants' property is in as many as 13 distinct water districts, with the majority in three water districts.  Each water district features different water rights.  The Maricopa Defendants operate the properties as an integrated farm; collectively, they have a single

DECLARATION OF JASON HOLLRAH

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

account for each of the water districts. That account dictates how water is used across the farm.

11.    Water that is obtained from the water districts is delivered by a complex network of pipes to the parcels without regard to who owns the underlying property or who it is collateralized by. Water wells exist but they are placed based on the best source of the water, not according to parcel or what lender owns the underlying collateral. There is no distinction based on which lender identifies the parcel as collateral. Pipelines cut across fields. A parcel pledged as collateral to Plaintiffs may or may not have a well. Similarly, some areas receive water from a canal. The canal has turnouts on particular parcels; parcels without turnouts rely on water from the integrated business. If the relief requested by Plaintiffs is granted, properties would be cut off from the integrated whole and would not get water. Without water, the trees on the properties would die and the properties would subsequently be materially devalued.

12.    The Maricopa Defendants have received expressions of interest from buyers who wish to acquire both the Maricopa farming assets and the Touchstone processing assets. There is significant value that can be generated from the integrated enterprise from economies of scale on cost management and pricing for delivery of large volumes, and value that could be lost by the sale of individual parcels without regard to the impact on other properties within the enterprise. To maximize value, the sale of the enterprise must be coordinated.

*[Signature on next page]*

DECLARATION OF JASON HOLLRAH

1        I declare under the penalty of perjury that the foregoing is true and correct.

2

Executed by: _____    Date:  February 26, 2025

3            JASON HOLLRAH

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF JASON HOLLRAH

1

**DECLARATION OF JANE KIM**

2

I, Jane Kim, declare as follows:

3

1.    I am an attorney duly licensed to practice before all of the courts in the State of

4

California and admitted in this Court.  I am a partner with Keller Benvenutti Kim LLP, counsel of

5

record for defendants Touchstone Pistachio Company, LLC, ACAP Farms, LLC, ACDF, LLC,

6

Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC,

7

Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC,

8

Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC,

9

Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry

10

Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms,

11

LLC (collectively with Touchstone, the "Maricopa Defendants"), that are defendants in (i)

12

*Metropolitan Life Insurance Company v. ACDF, LLC, et al.*, case number 1:24-CV-01261, as

13

consolidated with case numbers 1:24-cv-01226; 1:24-cv-01230; 1:24-cv-01230; 1:24-cv-01231;

14

1:24-cv-01232; 1:24-cv-01233; and 1:24-cv-01241 (the "Metropolitan Cases"), (ii)

15

*The Prudential Insurance Company of America, et al. v. ACDF, LLC, et al.,* case number 1:24-cv-

16

01102 (the "Prudential Case"), (iii) *U.S. Bank National Association v. Touchstone Pistachio*

17

*Company, LLC, et al.*, case number 1:24-cv-01105, and/or (iv) *Federal Agricultural Mortgage*

18

*Corporation v. Assemi Brothers, LLC, et al.*, case number 1:24-cv-01455 (the "FMAC Case" and

19

together with the Metropolitan Cases, the Prudential Case, and the U.S. Bank Case, collectively, the

20

"Receivership Cases"), each of which is before this Court.

21

2.    I submit this Declaration in support of the *Motion to Implement Procedures*

22

*Coordinating Receivership Sales Processes* (the "Motion") and the *Application to Shorten Time on*

23

*Defendants' Motion to Implement Procedures Coordinating Receivership Sales Processes* (the

24

"Application").[4]

25

_____

26

[4]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

3.      The facts stated herein are true and correct to the best of my knowledge, information and belief.

4.      The Motion for which the Maricopa Defendants request a hearing on shortened time seeks approval of certain Proposed Sale Coordination Procedures that ensure the coordination of the receivership sale processes.

5.      The relief requested in the Motion is directly related to the Sale Motions, and the sale processes requested in those motions, which are set to be heard by this Court on March 17, 2025.

6.      Should the Court reject the Application, and grant the relief requested in the Sale Motions, the Motion would be rendered moot or nearly moot, because the sale processes requested in the Sale Motions would proceed without the benefit of the coordination and other safeguards provided for in the Proposed Sale Coordination Procedures.

