# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>ACDF, LLC, a California limited liability company, et al.,<br><br>    Defendants. | Lead Case No. 1:24-cv-01261-KES-SAB<br><br>Consolidated with Case Nos: 1:24-cv-01226; 1:24-cv-01230; 1:24-cv-01231; 1:24-cv-01232; 1:24-cv-01233; 1:24-cv-01235; and 1:24-cv-01241<br><br>**ORDER RE PAYMENT OF RENT REGARDING LEASES WITH DUMAR, LLC AND PISTACHE, LLC**<br><br>(Docs. 81, 99) |
| ☐ Affects All Cases<br>☐ Affects Metropolitan Life Ins. Co. v. ACDF, LLC, et al., 1:24-cv-01261<br>☐ Affects Metropolitan Life Ins. Co. v. FNF Farms, LLC, et al., 1:24-cv-01226<br>☒ Affects Metropolitan Life Ins. Co. v. C & A Farms, LLC, et al., 1:24-cv-01230<br>☐ Affects Metropolitan Life Ins. Co. v. Maricopa Orchards, LLC, et al., 1:24-cv-01231<br>☐ Affects Brighthouse Life Ins. Co. v. Kamm South, LLC, et al., 1:24-cv-01232<br>☐ Affects Brighthouse Life Ins. Co. v. Manning Avenue Pistachios, LLC, et al., 1:24-cv-01233 Case No. 1:24-cv-01233<br>☐ Affects Brighthouse Life Ins. Co. v. ACDF, LLC, et al., 1:24-cv-01235<br>☐ Affects MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., 1:24-cv-01241 | |

This Order is entered after the hearing on the Motion to Terminate Leases with Dumar, LLC and Pistache, LLC and for Turnover of Property, Doc. 81 (the "**Motion to Terminate Leases**"), filed by Phillip Christensen, as Receiver in the above-captioned action (the "**Receiver**"), based on the following facts and findings:

1. On or about April 9, 2021, Maricopa Orchards, LLC ("**Maricopa**") entered into certain pistachio field (the "**Properties**") leases with Dumar, LLC ("**Dumar**") and Pistache, LLC ("**Pistache**"), Doc. 81, Exs. 2, 3 (the "**Leases**").

2. This action was filed on October 10, 2024, and the Receiver was appointed on November 7, 2024.

3. On February 5, 2025, a hearing was held on the Receiver's Motion to Terminate Leases. The Receiver, Dumar, and Pistache (collectively, the "Parties") appeared and the Court heard oral argument.

4. At the hearing, the Court denied the Motion to Terminate Leases for the reasons stated on the record. Doc. 95. The Court ordered the parties to file a joint proposed order reflecting their representations at the hearing regarding payment of rent to the Receiver for the 2025 crop year and their representations on related lease matters, and also reflecting other revised lease terms as agreed by the parties for the 2025 crop year. *Id.* Alternatively, if the parties could not reach agreement on all terms, the parties were ordered to file a joint status report with an attached proposed order noting all agreed terms between the parties and any specific issue remaining in dispute. *Id.*

5. As directed by the Court, the Parties met and conferred and agreed to all terms of this order except one, noted below. *See* Doc. 99 ("Joint Status Report").

6. The only point of disagreement is the payment of currently due and unpaid real property taxes that were incurred during the 2024 crop year. The Receiver argues that Dumar and Pistache should pay property taxes for the 2024 crop year because, he asserts, the Leases required them to do so. *Id.* at 3.

7. Contrary to the Receiver's position, under the terms of the Leases, Dumar and Pistache were excused from paying real property taxes due in 2024 if Touchstone Pistachio