7.      I have met and conferred with the parties in this case as follows: I sent an email summarizing the relief sought in the Motion and providing notice that the Maricopa Defendants would seek to have the Motion heard on shortened time, to (i) Thomas Woods and Rebecca Lerma, counsel for plaintiffs Metropolitan Life Insurance Company, MetLife Real Estate Lending LLC, and Brighthouse Life Insurance Company, (ii) Zev Shechtman, counsel for Phillip Christensen, the receiver in the Metropolitan Cases, (iii) Jason DeJonker, counsel for plaintiffs The Prudential Insurance Company of America, PGIM Real Estate Finance, LLC, and (iv) John Mitchell and Michaela Crocker, counsel for Lance Miller, the receiver in the Prudential Case, on March 8, 2025, and to (v) Joseph VanLeuven, counsel for plaintiff U.S. Bank National Association, and (vi) Joseph Dunn, counsel for David Stapleton, the receiver in the U.S. Bank Case, on March 9, 2025.  I advised all parties that I would request that the hearing be held on March 17, 2025.

8.      I asked that the parties provide any objections to the request to shorten notice, noting that I intend to file the Motion and the Application on Monday, March 10, or Tuesday, March 11, 2025.

- 2 -                                   DECLARATION OF JANE KIM

1          9.     As of the date of this filing, counsel for the Metropolitan Receiver has stated that he

2    does not support the Application or the Motion but no other parties have taken a position on the

3    relief sought in the Application.

4          I declare under penalty of perjury that the foregoing is true and correct.

5

6                             *[Signature on next page]*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

DECLARATION OF JANE KIM

I declare under the penalty of perjury that the foregoing is true and correct.

Executed by: __/s/ _Jane Kim_____        Date: March 10, 2025
                        Jane Kim

DECLARATION OF JANE KIM

# EXHIBIT A

## Proposed Order

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | Lead Case No. 1:24-cv-01261-KES-SAB |
| Plaintiff, | Consolidated with Case Nos: 1:24-cv-01226; 1:24-cv-01230; 1:24-cv 01231; 1:24-cv-01232; 1:24-cv-01233; 1:24 cv-01235; and 1:24-cv-01241 |
| v. | |
| ACDF, LLC, et al., | **[PROPOSED] ORDER IMPLEMENTING PROCEDURES TO COORDINATE RECEIVERSHIP SALE PROCESSES** |
| Defendants. | |
| Affects All Cases. | |

Upon due consideration of the Maricopa Defendant's[5] *Motion to Implement Procedures Coordinating Receivership Sale Processes* (the "Motion"), the Declaration of Jason Hollrah, the oppositions filed to the Motion, and the oral argument of counsel, the Court hereby finds that good cause exists to enter an order implementing procedures to coordinate the receivership sale processes.  Having found the foregoing,

    **IT IS HEREBY ORDERED THAT**:

---

[5] As defined in the Motion.

PROPOSED ORDER

1.  The Motion is GRANTED.

2.  A Consultation Group (the "CG") shall be formed by no later than March 21, 2025, consisting of the following parties (by and through themselves and their respective designated professionals and representatives):

    a.  Phillip Christensen (the "Metropolitan Receiver");

    b.  Lance Miller (the "Prudential/FMAC Receiver");

    c.  The Prudential Insurance Company of America ("Prudential"), PGIM Real Estate Finance, LLC ("PGIM" and together with Prudential, the "Prudential Plaintiffs");

    d.  Metropolitan Life Insurance Company, MetLife Real Estate Lending LLC, and Brighthouse Life Insurance Company (collectively, the "Metropolitan Plaintiffs"); and

    e.  Touchstone Pistachio Company, LLC, ACAP Farms, LLC, ACDF, LLC, Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC, Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms, LLC (the "Maricopa Defendants").

3.  The Prudential/FMAC Receiver shall be the chair of the CG.  In that capacity, the Prudential/FMAC Receiver shall convene weekly status conferences of the CG to discuss the status of each Receivers' sale processes, including (1) bidder interest and discussions, (2) any cross-over or interest in multiple receivership assets, (3) updates on any offers received, and (4) timelines of sale processes.

4.  A Touchstone Consultation Group (the "Touchstone CG") shall be formed by no later than March 21, 2025, consisting of the following parties (by and through themselves and their respective designated professionals and representatives):

    a.  Lance Miller (the "Prudential/FMAC Receiver");

    b.  The Prudential Plaintiffs;

    c.  David Stapleton (the "U.S. Bank Receiver");

    d.  U.S. Bank National Association ("U.S. Bank Plaintiff" and, together with the Metropolitan Receiver, the Prudential/FMAC Receiver, the Prudential Plaintiffs, the Metropolitan Plaintiffs, the Maricopa Defendants, and the U.S. Bank Receiver, collectively, the "Parties" and each, individually, a "Party"); and

    e.  Maricopa Defendants.