1   Company, LLC ("Touchstone") failed to pay for the crops Dumar and Pistache delivered for that
2   year.  The Leases provide that "if Touchstone for any reason fails to pay for any crop that has
3   been delivered to it at the agreed upon time, such failure or default shall relieve Tenant of its
4   obligation to pay the rent under this Lease until such defaulted payment by Touchstone is made to
5   Tenant."  Leases § 1.2(c).  Other sections define "rent" to include real property taxes.  *See* Leases
6   §§ 3, 8.2.  Specifically, § 8 provides that, "[a]s additional *rent* for the Property, Tenant shall pay .
7   . . all real property taxes . . . ."  *See id.* § 8 (emphasis added).  Given that it is undisputed that
8   Touchstone did not pay Dumar or Pistache for the crops they delivered in 2024, Doc. 81 at 7,
9   Dumar and Pistache were excused under the terms of the Leases from paying the real property
10  taxes due in 2024.  The parties agree that Dumar and Pistache are required to pay the real
11  property taxes due in 2025.
12       The Court therefore **ORDERS THAT**:
13       1.   Dumar and Pistache must pay to the Receiver rent of $911,306 and $1,446,515,
14  respectively, for a total of **$2,357,821** by no later than November 30, 2025 ("**2025 Rent**").
15       2.   No conditions on payment of 2025 Rent set forth in the Leases are binding or
16  enforceable as against the Receiver, except for such terms expressly set forth herein.
17       3.   Within 14 days after entry of this order, Dumar and Pistache must
18            a.   add the Receiver as an additional insured and loss payee on any insurance
19  policy concerning their 2025 crop; and
20            b.   provide proof thereof to the Receiver.
21       4.   Pursuant to the schedule established by the Westlands Water District, Dumar and
22  Pistache must pay all water assessments for the water year 2025 and water costs for the 2025
23  crop.  The payment schedule which has been delivered to the Receiver by the Westlands Water
24  Districts call for the payments on March 25, 2025, September 25, 2025 and November 25, 2025.
25  The last payment must be made by Dumar and Pistache on or before November 14, 2025.  The
26  Receiver will instruct the Westlands Water District to provide water to the Properties and accept
27  payment of the land based assessment of the 2025 crop water assessments and costs from Dumar
28  and Pistache.

5. Within 14 days after entry of this order, the Receiver shall forward to Dumar and Pistache the most recent real property tax bills which cover the period from December 1, 2024 through June 1, 2025 which will be reflected in the 2nd installment of the tax bills payable on April 10, 2025. Dumar and Pistache must pay said 2nd Installments on or before April 10, 2025. Within 14 days of receipt of the property tax bill which covers the period June 1, 2025 through July 30, 2025, which will be reflected in the 1st installment of the tax bills payable on December 10, 2025, the Receiver shall forward such property tax bills to Dumar and Pistache. Dumar and Pistache must pay said 1st Installments on or before November 14, 2025. Dumar shall have no other property tax liability.

6. Within 14 days after entry of this order, Dumar and Pistache must execute joint instructions with the Receiver to Setton Pistachio of Terra Bella (or another processor of Receiver's selection) to contract with respect to the processing of the 2025 crop. The instructions must direct the processor to pay the 2025 Rent amount to the Receiver, and any excess amount to Dumar and Pistache.

7. As security for the payment of the 2025 rent and real property taxes, Dumar and Pistache each grant to the Receiver a security intertest in the 2025 crop and any proceeds thereof. The Receiver may immediately file or record a financing statement or other notice of lien to perfect its security interest. In the event of a default hereunder, the Receiver, or his assignee or successor, shall have all rights and remedies at law and equity available to a secured creditor with respect to the 2025 crop.

8. As additional security for the payment of the 2025 Rent and real property taxes, the Receiver shall be named an additional insured on the 2025 crop insurance and proceeds thereof in the respective amounts of the Rent and property taxes as set forth above less any amounts that have been paid by Dumar, Pistache or the pistachio processor that processes the 2025 crop. If the Rent and property taxes have been paid as ordered, then the Receiver shall take all necessary steps to cancel the loss payee provision, and shall have no further rights to crop insurance proceeds.

4

9. Dumar and Pistache shall engage in commercially acceptable agricultural practices including, inter alia:

    a. Application of adequate irrigation water,

    b. All chemical applications required by the farm, such as herbicides, insecticides, and fungicides, and

    c. Fertility applications.

Upon written request by the Receiver, Dumar and Pistache shall provide the Receiver with documentation confirming the foregoing and physical access to inspect the Properties.

10. This Court shall have exclusive jurisdiction over the enforcement of this order and any breach of the terms hereof. The Parties shall have all remedies available at law and equity in connection with the enforcement of the terms hereof. The terms hereof shall inure to the benefit of any assignees or successors in interest of the Parties.

IT IS SO ORDERED.

Dated: March 21, 2025

UNITED STATES DISTRICT JUDGE