PROPOSED ORDER

5. The Prudential/FMAC Receiver shall be the chair of the Touchstone CG.  In that capacity, the Prudential/FMAC Receiver shall convene status conferences of the Touchstone CG on an as-needed basis to discuss the sale process regarding the Touchstone facility, including (1) bidder interest and discussions, (2) updates on any offers received, (3) interest by prospective bidders in the Touchstone facility and real property in other Receivership Estates, and (4) timelines of sale processes.

6. All conferences and communications and information shared pursuant to the Stipulated Protocol, to include all sharing of information and documentation, shall be confidential and conducted under and pursuant to FRE 408.

7. The Parties agree to timely engage in good faith in order to reach agreement on any sales process or issue related thereto. The Parties agree to share information to assist on allocations of value.

8. The Maricopa Defendants agree to timely respond to commercially reasonable information requests from the Receivers without charge to the Receivership estates.

9. Each of the Metropolitan Receiver and the Prudential/FMAC Receiver shall provide, by e-mail, written notice (such receiver, the "Notifying Receiver" and such notice, a "Pre-Action Notice") to the CG and the Touchstone CG prior to taking any of the following actions (each, a "Notice Action"):

    a. Listing of any real property for sale;

    b. Relisting of any real property at a reduced price;

    c. Selection of any bid, including stalking horse bid, and entry into contract; or

    d. Consummation of any sale transaction.

10. Upon the receipt of a Pre-Action Notice, the other Parties shall have two (2) business days (the "Objection Period") to inform the Notifying Receiver of any concerns about the Notice Action described in the Pre-Action Notice (a "Notice of Objection"). Following receipt of a Notice of Objection, the parties will have three (3) business days to discuss any stated concerns or objections in good faith (the "Discussion Period"); provided, however, that nothing herein shall restrict or impede either (i) the Notifying Receiver from proceeding with a Notice Action, or (ii) any other Party from objecting to or otherwise seeking relief with respect to the Notice Action, following the expiration of the Discussion Period.

11. Except in emergency situations, the Notifying Receiver shall not take any Notice Action until the Objection Period has expired without the receipt of a Notice of Objection, or (ii) the Discussion Period has expired.

12. All rights of all Parties shall be reserved with respect to any Notice Action.

13. The Parties shall consult in good faith and attempt to reach agreement on bids related to properties subject to multiple liens and to consider the impact of the proposed sale of

PROPOSED ORDER

any property on all creditors and parties and interest, and work in good faith on allocation of values related to a sale, as needed.

14. The Prudential/FMAC Receiver shall create a model for recommended value allocations with respect to assets being sold by Capstone.  The Parties shall engage in good faith regarding that model, and promptly provide the Prudential/FMAC Receiver with any concerns or objections, with the goal of reaching consensus prior to receipt of any bids.

15. The Stipulated Order shall extend the stay currently in place in each of the Receivership Cases to the Maricopa Defendants.

16. The Maricopa Defendants shall agree in the Stipulated Order that they shall not file a voluntary bankruptcy petition by or on behalf of any Maricopa Defendants or their affiliates provided that the Parties are coordinating in good faith pursuant to these procedures.

**IT IS SO ORDERED.**

Dated:_____

_____
UNITED STATES DISTRICT JUDGE

PROPOSED ORDER

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

CERTIFICATE OF SERVICE

      I hereby certify that on March 10, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing, including the following:

- **Mark Anishchenko**
  markanishchenko@dwt.com, rosalindcook@dwt.com;
- **Robert Cullen Barton**
  rbarton@mwe.com, acorona@mwe.com, mnadel@mwe.com;
- **Michael Barrett Brown**
  michael.brown@stoel.com, docketclerk@stoel.com, rebecca.lerma@stoel.com, jill.keehnen@stoel.com, ha.nguyen@stoel.com;
- **Dumar LLC**
  reisslaw@reisslaw.net;
- **John D. Freed**
  jakefreed@dwt.com, kimberlysimmonsgreene@dwt.com;
- **Jane Kim**
  jkim@kbkllp.com
- **Michael S. Nadel, PHV**
  mnadel@mwe.com;
- **Saul Reiss**
  reisslaw@reisslaw.net, fay.pugh@outlook.com;
- **Zev M. Shechtman**
  Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com, Shelly.Guise@saul.com, hannah.richmond@saul.com, LitigationDocketing@saul.com;
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com, borozco@wtjlaw.com;
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com, sgomez@wtjlaw.com, abroome@wtjlaw.com;
- **Thomas Andrew Woods**
  thomas.woods@stoel.com, docketclerk@stoel.com, dalila.tobin@stoel.com, 1261239420@filings.docketbird.com, rebecca.lerma@stoel.com;

By:    */s/ Jane Kim*_____
          Jane Kim

CERTIFICATE OF SERVICE

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105